IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re* Application of <br> ATIKU ABUBAKAR <br><br> For an Order Directing Discovery from <br> CHICAGO STATE UNIVERSITY Pursuant to <br> 28 U.S.C. § 1782. | ) <br> ) <br> ) <br> ) Case No. 1:23-cv-5099 <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION FOR JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782**

DECHERT LLP
Angela M. Liu
35 West Wacker Drive, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
angela.liu@dechert.com

Andrew J. Levander*
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

Alexandre de Gramont*
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 261-3333
alex.degramont@dechert.com

\* *Pro hac vice* motions forthcoming

*Attorneys for Applicant Atiku Abubakar*

**INTRODUCTION**

Applicant Atiku Abubakar ("Applicant" or "Mr. Abubakar") respectfully submits this Memorandum of Law in Support of his Application submitted under 28 U.S.C. § 1782 (the "Application"). Section 1782 authorizes a district court to assist litigants in foreign proceedings, by ordering a person who resides or is found in the district to give "testimony or [a] statement or to produce a document or other thing for use in a proceeding" before a foreign tribunal. 28 U.S.C. § 1782(a). Applicant seeks documents and testimony from Respondent Chicago State University ("Respondent" or "CSU"). CSU is a public university established under the laws of Illinois, with its principal campus and offices in Chicago, Illinois. Respondent is therefore "found" in this District.

Applicant is currently the lead Petitioner in proceedings in the courts of the Federal Republic of Nigeria ("Nigeria"), challenging the conduct and results of Nigeria's February 2023 presidential elections (the "Presidential elections"). Following those elections, Nigeria's so-called Independent National Electoral Commission ("INEC") declared Mr. Bola Ahmed Tinubu ("Mr. Tinubu") to be the winner, and Applicant to be the second-place candidate. In Applicant's proceedings, as well as other proceedings challenging the elections (collectively, the "Nigerian proceedings"), the authenticity of documents allegedly produced by CSU to other litigants (including to Mr. Tinubu) (the "CSU documents") are at issue.[1] There are apparent discrepancies in at least some of the CSU documents and open questions as to whether all the CSU documents in fact originate from CSU.

---

[1] As used herein, the term "CSU documents" means documents submitted in the Nigerian proceedings that purport to have originated from CSU. As discussed below, Applicant does not know the provenance or authenticity of the CSU documents.

- 1 -

Through this Application, Applicant seeks copies of any documents produced or provided by CSU to other litigants in the Nigerian proceedings, as well as testimony concerning the CSU documents' authenticity, and whether, when, and why CSU produced them to other litigants (including Mr. Tinubu). As set forth below, the Application meets the statutory requirements of Section 1782. In addition, the factors articulated by the Supreme Court to guide district courts in ordering discovery under Section 1782 weigh overwhelmingly in favor of granting the Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The Court should therefore grant the Application.

## STATEMENT OF FACTS

### I. The Parties

Applicant Abubakar is a prominent businessman and politician in Nigeria. Liu Decl. ¶ 3. Mr. Abubakar served as Vice-President of Nigeria from 1999 to 2007. *Id.* In May 2022, Mr. Abubakar won a contested primary to become the Presidential candidate of the People's Democratic Party (the "PDP"), Nigeria's principal opposition party. *Id.* Upon information and belief, Respondent CSU is a public university established and existing under the laws of Illinois, with its principal campus and offices in Chicago. *Id.* ¶ 4.

### II. The Nigerian Proceedings and the CSU Documents

Like many of Nigeria's past elections, the Presidential elections of 2023 were hotly contested and generated ongoing controversy. Both before and after the Presidential elections, litigants commenced proceedings in the Nigerian courts challenging various aspects of the electoral process and, later, the election results. Three of these proceedings are relevant to this Application: (1) proceedings commenced in November 2022, by Mr. Mike Enahoro-Ebah against Mr. Tinubu ("*Enahoro-Ebah v. Tinubu*"), *see* Liu Decl. ¶ 5, Ex. A; (2) proceedings commenced

in March 2023 by Applicant and the PDP against INEC, Mr. Tinubu, and Mr. Tinubu's political party, the All Progressives Congress (the "APC") ("*Abubakar v. INEC*" or "Applicant's proceedings"), Liu Decl., Ex. B; and, (3) proceedings commenced in March 2023 by third-place finisher Peter Obi and the Labour Party against INEC, Mr. Tinubu, and the APC (*Peter Obi and Labour Party v. INEC, Tinubu et al.*, in the Court of Appeal at Abuja, CA/PEPC/03/2023). Applicant seeks discovery only for use in Applicant's proceedings (and any subsequent proceedings arising therefrom), but CSU documents have been submitted as evidence in multiple cases, where their authenticity and accuracy remain in question.

A.   *Enahoro-Ebah v. Tinubu*

On November 9, 2022, several months before the Presidential elections, Mr. Enahoro-Ebah, described as a "Human Rights Defender and Public Interest Litigator" in Abuja, Nigeria, commenced proceedings against Mr. Tinubu by filing a "Direct Criminal Complaint" (the "Complaint") in the Chief Magistrate Court of the Federal Capital Territory (FCT). *See* Complaint, at 1 (Liu Decl., Ex. A). Mr. Enahoro-Ebah is not associated with Applicant.

In his Complaint, Mr. Enahoro-Ebah alleges that Mr. Tinubu submitted an "Affidavit of Personal Particulars" to INEC in June 2022 as part of a required filing to run for President that included a forged CSU diploma dated **June 22, 1979** (the "**June 22 diploma**") and other information that is inconsistent with the CSU documents. *Id*. at 1-4.

To support the allegations, Mr. Enahoro-Ebah states that after Mr. Tinubu made his INEC filing, Mr. Enahoro-Ebah obtained a subpoena from the Circuit Court of Cook County, dated August 11, 2022, and served it on CSU. *Id*. at 2-3 (the subpoena is Exhibit 6 to the Complaint). In response to the subpoena, CSU's Registrar, Mr. Caleb Westberg, sent a letter dated September 22, 2022, to Mr. Enahoro-Ebah's Chicago counsel, Mr. Matthew J. Kowals, advising Mr. Kowals

that "[t]he enclosed documentation is all the records we have for Bola E. Tinubu." *Id.* at 7; Liu Decl., Ex. D. According to the Complaint, the documents that accompanied Mr. Westberg's letter included a CSU diploma issued to Mr. Tinubu on **June 27, 1979** (the "**June 27 diploma**"). Liu Decl., Ex. A. at Ex. 7; Liu Decl., Ex. E.

The June 27 diploma allegedly produced by CSU to Mr. Kowals, and the June 22 diploma allegedly submitted by Mr. Tinubu to INEC, are very different documents. *Compare* Liu Decl., Ex. C, *with* Liu Decl., Ex. E. In addition to the different dates, the documents have different seals, fonts, and language. The June 22 diploma has grammatical errors that the June 27 diploma does not have. They are also signed by different persons who are ostensibly officials of CSU. The June 22 diploma has three signatures, one of which purports to be the signature of Dr. Elnora Daniel as President of CSU. The other two signatures on the June 22 diploma are illegible. By contrast, the June 27 diploma only has two signatures. They purport to be the signatures of Dr. Daniel, again as the President of CSU, and Dr. Niva Lubin as the Chairperson of the Board of Trustees. *Compare* Liu Decl., Ex. C, *with* Liu Decl., Ex. E.

In his Complaint, Mr. Enahoro-Ebah asserts that the June 27 diploma produced by CSU to Mr. Kowals is authentic, and that the June 22 diploma submitted by Mr. Tinubu to INEC is a forgery. However, Applicant's staff have recently conducted further research into the names of CSU officials with legible signatures on the two diplomas: Dr. Daniel (whose signature appears on both the June 22 and June 27 diplomas) and Dr. Lubin (whose signature appears only on the June 27 diploma). According to public records, Dr. Daniel and Dr. Lubin did not join CSU until the late 1990s—around two decades after CSU supposedly awarded the June 22 diploma and/or the June 27 diploma to Mr. Tinubu. *See* Liu Decl., Exs. F (biography of Dr. Daniel) and G (biography of Dr. Lubin). Applicant's research therefore calls into question the authenticity of

- 4 -

*both* the June 22 and the June 27 diplomas.

In his Complaint, Mr. Enahoro-Ebah alleges the following additional discrepancies between the information provided by Mr. Tinubu to INEC and the documents produced by CSU to Mr. Enahoro-Ebah:

- According to documents produced by CSU, the "Bola Tinubu" who attended CSU was a U.S. citizen, while in the information provided to INEC, Mr. Tinubu states that he has always been solely a Nigerian citizen and has never acquired the citizenship of any other country. Liu Decl., Ex. A at 3, ¶ 14.II.

- According to the documents produced by CSU, the "Bola Tinubu" who attended CSU was born in 1954, while according to the information provided to the INEC, Mr. Tinubu was born in 1952. *Id.* at 3, ¶ 14.I.

- According to the documents produced by CSU, the "Bola Tinubu" who applied to CSU submitted a prior transcript from Southwest College that identified "Bola Tinubu" as "female." *Id.* at 4, ¶ 14.IV.

- According to the documents produced by CSU, the "Bola Tinubu" who attended CSU claimed that s/he had graduated from Government College, Lagos, in 1970, while in the information provided to INEC, Mr. Tinubu makes no mention of having attended Government College. *Id.* at 4, ¶ 14.III.

Following the commencement of *Enahoro-Ebah v. Tinubu*, the Complaint's allegations were widely reported in the media, along with photographs of the CSU documents that Mr. Enahoro-Ebah submitted as exhibits. *See, e.g.*, Liu Decl., Ex. H. These documents are therefore in the public domain.

### B. *Abubakar et al. v. INEC et al.*

On March 20, 2023, Applicant Abubakar and the PDP filed a Petition against INEC, Mr. Tinubu, and the APC, in the Presidential Election Petition Court of the Court of Appeal in Abuja (the "Court of Appeal"), which is Nigeria's court of first instance for the challenge of presidential elections. Liu Decl. ¶ 5 and Ex. B. Among other issues, Applicant and the PDP have raised the allegations made in *Enahoro-Ebah v. Tinubu*. *Id.* ¶ 12. Mr. Obi and the Labour Party have also raised those allegations in their proceedings against INEC, Mr. Tinubu, and the APC. In response to those allegations, it is reported that Mr. Tinubu's counsel submitted a certification, purporting to be from Jamar C. Orr, the Deputy General Counsel of CSU, dated June 28, 2023, and certifying twelve CSU documents. *Id.* ¶ 13 and Ex. I.

Without discovery from CSU, Applicant has no way to verify whether the CSU documents submitted in the Nigerian proceedings in fact originated from CSU; whether CSU considers them to be authentic; and, if so, whether CSU can explain certain discrepancies that appear on the face of the documents.

### III. Facts Leading to the Instant Petition

The Court of Appeals is expected to issue its ruling on or before September 21, 2023. Liu Decl. ¶ 15. Accordingly, Applicant's undersigned counsel wrote to CSU's General Counsel on July 10, 2023, requesting CSU to produce the same documents it had produced in response to Mr. Enahoro-Ebah's subpoena, and asking CSU to state whether it considered the June 22 or the June 27 diploma (or both) to be authentic. Liu Decl. ¶ 16 and Ex. J. CSU's General Counsel responded by email dated July 10, 2023, declining to produce documents or answer Applicant's questions. He wrote that the "FERPA [i.e., the Family Educational Rights and Privacy Act] prevents the University from discussing student records with anyone other than the student or the individual

designated by the student as a rightful recipient of the records." *See* Liu Decl., Ex. K. Accordingly, Applicant proceeded to obtain a subpoena from the Cook County Court, just as Mr. Enahoro-Ebah had apparently done in August 2022. The clerk of the Cook County Court approved and provided a file-stamped copy of the subpoena at issue on July 11, 2023; Applicant sent a courtesy copy to CSU's General Counsel; and, on the following day, served the subpoena on CSU. Liu Decl. ¶¶ 18-19 and Exs. L, M.

On July 17, 2023, CSU's outside counsel, Mr. Michael Hayes, wrote to the undersigned counsel, advising that "CSU is required under FERPA to give notice to the former student involved so he can intervene, move to quash or move to limit the subpoena." Liu Decl., Ex. N. Mr. Hayes also advised that CSU's witness would not be available on the date for which Applicant had noticed the deposition. *Id.* The following day, July 18, 2023, the undersigned counsel held a videoconference with Mr. Hayes to discuss whether the subpoena could be narrowed or CSU's concerns could otherwise be addressed. Mr. Hayes reiterated that CSU would have to give notice to Mr. Tinubu. Liu Decl. ¶ 21.

On July 19, 2023, without contacting Applicant's counsel or filing a motion to intervene or even to appear in the Cook County Court proceedings, counsel for Mr. Tinubu filed a motion to strike the petition, quash the subpoena, and for sanctions against Applicant's counsel. Liu Decl., ¶ 22. Prior to that motion, Applicant was unaware that Mr. Tinubu had U.S. counsel. Applicant initially opposed the motion, believing it to be without merit and the sanctions request to be frivolous. However, with deadlines looming in Applicant's proceedings in Nigeria—and with uncertainty as to the timing by which the Cook County proceedings would proceed—Applicant notified CSU and Respondent of its plan to withdraw the Cook County Court petition and subpoena on July 27, 2023, and moved the Court to voluntarily dismiss both the next day. Liu Decl. ¶¶ 23-

24. The undersigned counsel advised Mr. Tinubu's and CSU's counsel that Applicant intended to file this petition under 28 U.S.C. § 1782 and would consent to Mr. Tinubu's intervention in this action. *Id*. To expedite these proceedings, Applicant hereby confirms its consent to Mr. Tinubu's intervention.

IV.     **Discovery Requested**

Applicant seeks discovery to ascertain whether the CSU documents that have already been submitted in the Nigerian proceedings, and which are at issue in Applicant's lawsuit, in fact originated from CSU; the circumstances in which CSU produced them to other litigants in the Nigerian proceedings; whether CSU considers them to be authentic; and, if so, whether CSU can explain the apparent discrepancies. The document discovery sought by Applicant is neither overly broad nor burdensome: Applicant seeks copies of any documents that CSU has already provided to other litigants in the Nigerian proceedings (including Messrs. Tinubu and Enahoro-Ebah), and any communications between CSU and those litigants concerning such documents. In addition, Applicant seeks the Rule 30(b)(6) deposition of a CSU designee who can state CSU's position on whether the documents submitted in the Nigerian litigation are authentic, address the apparent discrepancies among certain of the documents, and state whether, when, and why CSU produced them to other litigants in the Nigerian proceedings.

**ARGUMENT**[2]

As stated by the Supreme Court in *Intel*, "Section 1782 is the product of congressional efforts, over a span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Section 1782(a) provides in relevant part:

---

[2] We set forth the bases for this Court's jurisdiction and venue in this matter in the accompanying Application.

> The district court of the district in which a person resides or is found may order [a person] to give . . . testimony or [a] statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

In accordance with the statute, this Court may grant a Section 1782 application when it clears a series of three threshold statutory requirements as described below. *Venequip, S.A. v. Caterpillar, Inc.*, 2022 WL 823856, at *1 (N.D. Ill. Mar. 18, 2022). Upon meeting the threshold requirements, the court then "look[s] to four discretionary factors in deciding whether to exercise the authority conferred in Section 1782." *Id*. at *2 (citing *Intel*, 542 U.S. at 264). For the reasons set forth below, this Court should grant Applicant Abubakar's Application. The Application easily meets the statutory requirements. And the discretionary factors stated in *Intel* weigh decisively in favor of granting the discovery.

**I.    The Application Satisfies the Threshold Statutory Requirements of 28 U.S.C. § 1782**

Based on the plain language of the statute, Section 1782(a) authorizes a district court to grant a request for discovery if: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery [is] for use in a proceeding before a foreign tribunal, and (3) the application [is] made by a foreign or international tribunal or any interested person." *In re Bayerische Motoren Werke AG*, 2022 WL 1422758, at *3 (N.D. Ill. May 5, 2022) (citing *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011)). Applicant Abubakar's Application satisfies each statutory requirement.

**A.    CSU Is Established and Can Be Found in this District**

*First*, Respondent CSU is organized as a public university under the laws of Illinois, with its primary campus and offices in the Northern District of Illinois. CSU is therefore found in this

District, satisfying the statute's first requirement. *See In re Application of Bayer Healthcare LLC*, 2014 WL 2801206, at *1 (N.D. Ill. June 19, 2014) (holding target of discovery having principal place of business within district satisfies Section 1782 requirement).

    **B.    The Application Seeks Testimony and Documents from Respondent "For Use" in the Nigerian Proceedings**

*Second*, through this application, Applicant Abubakar seeks testimony and documents from Respondent for use in the Nigerian proceedings. This District has adopted a definition of the "for use in" requirement that is derived from Federal Rule of Civil Procedure 26. *In re Application for an Ord. for Jud. Assistance in a Foreign Proc. in the Lab. Ct. of Brazil*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006) (citing Fed. R. Civ. Proc. 26(b)(1)). "Consistent with [Section 1782's] modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *Id*. (quoting *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir.1998)). Based on that standard, this District holds that the "for use in" standard "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *Id*.

    In this case, Applicant has met the "for use" requirement because the discovery he seeks from CSU is plainly relevant to the Applicant's lawsuit. Applicant seeks discovery to test the authenticity of documents purporting to have come from CSU and that are already at issue in the Nigerian proceedings—including a June 28, 2023 certification from CSU's Deputy General Counsel appearing to certify twelve CSU documents—that CSU apparently provided for use by Mr. Tinubu. Only CSU can answer basic questions about the provenance and authenticity of the

CSU documents and explain certain discrepancies therein. The second statutory requirement is therefore met given that the requested materials "are clearly related" to the claims in the Nigerian proceedings. *Id.* at 1030; *see also In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, 2017 WL 3386115, at *5 (N.D. Ill. Aug. 7, 2017) (holding discovery from third party justified to prove default judgment in foreign arbitration).

   **C.**  **Applicant Abubakar, the Lead Petitioner in the Nigerian proceedings, Is an Interested Person within the Scope of 28 U.S.C. § 1782**

*Third*, Applicant, who is also the lead petitioner in *Abubakar et al. v. INEC et al.*, is indisputably an "interested person" within the scope of Section 1782. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782") (quotation marks and citations omitted). An applicant who seeks discovery for use in foreign proceedings is an interested party and plainly satisfies the third Section 1782 requirement. *In re King*, 2021 WL 722850, at *1 (N.D. Ill. Feb. 24, 2021) (holding that applicant who "expects to be a claimant" in foreign proceeding is interested party for purposes of Section 1782); *In re Lab. Ct. of Brazil*, 466 F. Supp. at 1026 ("As plaintiffs in the [foreign court], Petitioners are interested parties[.]").

Therefore, Applicant Abubakar satisfies all statutory requirements under Section 1782.

**II.**  **The *Intel* Factors Weigh Decisively in Favor of Granting the Application**

If an application meets the jurisdictional requirements, "courts then look to four discretionary factors in deciding whether to exercise the authority conferred in Section 1782." *Venequip*, 2022 WL 823856, at *2. In *Intel*, the Supreme Court outlined the four "factors that bear consideration in ruling on a § 1782(a) request": (1) whether the person from whom discovery is sought is a participant in the foreign proceedings at issue; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government

or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the "request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and, (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

In considering the four factors, the Court's discretion in deciding whether to grant the application should also be guided by Section 1782's "twin aims of 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Lab. Ct. of Brazil*, 466 F. Supp. 2d at 1025 (quoting *Intel*, 542 U.S. at 252). "Once a [§] 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate . . . that allowing the discovery sought. . . would disserve the statutory objectives." *Heraeus Kulzer*, 633 F.3d at 597.

Upon analysis of all four *Intel* factors, the Court should exercise its discretion to grant the Application.

      **A.**      **Respondent Is Not a Party to the Nigeria Proceeding**

CSU is not a party to the Nigerian proceedings. That fact weighs in favor of granting discovery under Section 1782. As the Supreme Court explained in *Intel*, Section 1782 discovery is ordinarily necessary when "evidence is sought from a nonparticipant in the matter arising abroad. . . . [N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unattainable absent § 1782(a) aid." *Intel*, 542 U.S. at 244; *see also In re Lab. Ct. of Brazil*, 466 F. Supp. at 1030 ("To assist foreign courts, American courts should grant applications seeking discovery from nonparties for use in the foreign proceedings.").

CSU is therefore the only entity whose testimony and documents can substantiate the allegations concerning the CSU documents that have been put at issue in the Nigerian proceedings;

yet, as a non-party to the Nigerian proceedings, CSU is beyond the jurisdiction of the Nigerian courts. The first *Intel* factor thus weighs in favor of granting the Application.

### B. The Nigerian Court Should Be Receptive to this Court's Assistance

"Under the second *Intel* factor, the court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or the agency abroad to U.S. federal-court judicial assistance." *In re Bayerische*, 2022 WL 1422758, at *3 (quoting *Intel*, 542 U.S. at 264).

The second *Intel* factor provides for a general inquiry to ensure that a foreign court "does not preclude using evidence through United States discovery procedures." *In re Application of Bayer Healthcare LLC*, 2014 WL 2801206, at *2 (N.D. Ill. June 19, 2014). In making the inquiry into whether U.S. court-ordered assistance would "offend" a foreign jurisdiction, this Court "should consider only authoritative proof that [the Nigerian Court] would **reject** evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added). To satisfy this burden, a party opposing the discovery must offer "authoritative proof" that the foreign tribunal would reject evidence obtained pursuant to Section 1782. *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997) ("[A]bsent 'authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782,' . . . a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.") (quoting *Euromepa*, 51 F.3d at 1100).

Thus, absent a clear directive to the contrary, "a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Euromepa*, 51 F.3d at 1100. Here, there is no evidence that the Nigerian courts will reject this Court's assistance.

- 13 -

Indeed, Nigerian courts have apparently accepted CSU documents produced by a subpoena issued by the Cook County Circuit Court.

Moreover, U.S. district courts have previously granted Section 1782 applications in aid of proceedings in Nigeria, including at the behest of the Nigerian government. *See, e.g.*, *In re Setraco Nigeria Ltd.*, 2013 WL 1704913, at *3 (M.D. Fla. Apr. 19, 2013) ("[T]he Court can find no Nigerian law, rule of evidence, or rule of civil or criminal procedure prohibiting the filing of this Petition or the requests made therein."); *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 144 (2d Cir. 2022) (vacating district court's motion to quash *ex parte* subpoenas granted in favor of Nigerian attorney general). The second *Intel* factor thus weighs in favor of granting the application.

### C. The Subpoenas Are Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions or Other Policies

The third *Intel* factor looks to "whether the application to take discovery for use in a foreign proceeding is an attempt to circumvent restrictions in the foreign proceeding or other polices of the foreign country or the United States[.]" *In re King*, 2021 WL 722850, at *1 (citing *Intel*, 542 U.S. at 264). However, this factor does not limit the scope of discovery to that which would be discoverable in the relevant foreign jurisdiction. *See Heraeus Kulzer, GmbH*, 633 F.3d at 597 (approving Section 1782 application even where applicant "cannot obtain even remotely comparable discovery" in a foreign court). Indeed, Section 1782 "does not require the material request to be discoverable or admissible in the foreign jurisdiction." *Lumenis Ltd. v. Alma Lasers Ltd.*, 2013 WL 1707571, at *2 (N.D. Ill. Apr. 19, 2013) (citing *Intel*, 542 U.S. at 260). Nor is there a "'quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court.'" *In re Lab. Ct. of Brazil*, 466 F. Supp. 2d at 1031 (quoting *Euromepa*, 51 F.3d at 1098).

Here, Applicant Abubakar has *prima facie* established the need for documents and testimony from Respondent to test the provenance and authenticity of evidence already submitted in the Nigerian proceedings. Applicant Abubakar has no reason to believe that such discovery would circumvent any foreign proof-gathering restriction in Nigeria. Indeed, most or all of the same documents, apparently, have already been submitted as evidence in the Nigerian proceedings. *See In re Setraco Nigeria Ltd.*, 2013 WL 1704913, at *3 (finding, with respect to the third *Intel* factor, that "there is no evidence that the instant Petition is interposed for any improper purpose or to circumvent any Nigerian law or rule."). The third *Intel* factor thus weighs in favor of granting the application.

### D. The Subpoenas Are Not Unduly Intrusive or Burdensome

Lastly, the subpoenas are neither "unduly intrusive or burdensome," as they have been tailored to seek only documents and information that relate to the merits of the Nigerian proceedings. *See In re Bayerische*, 2022 WL 1422758, at *4. It will in no way be burdensome for CSU to produce documents that it already produced to Mr. Tinubu and Mr. Enahoro-Ebah, along with any communications related to production, and to give a deposition stating and explaining its position on the authenticity of documents purporting to have been issued by CSU.

The fourth *Intel* factor thus weighs in favor of granting the application.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying Declaration of Angela M. Liu, Applicants respectfully ask the Court to grant the application and authorize the issuance of the subpoenas *duces tecum* and *ad testificandum* requested in this Application, and for such other and further relief as this Court deems just and proper.

Dated: Chicago, Illinois
August 2, 2023

By: /s/ Angela M. Liu

DECHERT LLP
Angela M. Liu
35 West Wacker Dr.
Suite 3400
Chicago, Illinois 60601
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
angela.liu@dechert.com

Andrew J. Levander*
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

Alexandre de Gramont*
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 261-3333
alex.degramont@dechert.com

*pro hac vice forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2023, a copy of the foregoing document was served on counsel for Respondent Chicago State University via email (Michael Hayes, michael.hayes@huschblackwell.com), pursuant to Respondent's consent, authorized by Federal Rule of Civil Procedure Rule 5(b)(2)(F). Notice to the parties before the foreign or international tribunal has been effectuated by email and FedEx pursuant to Local Rule 26.4 as follows:

**PEOPLE'S DEMOCRATIC PARTY**
c/o Chief Chris Uche (SAN) & Co.
34 Kumasi Crescent, Wuse II,
Abuja, Nigeria
info.uchelaw@gmail.com

**INDEPENDENT NATIONAL ELECTORAL COMMISSION**
c/o Abubakar Balarabe Mahmoud, SAN
Dikko & Mahmoud,
No 10 Seguela Street, Wuse 2,
Abuja, Nigeria
info@dikkoandmahmoud.com

**MR. BOLA TINUBU**
c/o Chief Oluwole Olanipekun, SAN
Wole Olanipekun & Co., God's Grace Chambers, 5, Maple Close,
Osborne Foreshore Estate, Phase 2, Ikoyi, Lagos, Nigeria
wole@woleolanipekun.com

Chris Carmichael
ccarmichael@henderson-parks.com

Victor Henderson
vphenderson@henderson-parks.com

**ALL PROGRESSIVES CONGRESS**
c/o Prince Lateef Fagbemi, SAN
Lateef Fagbemi SAN & Co., 4th Floor,
Rivers State Office Complex, Central Area, Abuja, Nigeria
lateeffagbemi@nigeriabar.org; fagblat@yahoo.com

/s/ *Angela M. Liu*
Angela M. Liu

DECHERT LLP
Angela M. Liu
35 West Wacker Drive, Suite 3400,
Chicago, IL 60601
(312) 646-5816
angela.liu@dechert.com

*Attorney for Petitioner Atiku Abubakar*