IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re* Application of ) | |
| ATIKU ABUBAKAR ) | |
| ) | |
| ) | No. 23 CV 5099 |
| For an Order Directing Discovery from ) | |
| CHICAGO STATE UNIVERSITY Pursuant to ) | |
| 28 U.S.C. § 1782. ) | |
| ) | |

## RESPONSE TO APPLICATION UNDER 28 U.S.C. § 1782

The Application seeks to issue two subpoenas to obtain personal information about the education of the current President of Nigeria, Bola A. Tinubu. The Application, however, does not seek information relevant to or admissible in the pending election proceedings cited and referenced in the Application. The foreign proceeding that Mr. Abubakar filed in Nigeria is an election challenge, alleging improprieties with the operation of the election and the counting of ballots. President Tinubu's educational background is not part of the electoral challenge.

President Tinubu's educational background appears to be part of different proceedings that Mr. Abubakar is not party to. But, Section 1782 does not authorize fishing expeditions to satisfy Mr. Abubakar's curiosity. Rather, section 1782 permits interested persons to obtain testimony or documents *for use in* a foreign proceeding. Here, the information sought is not part of the election proceedings that Mr. Abubakar

filed. Under the circumstances and the applicable standards, the Application should be denied.

## Background

The Applicant, Atiku Abubakar, served as Vice-President in Nigeria from 1999 to 2007 and was the candidate of the People's Democratic Party in the 2019 and 2023 elections. (Dkt. 5, Affidavit ¶¶ 2-3.) Mr. Abubakar was the runner up in the election held February 2023, and Bola Ahmed Tinubu was the winner. (*Id.* ¶ 3.) The People's Democratic Party and Mr. Abubakar challenged the conduct and outcome of the February 2023 election in Nigeria courts. (Dkt. 5-2, Exhibit B.) Mr. Abubakar and the People's Democratic Party are the "petitioners" in that proceeding and the Independent Electoral Commission, Bola Ahmed Tinubu, and the All Progressives Congress are the "respondents." (*Id.*, pg. 2 of 224.)

The election challenge petition asserts that Mr. Abubakar should have won the February 2023 election. (*Id.*, pg. 6 of 224, ¶ 12.) The petition asserts that "there are calculation errors", that there was noncompliance with election laws, and that there were "corrupt practices" in the counting of the ballots. (*Id.*, pgs. 7-8 of 224, ¶¶ 14, 16.) The focus of the petition in on electronic voting systems that the petition asserts were incorrectly utilized causing votes to be "wrongly allocated," not "lawful valid votes cast," and "over voting." (*Id*. pgs. 9-19 of 224, ¶¶ 19-43, pg. 44 of 224.)

The Application makes reference to other proceedings "on information and belief" that Mr. Abubakar is not a party to, but *may* involve allegations about President Tinubu's educational background.¹ (Dkt. 5, ¶¶ 12-13.) Those proceedings center around a self-proclaimed Nigerian "public interest litigator" who utilized a Chicago law firm to unilaterally (without court approval) issue a subpoena to Chicago State University "to test the truth and veracity of Mr. Tinubu's assertions . . . that he attended various educational institutions located in the Chicagoland Area." (**Exhibit 2**, 2022 L 7289 Petition and Court Docket; Dkt. 5-1, Exhibit A.) Chicago State University then purportedly provided documents in response. (Dkt. 5-1, Exhibit A; Dkt. 5-4, Exhibit D.) Those documents have apparently been utilized by the public interest litigator and bloggers to attack President Tinubu's character. (*See* Dkt. 5-8, Exhibit H and Dkt. 5-9, Exhibit I.)

Unfortunately, in responding to the illegal and invalid subpoena, CSU made several errors. CSU issued a new diploma for Bola A. Tinubu, but incorrectly wrote the date of graduation as June 27, 1979. (**Exhibit 3**, CSU Registrar Affidavit, ¶ 5.) The correct date was June 22, 1979, but that scrivener's error – along with a change in the CSU logo, the font on the diploma, and leadership at CSU who signed the diploma –

---

¹ Applicant filed a "Petition" to issue a deposition subpoena in Cook County Circuit Court, and then unilaterally issued the subpoena without any judge ever approving the petition or subpoena. (*See* Dkt. 5-15, Exhibit M; **Exhibit 1**, 2023 L 6854 Court Docket.) Applicant then withdrew the action, despite a briefing schedule being entered on the propriety of issuance of that subpoena, and then started over again in federal court.

created the appearance of differences between an earlier issued diploma and the one issued in response to the 2022 subpoena. (***Id.*** ¶¶ 3-5; *compare* Dkt. 5-3, Exhibit C *with* Dkt. 5-5, Exhibit E.) CSU confirmed that Bola A. Tinubu attended and graduated from Chicago State University with a Bachelor of Science degree in Business Administration. (**Exhibit 3**, CSU Registrar Affidavit ¶¶ 2, 7; Dkt. 5-4, Exhibit D.) Regardless of the purpose of this Application, the affidavit confirming President Tinubu's degree from Chicago State University should end Mr. Abubakar's quest to delve into his political opponent's academic records.

## Argument

Because Chicago State University "resides" in the Northern District of Illinois, Mr. Abubakar's Application satisfies the first of section 1782's three jurisdictional requirements; but the Application falters on the other two because the discovery sought is not for use in election challenge pending in the Nigerian election court, and Mr. Abubakar is not a party to the other Nigerian proceedings where he assumes the information might be relevant. *See* 28 U.S.C. § 1782. The Application falters further when considering the discretionary factors the Supreme Court identified in *Intel Corp. v. Advanced Micro Devices Inc.*, including: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the

court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." 542 U.S. 241, 264-65 (2004). Each of the four discretionary factors either weighs against the Application or is neutral.

The Application needs to meet the jurisdictional requirements and show that the discretionary factors weigh in favor of granting the Application and issuing the requested discovery. As the Supreme Court, "emphasized," however, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel*, 542 U.S. at 247, 264 ("We caution, however, that § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to "interested person[s]" in proceedings abroad."); *see also Kestrel Coal PTY. LTD. v. Joy Global, Inc.*, 362 F.3d 401, 406 (7th Cir. 2004) ("Section 1782 gives district judges a source of authority, but use of that power depends on a good reason."). Here, this is no "good reason" to grant the Application and issue two broad subpoenas.

**1.    Two of The Jurisdictional Requirements Are Not Met.**

    **a.**    *The discovery is not "for use" in the pending electoral proceedings*

The Application attaches Mr. Abubakar's two-hundred-plus page electoral challenge petition in the Nigeria election court. (Dkt. 5-2, Exhibit B.) That electoral

challenge petition is lengthy and asserts a series of errors in the process for tabulating ballots and in how the ballots were counted (electronically). (*Id*.) The petition does not mention or assert some errors in President Tinubu's educational background. (*Id*.) The records sought in the Application are therefore not "for use" in the pending electoral proceedings.

The Application and memorandum in support do not directly connect the discovery sought with the electoral challenge petition. Instead, the memorandum asserts President Tinubu's educational background is "at issue", and references "*Id*. ¶ 12" of Exhibit B, the electoral challenge petition. (*See* Dkt. 4, pgs. 1-2, 6, 10.) That electoral challenge petition is several hundred pages, including the supporting attachments, but paragraph 12 of the initial petition simply states that the wrong number of votes were returned. (Dkt. 5-2, Exhibit B, pg. 6 of 224.) Absent from both the underlying electoral petition and the memorandum are allegations that CSU's records or President Tinubu's education somehow affected the counting of ballots. The Application therefore does not seek documents "for use" in the Nigeria election proceedings brought by Mr. Abubakar.

  b.  *Applicant is not an "interested party" in other proceedings*

Because the requested discovery is not for use in the electoral challenge petition, the memorandum references a *different* proceeding where Mr. Abubakar is not a party and thereafter generalizes about "Nigerian proceedings." (Dkt. 4, pgs. 3, 6.) The

memorandum describes a complaint filed by Enahoro-Ebah, a self-styled "public interest litigator," who took it upon himself to use the Illinois courts to illegally obtain records from CSU. (*Id*. pgs. 3-5); 20 U.S.C. § 1232(g); 105 ILCS 10/6(a); (**Exhibit 2**, 2022 L 7289 Court Docket). The memorandum then repeats allegations from the Enahoro-Ebah petition and asserts there are questions created by Mr. Enahoro-Ebah that Mr. Abubakar's discovery seeks to resolve. (Dkt. 4, pg. 6.)

But, Mr. Abubakar is not a party to those other Nigerian proceedings. Although the definition of "interested party" is broad, Mr. Abubakar should not meet that definition because he has only "information and belief" knowledge of those proceedings and is not directly involved. Mr. Abubakar's apparent interest in resolving what he describes as simmering public questions is not a basis for invocation of section 1782.[2]

The Second Circuit confronted a similar question in *Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Investment Group, LLC v. KPMG, LLP*, and recognized that "Congress cannot have intended to confer 'interested person' status on all possible *amicus curiae*, when it passed § 1782." 798 F.3d 113, 119 (2d Cir. 2015).

---

[2] If the purpose of the application is to uncover "opposition research" or provide fodder for news bloggers, then it is not proper. "In politics, opposition research (also called oppo research) is the practice of collecting information on a political opponent or other adversary that can be used to discredit or otherwise weaken them. The information can include biographical, legal, criminal, medical, educational, or financial history or activities, as well as prior media coverage, or the voting record of a politician." *See* https://en.wikipedia.org/wiki/Opposition_research (visited 8/17/2023).

Even if Mr. Abubakar may have some generalized interest in his political opponent, he has failed to demonstrate an interest in the proceedings where the records he seeks are purportedly at issue. *Id.* at 120 ("On the one hand, the ability simply to pass on information to parties in a proceeding, without more, cannot confer "interested person" status any more than the ability of *amicus* counsel to pass along evidence and arguments to counsel representing one of the parties in litigation.") (emphasis in original). Mr. Abubakar, like the applicant in *Certain Funds*, is not an "interested person" as that term is used in section 1782.

Nor has Mr. Abubakar persuasively demonstrated that he could present evidence in the other proceedings where he is not a party. *Id*. ("Without some means of injecting the evidence into the proceeding, a § 1782 applicant cannot show that it has a role in the proceeding, such that it may 'use' the information"). The possibility that Mr. Abubakar might be able to pass information to the litigants does not render Mr. Abubakar an "interested party" in those proceedings. *See Ijk Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 679 (2d Cir. 2022) (holding that "the opportunity to present evidence to a party to a potential lawsuit does not render a movant under § 1782 an 'interested party.'"). Finally, although the memorandum asserts Mr. Abubakar could try to submit material in the electoral petition, that is not likely possible because there is nothing connecting the material from CSU to how ballots were or were not counted.

The information sought in the Application is not "for use" in Mr. Abubakar's electoral petition.

**2.     The Discretionary Factors Weigh Against the Application.**

*a.     The discovery is sought from a participant in the foreign proceeding*

Both Mr. Abubakar and President Tinubu are parties to the electoral challenge proceedings. The Supreme Court cautioned courts about applications seeking discovery "when the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. Because Mr. Abubakar and President Tinubu are parties to the foreign proceedings, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* Moreover, when discovery could have been sought from a party in a foreign proceeding, there is good reason to deny an applicant the use of section 1782. *See Gov't of Ghana v. ProEnergy Servs, LLC*, 677 F.3d 340, (8th Cir. 2012) ("Ghana has not demonstrated it needs to discover the documents in question from ProEnergy—who is not party to either foreign litigation—instead of directly from Balkan."). Since Mr. Abubakar and President Tinubu are both parties to the electoral proceedings, Mr. Abubakar should have attempted to utilize those proceedings to gather the information he seeks here.

The memorandum attempts to satisfy this factor by asserting that CSU is not a party to the Nigerian proceedings. This ignores the fact that the Application seeks

President Tinubu's records, and the memorandum claims the records at issue were already produced to President Tinubu. (Dkt. 4, pg. 2.) Subpoenaing President Tinubu's records indirectly does not alter that fact that the records should have been sought in the Nigerian proceedings. Because the records sought in the Application are President Tinubu's records and he is a party to the electoral proceeding, this first factor weighs against the Application.

> b. *The nature of the foreign tribunal and character of proceedings underway does not demonstrate a receptivity to the discovery.*

The Supreme Court explained that "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U. S. federal-court judicial assistance." *Intel*, 542 U.S. at 264; *Venequip, S.A. v. Caterpillar, Inc.*, No. 21 CV 6297, 2022 U.S. Dist. LEXIS 48443, *5 (N.D. Ill. March 18, 2022) (recognizing that the Swiss courts do not endorse U.S. discovery and the broader the effort, the more likely Swiss courts would reject it). Here, the nature of the tribunal and the proceedings underway – an election court challenge – do not indicate a receptivity to discovery about a candidate's educational background.

The memorandum assumes that the Nigerian "Presidential Election Petition Court" would be receptive to the material sought because discovery was allowed in records sought for two other Nigerian proceedings. (Dkt. 4, pg. 14.) One of those, however, was an official request from the Nigerian Attorney General. The other case

- 10 -

involved a corporation's request to obtain documentation about two companies formed in the U.S. and Canada by two employees and bearing the corporation's name. Neither case is similar to the election challenge here.

The character of the proceedings underway and the nature of the tribunal (the Presidential Election Petition Court) does not indicate a receptivity to the discovery sought. An extensive examination of foreign law is not necessary here because Nigerian courts, like American courts, confine admissible evidence to the issues presented by the pleadings. *See* **Exhibit 4**, ETA & ANOR V. DAZIE (2013) LPELR-20136(SC) (pdf pg. 20-21.); **Exhibit 5**, A.G.Leventis (nig) Plc v. Akpu (2007) LPELR-5(SC) (pdf pg. 29-31.); **Exhibit 6**, Reptico s. a. Geneva v. Afribank (nig) plc (2013) LPELR-20662(SC) (pdf pg. 48-51). The electoral challenge petition filed by Mr. Abubakar alleges issues with the electronic counting of ballots. (Dkt. 5-2, Exhibit B.) There is no allegation in the election petition about President Tinubu's educational background. (*Id*.) Based on the nature of the tribunal and the proceedings underway, the electoral court would not allow the material sought by the Application to be admitted. *See Kestrel Coal PTY. LTD. v. Joy Global, Inc.*, 362 F.3d 401, 406 (7th Cir. 2004) (rejecting application and commenting that "[o]nly if it turns out that the documents are relevant to the Australian suit, and difficult or impossible to obtain through that court's processes, would it make sense to launch an ancillary proceeding in the United States.").

Furthermore, the evidentiary portion of the electoral court proceeding closed July 29, 2023, and a judgment is currently in the process of issuing. (**Exhibit 7**, Report of Pre-Hearing Session.) Therefore, there is no indication that the Nigerian election court would receive any additional evidence. *See Kestrel Coal*, 362 F.3d at 406. Although Mr. Abubakar's counsel believes it can attempt to submit additional evidence, that would be contrary to what the election court already ordered. This factor weighs against the petition.

### c. *The proof gathering restrictions are neutral.*

Here it is unclear whether, under the appropriate circumstances, a Nigerian election court might consider material gathered using section 1782(a). This factor is neutral.

### d. *The discovery sought is intrusive and burdensome.*

Lastly, the Supreme Court instructed courts to consider whether a 1782 application is unduly intrusive or contains burdensome requests. *Intel*, 542 U.S. at 264-65. The subpoenas the Application seeks to issue are intrusive. Educational records are private and are protected by both federal and state law from disclosure. *See* 20 U.S.C. § 1232(g) (purpose of the Federal Educational Records and Privacy Act of 1974 is to protect students from a school's unauthorized release of a student's records); 105 ILCS

10/6(a) (prohibiting the release, transfer, disclosure and dissemination of school student records).

The subpoenas are also burdensome. In state court, Mr. Abubakar's counsel sought to issue a *single* subpoena for a corporate deposition of CSU. (**Exhibit 8**, IL State Court Subpoena w/Rider.) Now, Mr. Abubakar has expanded that to a document subpoena and a deposition subpoena. (Dkt. 1-1; Dkt. 1-2.) Both subpoenas are extremely broad. Here, the document subpoena stretches seven pages and the deposition subpoena six pages.[3] (*Id.*) The subpoenas are facially overbroad and are not consistent with narrow discovery for a specific purpose under section 1782.

The document subpoena contains a series of definitions and instructions demanding any possible type of document and electronic file format. (Dkt. 1-1.) The document subpoena seeks all documents ever provided by CSU about President Tinubu, any diploma ever issued by CSU for President Tinubu, and all communications between CSU and President Tinubu. In addition, the document subpoena seeks documents about how CSU issued diplomas from 1979 to the present. These requests are beyond broad and are burdensome.

The corporate deposition subpoena contains seven different topics, ranging from the "veracity" of each document produced in response to the document subpoena, to

---

[3] A targeted subpoena could utilize the text box provided in the form, and does not need seven pages of definitions, instructions, and multiple topics.

- 13 -

the process and procedures for maintaining records and responding to requests for students that attended in the 1970s and 80s. (Dkt. 1-2.) The subpoena goes on to seek deposition testimony about CSU's response to the earlier illegal subpoena, and how CSU searched for documents. (*Id*.) The deposition subpoena is a fishing expedition.

The subpoenas appear intended to satisfy curiosity. Yet, the essence of the issue identified by the Application is: (a) whether or not Bola A. Tinubu graduated from Chicago State University with a degree, and (b) whether the diplomas were issued by CSU. The rest is immaterial and answering those two key questions does not require two scorched-earth subpoenas. Both of those questions are answered in the seven-sentence affidavit provided by CSU's Registrar. (**Exhibit 3**, CSU Registrar Affidavit.) The Registrar's affidavit, together with the documents that Mr. Abubakar already possess, answer the core question: President Tinubu is a graduate of Chicago State University with a degree granted in June 1979. The proposed subpoenas are intrusive and burdensome and this factor weighs against the Application.

## Conclusion

The information sought is not "for use" in the electoral ballot counting challenge filed by the Applicant, and the Applicant is not an "interested person" in the other proceedings where the material could potentially be relevant. The discretionary factors weigh against allowing the discovery because the interested parties here are also parties in the foreign proceeding, and there is no indication that the electoral court would

- 15 -

accept information unconnected to the ballot counting challenge. Lastly, the subpoenas are intrusive and overbroad and unnecessary considering the affidavit provided by Chicago State University's registrar which clearly and conclusively establishes the Bola A. Tinubu graduated with a degree from CSU in June 1979. The Application should be denied.

        Respectfully submitted,

        **INTERVENOR BOLA AHMED TINUBU,**

        By: s/ Christopher Carmichael
            One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel: (312) 262-2900
vphenderson@henderson-parks.com
ccarmichael@henderson-parks.com

        Respectfully submitted,

        **INTERVENOR BOLA AHMED TINUBU,**

        By: s/Oluwole Afolabi
            Admitted *Pro Hac Vice*

Oluwole Afolabi
**LAW OFFICES OF OLUWOLE AFOLABI**
805 Castleton Ave.
Staten Island, New York 10310
Tel: (973) 703-9433
woleafolabi@gmail.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on **August 23, 2023**, the foregoing **Response to Application for Issuance of Discovery Under 28 USC § 1782** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

By: /s/ Chirstopher Carmichael