IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re* Application of ) <br> ATIKU ABUBAKAR ) <br> ) <br> ) <br> For an Order Directing Discovery from ) <br> CHICAGO STATE UNIVERSITY Pursuant to ) <br> 28 U.S.C. § 1782. ) <br> ) | Case No. 1:23-cv-5099 <br> Honorable Nancy L. Maldonado <br><br> Magistrate Judge Jeffrey T. Gilbert |

**APPLICANT ATIKU ABUBAKAR'S OMNIBUS REPLY
IN FURTHER SUPPORT OF HIS
<u>APPLICATION PURSUANT TO 28 U.S.C. § 1782</u>**

DECHERT LLP
Angela M. Liu
35 West Wacker Dr.
Suite 3400
Chicago, Illinois 60601
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
angela.liu@dechert.com

Andrew J. Levander*
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

Alexandre de Gramont*
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 261-3333
alex.degramont@dechert.com

* *pro hac vice* admitted

**PRELIMINARY STATEMENT**

Applicant Atiku Abubakar ("Applicant" or "Abubakar") respectfully submits his reply brief in further support of his Application Pursuant to 28 U.S.C. § 1782 (the "Application") (Dkt. 1).[1] Given the urgency of the Nigerian proceedings, as discussed below, Abubakar also narrows the discovery requests as reflected in the revised proposed subpoenas, attached as Exhibits 3 and 4. To address factual misstatements and other issues in the Responses of Intervenor Bola Ahmed Tinubu ("Intervenor" or "Tinubu") and Respondent Chicago State University ("Respondent" or "CSU"), Applicant submits herewith the Second Declaration of Angela M. Liu (Sept. 6, 2023) ("Second Liu Decl." (with Exhibits P-R)) and the Declaration of Ahmed Tijjani Uwais (Sept. 5, 2023) ("Uwais Decl." (with Exhibits A-G)). Mr. Uwais is one of the lawyers representing Abubakar in his pending litigation against Tinubu and other defendants, *Abubakar et al. v. INEC* (the "Abubakar Proceeding"), which challenges the electoral results *and* Tinubu's qualifications to serve as Nigeria's president. *See* Uwais Decl. ¶¶ 1-3; *see also* Br. at 6.

At the outset, Abubakar must inform this Court that the Nigerian Court of Appeals reportedly issued a ruling today (September 6, 2023), finding in favor of Tinubu and against Abubakar. Second Liu Decl. ¶ 5. Abubakar now has 21 days—until **September 27, 2023**—to file his appeal of that ruling to the Supreme Court of Nigeria, which Applicant intends to do. *Id.*; Uwais Decl. ¶ 13. Time is therefore of the essence and ***Abubakar respectfully asks this Court for***

---

[1] Citations to Applicant's Memorandum of Law in Support of the Application ("Brief") are referred to as "Br. at __." Dkt. 4. Citations to the Declaration of Angela M. Liu dated Aug. 2, 2023 are referred to as the "First Liu Declaration." Dkt. 5. Citations to Respondent CSU's Response to the Application are referred to as "CSU's Opp. at __." Dkt. 20. Citations to Intervenor Bola A. Tinubu's Response to the Application are referred to as "Tinubu's Opp at __." Dkt. 21.

***an expedited ruling and order, so that if this Court grants the discovery requested, Abubakar can receive the documents and take the Rule 30(b)(6) deposition of CSU before September 27***.

The Nigerian Court of Appeals' decision in no way changes this Court's analysis under Section 1782. *See, e.g., Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012) (holding that discovery for use in an appeal, even if not yet filed, satisfies the "for use" requirement). As explained in the Uwais Declaration, Abubakar is permitted to offer new evidence in the Supreme Court of Nigeria under the standards described herein. Br. at 13-14; Uwais Decl. ¶¶ 12-13. Abubakar therefore seeks discovery "for use" in the proceeding before the Supreme Court. *See* Br. at 3 ("Applicant seeks discovery only for use in Applicant's proceedings (and any proceedings arising therefrom . . . .)").

As demonstrated below, the assertions by Tinubu that Abubakar has not met certain of the statutory and discretionary factors under Section 1782 have no factual or legal merit. As for CSU, it "defers to Tinubu on whether any of the discovery information sought here is appropriate under 28 U.S.C. § 1782, including whether it is relevant to the pending Nigerian proceeding." CSU Opp. at 2. CSU also says it "reserves" its objections as to the "scope and relevancy" of the discovery requests until ***after*** the Court has ruled on the Application. *Id.* at 2-3. But "scope and relevancy"—and whether the requests are unduly burdensome—are among the discretionary factors that this Court must consider in ruling on a Section 1782 request. *See supra* Section II. Further, this Court ordered that all "Responses to the Application shall be filed by 8/23/23." Dkt. 15. Abubakar urged CSU to meet and confer on these issues prior to CSU submitting its Response, but CSU declined to engage with Abubakar on any substantive issues regarding the Application. Second Liu Decl.

¶ 4.  Having ignored repeated invitations to make their objections known, the time for CSU to raise concerns regarding scope and relevancy has now passed.

For the reasons set forth in Abubakar's opening submission, and for the additional reasons stated below, the Court should grant the Application and order the discovery requested on the expedited basis requested by Abubakar.

## ARGUMENT

I.     **SECTION 1782's STATUTORY ELEMENTS ARE SATISFIED.**

Tinubu argues that two of the three statutory factors under Section 1782, as articulated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004), are not satisfied by Abubakar's Application.  While conceding (as he must) that CSU resides in this District, Tinubu's Opp. at 5, Tinubu asserts that "the discovery is not 'for use' in the pending electoral proceedings" and that "Applicant is not an "interested party" in the electoral challenge petition."  *Id*. at 5-9.  Tinubu's arguments do not withstand scrutiny.  The Application easily satisfies both factors.

    A.     **The Discovery Sought is "For Use" in the Abubakar Proceeding.**

        1.     **The CSU Documents Are at Issue and in Evidence in the Abubakar Proceeding.**

Tinubu's Response wrongly asserts that "Tinubu's educational background is not part of [Abubakar's] electoral challenge" but rather "appears to be part of different proceedings that Mr. Abubakar is not party to."  Tinubu's Opp. at 1.  As plainly stated in the Application—and as Tinubu knows full well—Abubakar and his political party (the People's Democratic Party) "***have raised the allegations made in Enahoro-Ebah v. Tinubu***" in the Abubakar Proceeding, Br. at 6 (emphasis added), which are described by Abubakar at length his opening submission.  *See* Br. at 2-5.  The Petition in the Abubakar Proceeding (included with Abubakar's Opening Brief) alleges

- 3 -

that Tinubu "was at the time of the Election not qualified to contest the Election." Petition in *Abubakar et al. v. INEC et al.*, First Liu Decl., Ex. B, ¶ 16(d). The CSU documents go directly to the qualification of Tinubu.

Given that Tinubu has called into question the averments made by Abubakar and his counsel in Applicant's Opening Brief—and for the avoidance of doubt—Applicant submits herewith the Uwais Declaration, along with additional submissions from the Abubakar Proceeding. Those submissions **include the testimony of Mr. Enahoro-Ebah**, who was **subpoenaed by Abubakar to testify and submit CSU documents into evidence in the Abubakar Proceeding**. Uwais Decl. ¶¶ 3-4 and Ex. C, at 221-25. As Mr. Uwais explains in his Declaration, Abubakar specifically raised allegations concerning the CSU documents in his written submissions to the Court. For example, a reply brief submitted by Abubakar in the Abubakar Proceeding states:

> [Tinubu] has demonstrated inconsistency as to his actual date of birth, secondary schools he attended . . . ; his State of origin, gender; actual name; ***certificates evidencing Universities attended (Chicago State University)***. The purported degree Certificate of [Tinubu] ***allegedly acquired at the Chicago State University*** did not belong to him but to a Female . . . .

Petitioners' Reply to the 2nd Respondent's Reply to the Petition in *Abubakar et al. v. INEC et al.*, ¶ 3(i) (April 23, 2023) (Uwais Decl. ¶ 7 and Ex. E) (emphasis added). Contrary to Tinubu's assertion, his "educational background"—and the CSU documents—are very much part of the Abubakar Proceeding.

### 2. The Discovery Sought Easily Meets the "For Use" Standard.

With the rebuttal of Tinubu's assertion that his educational record is not part of the Abubakar Proceeding, his argument that the discovery sought does not meet the "for use" standard under Section 1782 quickly falls away. As explained in Abubakar's opening submission, this District has adopted a "for use" standard that mirrors that of relevancy under Federal Rule of Civil

Procedure 26(b)(1). Br. at 10 (citing *In re Appl. for an Ord. for Jud. Assistance in a Foreign Proc. in the Lab. Ct. of Braz.*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006) ("[t]he reference [in Section 1782] to the Federal Rules signals to the courts that discovery may be as broad and liberal as the Federal Rules allow."); *see also Sailsbery v. Vill. of Sauk Vill.,* 2020 WL 5570091, *2 (N.D. Ill. Sept. 17, 2020) ("Relevance for purposes of Rule 26(b)(1) is very broad, and the Court should be permissive when considering relevance objections."). The "for use" standard does not require that discovery be reasonably calculated to lead to evidence admissible in the foreign proceeding, nor does it have a foreign-discoverability requirement. *Lab. Ct. of Braz*., 466 F. Supp. 2d at 1029.

As stated in the Opening Brief, and reiterated above, the authenticity and provenance of the CSU documents submitted into evidence in the Nigerian proceedings—including the Abubakar Proceeding—plainly go to Tinubu's qualifications to run for President. As explained in the Uwais Declaration, the Nigerian Constitution specifically provides that a person shall not be qualified for election to the Office of President if he has presented a false certificate to INEC. Uwais Decl. ¶ 3 and Ex. A. Moreover, the Electoral Act of 2022 provides that the winning candidate can be challenged and disqualified from office ***post-election*** if it is demonstrated that he was not qualified for office. *Id*. and Ex. B. As explained at length in the Opening Brief, Mr. Tinubu has submitted a document to INEC that purports to be a CSU diploma dated June 22, 1979 (the "June 22 diploma"), but does not appear to be authentic. Br. at 5. It has grammatical errors and purports to be signed by Dr. Elnora Daniel as President of CSU, but she did not arrive at CSU until the late 1990s. The other two signatures on the June 22 diploma are illegible. Br. at 4.

The diploma for Tinubu dated June 27, 1979 (the "June 27 diploma")—produced by CSU to Mr. Enahoro-Ebah in 2022—raises further questions. In addition to the different date, it has different language, a different font, and a different seal. In contrast to the June 22 diploma, which

has three signatures, the June 27 diploma has only two: Dr. Niva Lubin as Chair of the Board and Dr. Daniel as President. Like Dr. Daniel, Dr. Lubin did not arrive at CSU until the late 1990s. Br. at 4; First Liu. Decl., Exs. F and G.[2]

Contrary to Tinubu's assertion, the Affidavit from CSU's Registrar (Mr. Caleb Westberg), submitted with Tinubu's Response, hardly resolves these questions. *See* Tinubu's Opp. at 4. First, even if Tinubu in fact received a degree from CSU, that does not answer the question of whether the June 22 diploma that he submitted to INEC is a forgery—which by itself could disqualify him from office. Uwais Decl. ¶ 11. Second, Mr. Westberg asserts that CSU "provided a diploma to Bola Ahmed Tinubu, and subsequently provided a *certified* (or official copy) of that diploma." Westberg Aff't, ¶ 2. But he never states whether the June 22 diploma submitted by Tinubu to INEC was in fact provided by CSU. Third, Mr. Westberg's assertion that "all diplomas are signed by the *current* President/Board Chair," *see id.* ¶ 4, is illogical. The June 22 diploma (ostensibly the diploma originally issued to Tinubu) bears the signature of Dr. Daniel, who indisputably did not arrive at CSU until many years later. The June 27 diploma, which was provided by CSU to Mr. Enahoro-Ebah in 2022, purports to be signed by Dr. Daniel and Dr. Lubin. But they had both left CSU many years earlier. Second Liu Decl. ¶ 3, Ex. P; First Liu Decl. ¶ 10, Ex. G. The Westberg Affidavit simply raises further questions about the authenticity of these documents. And Mr. Westberg never addresses the provenance and authenticity of the other CSU documents at issue.

Tinubu is expected to argue that the Court of Appeal's decision renders this Application moot. Even CSU, while claiming to defer to Tinubu on these issues, asks the Court "to scrutinize

---

[2] As stated in the opening submission, Applicant's counsel realized only recently that both the June 22 diploma and the June 27 diploma purport to be signed by persons who arrived at CSU decades after Tinubu allegedly graduated. Br. at 4; *see also* Uwais Decl. ¶ 5.

both the actual status of the Nigerian proceedings and the likelihood that any discovery information provided by the University would in fact be considered in the Nigerian proceeding." CSU's Opp. at 2. But there is no admissibility requirement for discovery under the "for use" prong of Section 1782. *See Lumenis Ltd. v. Alma Lasers Ltd.*, 2013 WL 1707571, at *2 (N.D. Ill. Apr. 19, 2013) (holding Section 1782 "does not require the material request to be discoverable or admissible in the foreign jurisdiction"). Courts have held that discovery for an appeal, even one not yet filed, satisfies the statutory "for use" requirement. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 83 (2d Cir. 2012) (explaining foreign proceedings need not be 'pending' or 'imminent' to meet for use requirement); *cf. In re King*, No. 21 CV 919, 2021 WL 722850, at *1 (N.D. Ill. Feb. 24, 2021) (holding that proceedings for which discovery is sought need only be "within reasonable contemplation") (citation omitted).

As stated in the Opening Brief, and confirmed in the Uwais Declaration, "the Supreme Court can still accept evidence in 'exceptional circumstances'" under the Nigerian Electoral Act of 2022, which established a special procedure for challenging election results and prevails over the ordinary rules of the Court of Appeal and Supreme Court." Uwais Decl. ¶ 12. Moreover, there is precedent for the Nigerian Supreme Court to exercise its discretion to admit new evidence in election challenges." *Id.*, Ex. G. Again, it is not for this Court to assess whether the evidence would be "discoverable or admissible in the foreign jurisdiction." *Lumenis*, 2013 WL 170751, at *2. The "for use" test merely requires that the evidence be relevant, under the broad standards of Rule 26(b)(1), to issues in the foreign proceeding. Whether CSU can authenticate the CSU documents at issue—in particular, the June 22 diploma submitted under oath by Tinubu to INEC— is indisputably relevant to the issues raised in the Abubakar Proceeding.

### B. Applicant is an "Interested Party" in His Own Proceeding in Nigeria

Tinubu's argument that Abubakar is not an "interested person" in the Nigerian proceedings relies on the false assertion that the CSU documents are irrelevant to the Abubakar Proceeding. Abubakar is plainly an interested person in his own proceeding and the CSU documents are at issue—indeed, in evidence—in that case. *See Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . ."). To the best of Applicant's knowledge, the only CSU documents at issue that have not been admitted in the Abubakar Proceeding are the CSU documents allegedly certified by CSU's former Associate General Counsel, Mr. Orr, which were admitted into evidence in Mr. Obi's proceeding. *See supra* at Section I.A.1; Br. at 6; Uwais Decl. ¶ 6, Ex. D. But Abubakar plainly is an "interested person" under Section 1782 with respect to those documents—including whether they are authentic and whether and why Mr. Orr certified them. If, for example, Mr. Orr did not certify them—or was not authorized to provide them to Tinubu—Abubakar would offer such evidence in his appeal to the Supreme Court of Nigeria.

In sum, Tinubu's arguments that the documents are not "for use" in the foreign proceedings, and that Tinubu is not an "interested person" in those proceedings, border on frivolous. The Application easily meets all three of the statutory factors under Section 1782.

### II. THE DISCRETIONARY FACTORS WEIGH OVERWHELMINGLY IN FAVOR OF GRANTING DISCOVERY.

Where, as here, an application meets the jurisdictional requirements, courts then look to the four factors stated in *Intel* to guide their exercise of discretion in ruling on the discovery requests. *E.g.*, *Venequip*, 2022 WL 823856, at *2. *See* Br. at 11-15. The four *Intel* factors weigh overwhelmingly in favor of granting the Application, and Tinubu's arguments to the contrary fail to withstand even modest scrutiny.

### A. CSU is Not a Party to the Nigerian Proceedings.

As the Court stated in *Intel*, Section 1782 discovery is ordinarily necessary when "evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 244. Where, as here, "nonparticipants [are] outside the foreign tribunal's jurisdictional reach . . . , their evidence, available in the United States, may be unattainable absent §1782(a) aid." *Id.* at 244. Tinubu argues that this factor does not apply here because "the Application seeks President Tinubu's records, and the memorandum claims the records at issue were already produced to President Tinubu." Tinubu Opp. at 10. That argument misses the point. Abubakar is not seeking Tinubu's records, which have already been submitted in the Nigerian proceedings. Rather, he is asking CSU to authenticate the documents, and—especially with respect to the two diplomas—explain their discrepancies. That is discovery that only CSU can provide, and CSU is not a party to the Nigerian proceedings. This factor plainly weighs in favor of granting the application.

### B. The Nigerian Courts Should Be Receptive To This Evidence.

Mr. Tinubu argues that the "character of the proceedings underway and the nature of the tribunal . . . does not indicate a receptivity to the discovery sought." Tinubu Opp. at 11. In support, he cites to a handful of inapposite Nigerian cases about the admissibility of evidence. *Id.* But those cases simply stand for the uncontroversial proposition that Nigerian courts confine admissible evidence to issues presented by the pleadings—and admissibility is not the standard here in any event.

Rather, as explained in the Opening Brief, a party opposing a Section 1782 request must furnish "clear" and "authoritative proof" by the relevant foreign "judicial, executive or legislative bodies objecting to foreign discovery assistance" to show that the foreign tribunal would be unreceptive to a U.S. court's assistance. Br. at 13; *see Euromepa S.A. v. R. Esmerian, Inc.*, 51

- 9 -

F.3d 1095, 1100-01 (2d Cir. 1995); *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("Once a [Section] 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought . . . would disserve the statutory objectives.").

Tinubu comes nowhere close to meeting that standard. To the contrary, the fact that the Nigerian Court of Appeal admitted the CSU documents obtained by Mr. Enahoro-Ebah's state court subpoena to CSU demonstrates that the Nigerian courts are receptive to this type of evidence. The fact that Nigeria's Election Electoral Law of 2022 allows for the admission of new evidence in the Supreme Court—even if under a demanding standard—also shows receptiveness rather than hostility to the evidence sought by the Application.[3] This factor, as interpreted by courts in this and other Circuits, weighs in favor of ordering the discovery.

    **C.    Petitioner is Not "Circumventing" Nigerian Law.**

As explained in the Opening Brief, at 14-15, the third *Intel* factor is "whether the application to take discovery for use in a foreign proceeding is an attempt to circumvent restrictions in the foreign proceeding or other policies of the foreign country or the United States[.]" *In re*

---

[3] The cases cited by Tinubu on this point do not help his cause, as they involved applications that are easily distinguishable from the Application here. Thus, in *Kestel Coal Pty. v. Joy Global Inc.*, 362 F.3d 401 (7th Cir. 2004), an Australian company sought to cause a U.S. company to have its indirect subsidiaries, which included two Australian firms and a U.K. firm, retrieve documents in Australia and the U.K. and ship them to Wisconsin for production. The Seventh Circuit reversed the decision of the district court granting the application in part because the task would be "mammoth" and the Australian judge had already specifically held that the materials were "not required." *Id.* at 403. Similarly, in *Venequip, S.A. v. Caterpillar, Inc.*, No. 21-cv-6297, 2022 WL 823856 (N.D. Ill. Mar. 18, 2022), *pending appeal*, No. 22-1463 (7th Cir. 2022), the petitioner "cast its net widely" with multiple 1782 petitions, seeking broad categories of information, and in a case where the agreements at issue contained forum-selection clauses limiting disputes to litigation in Switzerland. *Id.* at *2.

*King*, 2021 WL 722850, at * 1 (citing *Intel*, 542 U.S. at 264). Tinubu makes no effort to provide any such showing, but instead states that it is "unclear whether . . . a Nigerian election court might consider material gathered using section 1782(a)." Tinubu Opp. at 12. Here, too, Tinubu ignores the applicable standard and fails to provide any evidence "that the instant Petition is interposed for any improper purpose or to circumvent any Nigerian law or rule." *In re Setraco Nigeria Ltd.*, 2013 WL 1704913, at *3 (M.D. Fla. Apr. 19, 2013). In the absence of any such evidence, this factor also weighs in favor of granting the Application.

        D.        **The Discovery Sought is Neither Intrusive Nor Burdensome.**

                1.        **The Discovery Sought is Not Unduly "Intrusive."**

Tinubu claims that the discovery sought by the Application is protected by both the Federal Educational Records and Privacy Act of 1974 ("FERPA") and the Illinois School Student Records Act. Tinubu Opp. at 12-13. According to Tinubu, the discovery is therefore "intrusive." *Id*. But Abubakar is not seeking the educational records of Tinubu; those records have already been introduced into the Nigerian proceedings (including by Tinubu himself) and widely published in the media. Rather, Abubakar is seeking to establish CSU's position on the authenticity of the education records.

Moreover, FERPA explicitly permits the disclosure of protected information "furnished in compliance with judicial order or pursuant to any lawfully issued subpoena." 20 U.S.C. § 1232g(b)(2). Likewise, the Illinois statute makes an exception to provide such records "pursuant to a court order" as well as "to any person as specifically required by State or federal law." 105 ILCS 10/6(a)(5)-(6). Courts have acknowledged that such statutes do not act as a shield against a court-issued subpoena, particularly when the disclosure relates to important issues. *See Jakes v. Boudreau*, No. 19 C 2204, 2020 WL 5297007, at *5 (N.D. Ill. Sept. 4, 2020) ("[t]he assertion of a

privilege or privacy interest under FERPA is a nonstarter; the statute does not give individuals any enforceable rights") (citation omitted); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008) ("FERPA does not provide a privilege that prevents the disclosure of student records"). *Cf. McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) (granting 1782 application despite journalist wanting to protect the identity of their source and holding that subpoena duces tecum must only be "reasonable in the circumstances" and "[s]tate-law privileges are not 'legally applicable' in the federal question cases. . . ."). Here, Tinubu is a public figure and currently the President of Nigeria. Copies of the diplomas and other documents that purport to be from CSU are already in the public domain. First Liu Decl. ¶¶ 3-5. Their provenance and authenticity have been put squarely at issue in Nigerian proceedings concerning the integrity of the electoral processes and results, including those brought by Abubakar. Uwais Decl. ¶¶ 3-4. For these reasons—and given that any court-ordered subpoena provides an exception to the protections normally afforded to educational records—Tinubu's argument that the discovery sought is unduly intrusive has no merit.

### 2. The Discovery Sought is Not Unduly Burdensome.

As Intervenor rather than Respondent, Tinubu has no standing to object to the supposed burden that the discovery would place on CSU. Moreover, Tinubu grossly exaggerates the scope of the subpoenas at issue by complaining that the subpoenas "stretch seven pages," which, of course, mostly consist of standard language relating to legal instructions and definitions. As stated above, CSU has not raised any timely objection as to why the discovery requests would impose any burden. Nonetheless, given the need to obtain this discovery as quickly as possible, Abubakar will limit the requests as reflected in the revised proposed subpoenas attached as Exhibits 3 and 4. There are now four narrow document requests, which relate to the two different versions of

Tinubu's CSU diplomas and the documents allegedly certified by CSU's Associate General Counsel, Mr. Orr, for use by Tinubu in the Nigerian proceedings. Abubakar anticipates that CSU will have only a handful of responsive documents to produce—most or all of which CSU has already produced. For the Rule 30(b)(6) deposition notice, there are five narrow topics asking for: (a) CSU's position on the authenticity of the roughly ten CSU documents that have been submitted in the Nigerian proceedings (and any additional documents produced in response to the document requests); (b) the basis for statements made in the Westberg Affidavit; and (c) whether Mr. Orr in fact provided the certified documents to Mr. Tinubu, and, if so, under what circumstances.

We urge the Court to review the revised requests. *See* Exs. 3, and 4. There is simply no basis on which Tinubu or CSU can credibly argue that they are intrusive or burdensome. Accordingly, the Court should grant the Application and order CSU to provide the discovery on an expedited basis. Given that Abubakar is required to submit his appeal to Nigeria's Supreme Court on or about September 27, 2023, *see* Uwais Decl. ¶ 13); that CSU has had Abubakar's broader requests in its possession since August 2, 2023; and that CSU is mostly being asked to authenticate approximately ten documents that it already produced to other litigants in the Nigerian proceedings, we ask that the Court order CSU to produce any responsive documents by September 15, 2023, and to produce a witness for deposition as early as possible during the week of September 18, 2023.

## **CONCLUSION**

Based on the foregoing, Applicant respectfully request the Court approve the Application for discovery and issue an order:

1. Authorizing Applicant's counsel to issue the subpoenas to CSU in the form attached as Exhibits 3 and 4.

2. Compel CSU to produce the documents requested in Attachment A of Exhibit 3 by no later than September 15, 2023, and to provide a witness to provide the testimony requested in Attachment A of Exhibit 4 as early as possible during the week of September 18, 2023.

Dated: September 6, 2023

/s/ *Angela M. Liu*

DECHERT LLP
Angela M. Liu
35 West Wacker Dr.
Suite 3400
Chicago, Illinois 60601
Telephone: (312) 646-5800
Facsimile: (312) 646-5858
angela.liu@dechert.com

Andrew J. Levander*
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

Alexandre de Gramont*
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 261-3333
alex.degramont@dechert.com

**pro hac vice* admitted

*Counsel for Applicant*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 6th day of September, 2023, the foregoing was served on all counsel of record via CM/ECF.

/s/ *Angela M. Liu*
Angela M. Liu
