# EXHIBIT F

# Hon. Hassan Anthony Saleh V. Christian Adabah Abah & Ors (2017)

**LAWGLOBAL HUB Lead Judgment Report**

**SIDI DAUDA BAGE, J.S.C.**

This is an appeal from the Judgment of the Court of Appeal, Abuja Judicial Division, delivered on the 8th of February, 2016, The Court of Appeal sat over the Judgment of Federal High Court Abuja, in a Pre-Election cause. The Federal High Court Abuja, as the trial Court, had passed judgment in favour of the Appellant (who was the Plaintiff there). The Respondents (who were the Defendants at the trial Court felt aggrieved by the Federal High Court decision. They went on appeal to the Court of Appeal given its status as the penultimate Court in the country Judicial hierarchy. The Court of Appeal partially reversed the decision of the trial Court. This in effect, means the respondents before this Court were partially successful at the Court of Appeal (where they were the Appellants). Their appeal there, was partially (but crucially) granted. The pendulum swung again. Hon. Hassan Anthony Saleh, as the Respondent at the Court of Appeal was dissatisfied and aggrieved by the reversal of his trial Court fortune by the Court of Appeal. He therefore, proceeded to this Court being the apex

1

and ultimate Court in the country thereby making him the Appellant before us.

The Appellant and the first Respondent are respective members of the second Respondent, the Peoples Democratic Party (PDP). The Appellant and first Respondent participated in the primary Election conducted by the second Respondent prior to the 2011 General Election into the House of Representatives. They contested against each other for the seat of Ado, Okpokwa and Ogbadigbo Federal Constituency of Benue State (herein after simply referred to as the disputed constituency". The first respondent withdrew from the race after he had defeated the Appellant.

In the relevant INEC form, he had answered No to the question of if he had ever presented any forged certificate to the Electoral Body (i.e the INEC). On this development, the Appellant sought that the first Respondent be disqualified and in the latters stead (Appellants) be substituted. The Peoples Democratic Party (PDP) leadership and INDEPENDENT NATIONAL ELECTORAL COMMISSION (INEC) declined to do so. This prompted the Appellants to file a suit via originating summons at the Court of

2

first instance. The Federal High Court, adjudged the suit in favour of the Appellant. The first and second Respondents who were the Defendants there appealed to the Court of Appeal and succeeded; wherewith the Appellant (who was the Respondent at the penultimate Court) appealed to this Court.

The above is considered a fair condensation and/or compact of the case at hand. In accordance with the Rules of this Court, parties exchanged and served Briefs of arguments.

The Appellants Brief filed on the 21st March, 2016 was settled by Dr. Alex A. Izinyon, SAN and company. The Reply Brief which was filed on the 6th of October, 2016 was on behalf of only the first and second Respondents. It was filed and settled by S.I. Ameh, SAN and company. It needs be repeated that the third Respondent (INEC) filed no Brief.

The Notice of Appeal filed before this Court sets out Nine (9) Grounds of Appeal with each of the Grounds being supported by a number of particulars elucidating and supporting the respective Grounds. See Exhibit "O" on pages 2-16 of the Notice of Appeal. Three (3) interrelated and integrated forms of Relief are being requested by the

3

Appellant. See Exhibit O – the Notice of Appeal on page 16. For the avoidance of doubt, the Reliefs being sought from this Court are collapsed in a request for "AN ORDER of this Honourable Court allowing this appeal, set aside the decision of the Court of Appeal and affirm the decision of the trial Court."

The learned Counsel for the Appellant proposed eight (8) issues for determination in his Brief:-

"1. Whether the Court below was right in law to have held that the 1st Respondent must have been charged, tried and convicted of forgery by a competent Court of law for the 1st Respondent to be liable for presentation of forged certificate to INEC under Section 66(1)(i) of the 1999 Constitution (as amended) and making of false declaration on oath under Section 31(2)(5) and (6) of the Electoral Act, 2010 (as amended), (Encompassing Grounds 1 and 5 of the Notice of Appeal).

 2. Whether the decision of the Court below not to rely on the National Diploma Certificate in Accountancy presented by the 1st Respondent to INEC before 2011, in determining the issue of presentation of forged certificate to INEC before it because the 1st Respondent did not

4

include the said National Diploma Certificate in his INEC Form CF001 for 2015 General Election and therefore the 1st Respondent could not be said to have committed forgery, is not wrong in law in view of the provisions of Section 66(1)(i) of the 1999 Constitution (as amended) and the question in Paragraph 6 of Part E of INEC Form CF001 for the 2015 General Election

(Encompassing Ground 2 of the Notice of Appeal).

 3. Whether in view of the nature of the case before it, the Court below was right in law when it held that to prove that 1st Respondent lied on oath when he stated that he never presented forged certificate in INEC, it must be shown that the 1st Respondent presented the said forged certificate with the knowledge that it would be used fraudulently or dishonestly as genuine, and resuming of the Court below was right in its said decision, the Appellant did not prove beyond reasonable doubt that the 1st Respondent presented a forged certificate with the knowledge that it would be used fraudulently or dishonestly) as genuine, (Encompassing Ground 3 of the Notice of Appeal).
 4. Whether the Court below was right in law when it held that

5

Exhibit T which is the Judgment of the National/State House of Assembly Election Tribunal which made a finding that the 1st Respondent presented a forged certificate to INEC, could not be relied upon because the 1st Respondent was not a party in the election petition where the said Judgment emanated from, when the 2nd and 3rd Respondents, herein were parties in the said election petition.

(Encompassing Ground 1 of the Notice of Appeal).

5. Whether the Court below was right in law to have held that the 1st Respondent's form CF001 has satisfied the constitutional requirements in Section 65(1) and (2) when the Appellant's case at the trial Court and the issue before the Court below was not predicated on the said Section 65(1) and (2) for the 1999 Constitution (as amended).

(Encompassing Ground 6 of the Notice of Appeal).

6. Whether the Court below was right in law to have held that the 1st and 2nd Respondents' paragraph 5.2(q) of their counter-affidavit, against appellant's Originating Summons was unchallenged when the said paragraph 5.2(q) did not raise any fresh issue to warrant the Appellant filing a Reply or a Further and

6

Better Affidavit. (Encompassing Ground 7 of the Notice of Appeal).

7. Whether the Court below decision that the 1st Respondent was duly nominated and sponsored by the 2nd Respondent and consequently was qualified to contest in the 2015 General Election was not wrong in law. (Encompassing Ground 8 of the Notice of Appeal).
8. Whether the Court below was not wrong in law to have on the basis of Section 141 of the Electoral Act, 2010 (as amended) held that it was wrong for the trial Court to have adjudged the Appellant the winner of the election and ordered that he be issued a certificate of return when the Court below that held that the said Section 141 of the Electoral Act was only applicable to and directed at Election Tribunal and Court of Appeal exercising its first instance jurisdiction in the hearing and determination of election petition and not at regular Courts. (Encompassing Ground 9 of the Notice of Appeal)."

On their own part, the first and second Respondents Brief proposes and advances five (5) issues for determination of the appeal:-

"1. Whether in the absence of proof of any charge, trial and or conviction of the 1st

7

Respondent for forgery as well as absence of proof of intent to use a forged document fraudulently or dishonestly as genuine, the 1st Respondent could be said to have presented forged certificate to the 3rd Respondent. (Grounds 1, 3 and 5 of the Notice of Appeal).

2. Whether the Court below could be faulted for rejecting Appellant's reliance on National Diploma Certificate in Accountancy which he claimed the 1st Respondent presented to the 3rd Respondent in 2011 when no such diploma was included in the 1st Respondents INEC Form CF001 for the 2015 general election and in view of Paragraph 5.2(q) of the 1st and 2nd Respondent's Counter-Affidavit. (Grounds 2 and 7 of the Notice of Appeal).
3. Whether the Court below rightly refused to rely on Exhibit T, adduced by the Appellant in his bid to establish his allegation of forgery against the 1st Respondent. (Ground 4 of the Notice of Appeal).
4. Whether the Court below was wrong in observing that the 1st Respondent's INEC Form CF001 satisfied the constitutional requirements in Section 65 (1) and (2) of the Constitution of the Federal Republic of Nigeria 1999 (as amended). (Ground 6 of the

8

Notice of Appeal).

5. Whether the Court below was right in faulting the trial Courts endorsement of the Appellant as winner of the 2015 general election and in finding instead that the 1st Respondent was the duly nominated and sponsored candidate of the 2nd Respondent and qualified to contest the general election. (Ground 8 and 9 of the Notice of Appeal).

See Sub-paragraph 4.0, pages 13 and 14 (with legal arguments on the issues running from page 7 to 46 of Brief). It is utmostly crucial to add that the Respondents had filed a Notice of preliminary Objection and with Arguments supporting thereto. This Court proceeds to determine the Preliminary Objection.

DETERMINATION OF PRELIMINARY OBJECTION

There are three (3) dimensions of this Objection. Its first and main plank resides on the failure to provide an address of service on the first and second Respondents in the Notice of Appeal filed on 18/2/2016 AND the earlier Notice of Appeal filed 8/2/2016. Allied to this point of contention is yet the issue that the first and second Respondents were not served personally with these Notices. The Notices rather were put in the care (or charge) of

9

their common Counsel, S.I. Aneh, SAN and Company (Address provided). The said service is argued to have run foul of the relevant provisions of the Rules of this Court. The Rules were specified in the Brief. The Counsel did not deny service.

The second aspect or dimension of the Preliminary Objection is the plurality of the Notices (two of them) with the attendant ambiguity and difficulty such a state of affair presents as to which of the two Notices is to be relied upon.

With regards to the first and main plank of the Respondents' Preliminary Objection, we are of the emphatic opinion that since the Counsel to the respondents was served and he did not deny such service, there is effective and competent service. The contention that the Respondents should have been served personally is misplaced. Service on the Counsel, S.I. Ameh, SAN, being the legally and formally acknowledged representative of the Respondents, is good, competent and effective enough. Both Respondents were duly served via their counsel, who so hold. The real essence of the Supreme Court Rules on Notice (which is to prevent any part being taken by surprise which in a significant way

10

amounts to denial of adequate opportunity to be heard) is achieved as both first and second Respondents were actually (and more then constructively) served via Counsel. And there is no dispute as to this state of affairs. Any assumed irregularity is only as to form, rather than substance. Any seeming irregularity does not bear on our jurisdiction and does not amount, by any definition, to denial of notice to the Respondents. The case of IHEDIOHA VS OKOROCHA (2016) 1 NWLR (Pt 1492) 147 at pages 176-179 and the host of other authorities were strongly referred to as their respective facts and circumstances are fundamentally distinguishable to present appeal case.

As to the plurality of the two Notices served within time, we tend to think the Preliminary Objection is misconceived. In fact, the idea of a plurality is a misnomer. The first and second Respondents via the instrumentality of their able Counsel had no difficulty in deciding which of the two Notices to rely on. They directed their energies to responding to the Notice of 18/2/2016 (and not the previous one of 8/2016) which had nine (9) Grounds and eight (8) issues for determination. The

11

Respondents Brief unambiguously responded to those Grounds and issues in the Notice of 18/2016. It was their articulate study of the 18/2/2016 Appellants Notice that gave birth to the Respondents own formulation of five (5) issues for determination. The failure of the Appellants Counsel to formally withdraw the Notice of 8/2/2016 (though improper and reckless) had amounted to a mere irregularly that does not bear on the Courts jurisdiction or the right to adequate notice.

The third aim (or dimension) of the Preliminary Objection has two legs of its own, viz/namely, that Grounds 6 and 9 of Appeal emanated Not arising from the Judgment of the Court below.

By the first leg of this third arm (or aspect of Preliminary Objection, it meant that since it is trite law an obiter dictum cannot be a basis of a ground of appeal (as correctly held in the judicial decision cited in Sub-paragraph 3.2, sub-heading 12 of the Respondents' Brief of Argument), Grounds 6 and 9 should therefore be discountenanced and struck out as Grounds of appeal.

The second leg of the third aspect and dimension of the Preliminary Objection is specifically

12

on Ground 9 – the objection and contention is to the effect that the Ground did not arise from the judgment of the Court (i.e the Court of Appeal and that since the Ground has no relation to the Judgment being appealed against, it (the Ground) should be viewed as incompetent and be struck out. It is the emphatic contention of the Respondents counsel that the law is absolutely clear that grounds of appeal do not arise in nibbus (from the air) but must arise from or based on the judgment appealed against, failing which they will be incompetent and liable to bring struck-out. In support of this proposition, key judicial authorities were cited as for example the cases of IDIKA v. ERISI (1988) NWLR (Pt.18) 563 and ADEBIYI VS UMAR (2012) 9 NWLR (Pt. 1305) 279 at 286.

Here is our consideration of the Respondents counsels objection to Grounds 6 and 9 of the Appeal.. Though this third plank (or dimension) of the Objection has two faces of its own, their combined effect is the same, that is, that the two Grounds should be struck out on the basis that they do not relate to the judgment of the Court of Appeal (either on account of not being part of the ratio

13

or even that judgment at all).

After scrutinizing and/or evaluating four (4) different but relevant sources of information before us (namely the Brief of Argument of Counsel to the Respondents, the Appellant's Counsels Reply to the former's Brief, the judgment of the Court of Appeal as contained in the Record of proceedings and lastly, Section 141 of the Electoral

Act, 2010, (as amended), we proceed to hold that whether the Court of Appeal (or the Court below) did or did not have recourse to Section 141 of the Electoral Act, 2010 (as amended) has no effect on the validity and tenability of Ground 9 as its content and substance flow from (and/or relate to) the Judgment of the lower Court. Simply put, Ground 9 remains a valid Ground together with Ground 6.

On the whole, the Preliminary Objection raised by Counsel to the first and second Respondents without any of its legs (together with sub-branches) to stand upon, accordingly, it is hereby struck-out. Effort will now be directed towards the determination of the main appeal.

DETERMINATION OF THE MAIN APPEAL

The position of this Court on the issues raised and arguments canvassed by the

14

respective parties on the Preliminary Objection is a painful but necessary therapy of an adage in the South-western part of this country. By the preliminary objection, the parties lured this noble Court into leaving leprosy to cure ringworm'. Now that the 'ringworm' of the preliminary objection has been addressed, now is the time to deal with the more serious ailment of leprosy) which, in this figurative metaphorical expression, is the main issue raised in this appeal.

We wish to pause a while to observe the seemingly superfluous and overlapping issues formulated by the parties in their briefs of argument. First, any sentence more than 3-4 lines is grammatically inelegant, and putting it straight, wrong. The Appellant formulated 8 issues in paragraph 3.0 at pages 7.9 of the Appellant's Brief of argument. The average number of each issue, formulated as separate sentence, is 8-10 lines. This is not too elegant.

By adopting the issues formulated by the Appellants (sic), although this is a sole-Appellant appeal: the 3rd Respondent also invariably slips into the inelegance of long and inordinate sentences and the surplusage style of brief drafting

15

and writing through overlapping formulation of issues.

The 1st and 2nd Respondents formulated 5 issues as listed in paragraph 4.0 of their brief of arguments at pages 13-15, slightly shorter than Appellants, an average of about 6-7 lines per sentence or issue.

ISSUES FOR DETERMINATION

We are ad idem on this side that the several issues in this appeal will and could be adequately resolved and answered under two issue.

Therefore, for the purpose of this judgment, we have restricted ourselves to two broad issues in effectively determining this appeal, thus:

"1. Whether or not there has been a finding of facts by the trial Court on the issue of certificate forgery by the 1st Respondent.

2. Whether or not based on the finding of facts on the issue of certificate forgery, the 1st Respondent stands disqualified from contesting the House of Representatives election for Ado Okpokwu and Ogbadibo Constituency of Benue State."

CONSIDERATION AND RESOLUTION OF RELEVANT ISSUES

ISSUE 1:

"Whether or not there has been a finding of facts by the trial Court on the issue of certificate forgery by the 1st Respondent."

The totality

16

of submission of learned Senior Counsel to the Appellant is that the 1st Respondent presented a forged certificate to the 3rd Respondent, and that the Court below us was wrong to have insisted that there ought to, or must have been a charge, trial and conviction of the 1st Respondent for forgery. The learned Silk cited the provisions of Section 66(1) of the Constitution of the Federal Republic of Nigeria (as amended) and Section 31(2), (5) and (6) of the Electoral Act, 2010 (as amended). See pages 9-10 of the Appellants Brief of Arguments. The learned senior counsel cited decisions of this Court in the case ATTORNEY-GENERAL OF ONDO STATE VS ATTORNEY-GENERAL OF EKITI STATE (2001) 17 NWLR (Pt. 743) 706 at 756.

He contends further that the provision of the law is clear and unambiguous and the Court below ought to have given effect to it, being elementary principle of law. Counsel quoted the decision of this Court in the above cited authority thus:

"It is certainly a cardinal principle of interpretation that where in their ordinary meaning the provisions are clear and unambiguous effect must be given to them without resorting to any aid internal or

17

external. It is the duty of the Court to interpret the words of the law maker as used. Those words may be ambiguous, but even if they are, the power and duty of the Court to travel outside them on voyage of discovery are strictly limited. (See for example MAGOR AND ST. MELLON R.D.C VS NEWPORT (1951) 2 All E.L.R. 839, LONDON TRANSPORT EXECUTIVE V BETTS (1959) AC 231, ATTORNEY-GENERAL OF BENDEL STATE V. ATTORNEY-GENERAL OF THE FEDERATTON & ORS. (1981) 10 S.C. 1, (1981) 12 N.S.C.C. 314.)

The learned senior Counsel to the Appellant argued vehemently that, what the law requires to be proved under Section 31(5) of the Electoral Act (as amended) is simply that the information given in the affidavit of the 1st Respondent or an) document submitted by the 1st Respondent to INEC, is false. He contended that the decision of the Court below that a person who alleged that another breached Section 66(1)(i) of the 1999 Constitution (as amended) should first establish that such a person was charged, tried and convicted of forgery by a competent Court of law, appears to have read extraneous provisions or meaning into an otherwise clear provision. See pages 9-14 of the

18

Appellant's brief of argument.

The flip side of the argument on this issue is presented in the brief of argument of the 1st and 2nd Respondents where learned Senior Counsel submitted that, where there is an allegation that a person has presented a forged certificate to the 3rd Respondent, the burden and standard of proof should be as restated by this Court in the case of KAKIH vs. PDP (2014) NWLR (Pt 1430) 374 at p 423. In KAKIH, Counsel contended that this Court held thus:-

"By virtue of Section 362 and 363 of the Penal Code, a party who asserts that another person presented a forged certificate must prove beyond reasonable doubt that the certificate was presented with the knowledge that it would be used fraudulently or dishonestly as genuine. In this case, for the appellant to succeed in his case of presentation of forged certificate, he ought to have presented evidence that the 4th respondent presented a forged certificate to the 2nd respondent knowing that it would be used fraudulently or dishonestly as genuine…"

The learned Senior Counsel to 1st and 2nd Respondent increased the velocity of his arguments by submitting that every forgery requires proof of requisite mens

19

rea, i.e knowledge that the document presented was going to be used fraudulently or dishonestly as genuine, which onus must be discharged by the Appellant. He submitted further that the provisions of Section 31 (5) and (6) of the Electoral Act 2010 (as amended) imposes a procedural obligations on the part of the Appellant and anyone who desires to disqualify a candidate from contesting an election to approach the Court through a suit filed either at the Federal High Court, High Court of a State or FCT against. See paragraphs 5.1.1 to 5.1.16 at pages 14-19 of the 1st and 2nd Respondents brief of argument.

We have carefully digested the respective submissions of Appellants and Respondents' Counsel, as the 3rd Respondent opted to be neutral and abide by whatever becomes our decision in this appeal. The question that keeps agitating our minds is whether a Court of law has made a pronouncement or finding on the facts of certificate forgery, being the main issue in this appeal as it relates to the 1st Respondent. Our answer is, consensually in the affirmative. There has been a judicial pronouncement on the fact of whether or not the 1st Respondent

20

presented a forged certificate to the 3rd Respondent for the purpose of an election. The Court below, in error, failed to pay attention to this very crucial fact. We wish to quote the trial Court on this important issue:

"The Court's finding/conclusions are based on paragraphs 8-23 of Plaintiff's affidavit in support of Originating Summons sworn to on 26/1/15, with Exhibits A-V, Further Affidavit No. 2 in support of the Originating Summons deposed to by Charity Adah Ms, legal practitioners with Exhibits A3 & A4 particularly Exhibits T and A3. Exhibit T, the judgment of National/State House of Assembly Election Tribunal for Makurdi, Benue State delivered on 6/9/2011 at pages 57 & 58 are conclusive on this issue. Exhibits A3 is a Certified True Copy of letter dated 22nd December 2014 emanating from Dr. Suleiman S. Buba, Registrar, Federal Polytechnic, Mubi, to Marthias O. Emeribe Esq confirming certificate forgery by Mr. Abah Christian Adabah, 3rd Defendant in respect of his certificate No. FPM 000293 OBTAINED IN 1985. See KAKIH V PDP (2014) 15 NWLR pt 1430 374 SC. Exhibits T & A3 are self explanatory, positive and devoid of any ambiguity

21

(Emphasis ours).

This is an unassailable and comprehensive finding on facts of forgery. We cant agree less with the position of the trial Court which specifically finds that a Tribunal had judicially resolved and concluded, unequivocally, that the 1st Respondent forged the certificate in question. The Appellant's case at the trial Court was predicated, almost exclusively, on the fact that the 1st Respondent had presented a forged certificate to INEC (the 3rd Respondent).

The question in paragraph 6 of part E of the 1st Respondents INEC form CF001 is very specific: Have you ever presented a forged certificate to INEC. We align with the position of the learned senior Counsel to the Appellant, that this question relates to all elections, for as long as a candidate had previously presented a forged certificate to INEC. The same scenario plays itself out vis-a-vis the provisions of Section 66(1)(i) of the 1999 Constitution (as amended) which is to the effect that, quote:

"No person shall be qualified for election to the Senate or the House of Representatives if:-

(i) he has presented a forged certificate to the

22

Independent National Electoral Commission.

The law is very clear to warrant any form of colouarted interpretations. The question in form INEC form CF001 and Section 66(1)(i) of the 1999 Constitution (as amended) is whether a certificate that turned out to be forged has ever been presented, not whether the forger has ever been charged, tried or convicted on this. The Court below got into the error of forgery under Section 362 and 363 of the Penal Code as against forgery under the Electoral Act 2010 (as amended). More importantly, a Court or tribunal had found the certificate in issue to be forged.

We have reiterated on several occasions that ours is not only a Court of law but public policy. Forgery of certificate for the purpose of election and electoral processes and forgery under criminal law are not the same issue. Forgery under the Electoral Act is a specific law on forgery or presentation of a forged certification for the purpose of election. The best forum for electoral forgery is election tribunal as against general criminal trial. This is what played out, rightly in this appeal. We restate our position that, as held by the trial

23

Court,

"..the judgment of National/State House of Assembly Election Tribunal for Markurdi, Benue State delivered on 6/9/2011 at pages 57 & 58 are conclusive on this issue."

Election tribunal had exercised specific jurisdiction to try the issue. There has also been a judicial reconfirmation by the trial Court on the same issue as it relates to forgery of certificate for electoral purposes, by the 1st Respondent. These are not controverted and the 1st Respondent did not deem it fit to appeal this finding of facts that he perceived were adverse to his electoral fortune or political future.

This position restates the settled position of the law that the legal consequence of failure to appeal against any finding, holding or decision of a Court is that the parties to the case have accepted it as correct and binding upon them. On this side of the judicial structure, the law is settled that a party is stopped by his failure to appeal against an adverse finding of a fact relevant to the issue. See ABUBAKAR V. BEBEJI OIL AND ALLIED PRODUCTS LTD & ORS (2007) 18 NWLR (Pt. 1066) 319 (2007) 2 S.C 48 Per Ogbuagu, J.S.C. (P. 68. para.

24

F)

I am unable to disagree with learned senior Counsel on the issue as the 1st Respondent is estopped by his failures to appeal against the numerous adverse findings of fact on the issue of certificate forgery which relate directly to his electoral future. See the cases of JOE IGA & ORS. VS. CHIEF EZEKIEL AMAKIRI & ORS (1976) 11 SC AT 12-13. See also the position of this Court in S.P.D.C. (NIG) LIMITED VS X.M. FED LTD (2006) 16 NWLR (Pt 1004) 189 at 201, paras D-F.

It is our considered view that the Court below was wrong to have held that 1st Respondent ought to have been charged, tried and convicted. This is because the case of the Appellant at the trial Court is predicated on the provision of Section 66(1)(i) of the 1999 Constitution (as amended) and Section 31 (2), (5) and (6) of the Electoral Act 2010 (as amended).

Issue one is resolved in favour of the Appellant.

ISSUE 2

"Whether or not based on the finding of facts on the issue of certificate forgery the 1st Respondent stands disqualified from contesting the House of Representatives election for Ado Okpokwu and Ogbadibo Federal Constituency of Benue State."

The Appellants contention

25

on this issue that the Court below was wrong to have held that the 1st Respondent was duly nominated and sponsored by the 2nd Respondent and consequently qualified to contest the 2015 General Election. The learned senior Counsel contends that the 1st Respondent having breached constitutional and statutory provisions stands disqualified from contesting election. See pages 26-30 of the Appellants brief of argument.

The converse argument of the 1st and 2nd Respondents is that the Court below was right in relying on Section 141 of the Electoral Act 2010 (as amended) to fault the trial Courts finding that the Appellant won the 2015 general election to Ado, Okopwu and Ogbadibo Federal Constituency of Benue State. See pages 39-42 of the 1st and 2nd Respondents brief.

We are of the firm view that a party must not be allowed to profit from his or her fraud.

From the totality of the facts of this appeal, forgery of certificate by the 1st Respondent to contest Ado, Okopwu and Ogbadibo Federal Constituency of Benue State keeps resonating. The 1st Respondent presented forged certificate to the 3rd Respondent in the run up to the 2011 election and when

26

it was time for the 2015 general election he carefully and deliberately omitted to include this fact. The relevant question is whether the 1st Respondent ever presented a forged certificate to INEC (3rd Respondent) at any (previous or current) elections, and not whether or not it was listed or omitted from the declaration form completed for a particular election. The second legal is that there must have been a judicial pronouncement, by a Court or Tribunal, that the certificate in question is forged.

In this appeal, an Election Tribunal with specific jurisdiction has found, in the judgment of National/State House of Assembly Election Tribunal for Makurdi, Benue State delivered on 6/9/2011 at pages 57 & 58, that the certificate presented by the 1st Respondent is forged. And this, as the trial Court rightly found, is conclusive on this issue.

The provisions of the Nigerian Constitution are unambiguous. The Constitution expressly provides that:

66. (1) No person shall be qualified for election to the Senate or the House of Representatives if:

(ii) he has presented a forged certificate to the Independent National Electoral

27

Commission.

The intention of the Constitution is that any one who had presented a forged certificate to INEC should stand automatically disqualified for all future elections if, as in this case, a Court or tribunal finds the certificate to have been forged, and it matters not whether or not such facts is further fraudulently or desperately concealed in subsequent elections or declaration forms. No decent system or polity should condone, or through judicial policy and decisions, encourage the dangerous culture of forging certificates with impunity to seek electoral contest.

The 1st Respondent ought not to have, and the opinion of the law, was not qualified to contest election into the Ado, Okopwu and Ogbadibo Federal Constituency of Benue State based on the combined effects of the provisions of Section 66(1)( i) of the 1999 Constitution (as amended) and Section 31 (2), (5) and (6) of the Electoral Act 2010 (as amended). He stands constitutionally disqualified. This being a pre-election matter, we agree with the trial Court that votes polled by the 1st Respondent through nomination by the 2nd Respondent are invalid and wasted. The Appellant being

28

the runner up in the PDP Primary election conducted for the said election automatically steps into his shoes as nominee and winner of the election into the Ado, Okopwu and Ogbadibo Federal Constituency of Benue State.

It is our considered view that the provision of Section 141 of the Electoral Act only applies in cases of post-election cases at the Election Tribunal as against pre-election matters. To hold otherwise would mean allowing ineligible persons to contest and win an election and thus deploy dilatory tactics to reap from his or her fraud to the fullest until the expiration of the tenure procured by fraud.

Due to the foregoing reasons, issue two is also resolved in favour of the Appellants. The judgment of the Court below is hereby set aside. The advisory opinion of the learned trial judge is instructive in this regard, and we quote:

"The culture of impunity exhibited by the 1st and 3rd Defendants continued unabated with 2nd Defendant, INEC declaring 3rd Defendant not only eligible but the winner of the said general elections 2015 (sic) and returned him unopposed as the Honorable member for the said Federal constituency on the platform of

29

1st Defendant, PDP, as other registered Political parties fielded no candidates at the general election 2015.

The era of political parties presenting candidates holding public offices at Local, State and National levels with forged certificates which still persists in the polity needs to be addressed urgently by relevant law enforcement agencies and other stakeholders (and we add-including Courts) in this nascent democracy (Emphasis ours)."

This Court must take the lead, in righting the wrongs in our society, if and when the opportunity presents itself as in this appeal. Allowing criminality and certificate forgery to continue to percolate into the streams, waters and oceans of our national polity would only mean our waters are and will remain dangerously contaminated. The purification efforts must start now, and be sustained as we seek, as a nation, to now 'change' from our old culture of reckless impunity.

The Nigerian Constitution is supreme. It desires that no one who had ever presented forged certificate to INEC should contest election into Nigeria's National Assembly. This is clear and sacrosanct. More compelling as a judicial

30

determination had been taken by no less a technical panel sitting in, at least, a panel of three judges as Election Tribunal with constitutional mandate to determine such issues as they relate to elections and its outcomes, including eligibility. This has also been affirmed by the trial Court in this appeal. On these issues, our duty is to apply the Constitution and the law in its start, original form undiluted by colouredintepretations.

In sum, this appeal succeeds. The decision of the Court below is hereby set aside. The judgment of the trial Court is restored and upheld. The election of the 1st Respondent into the Ado, Okopwu and Ogbadibo Federal Constituency of Benue State is a nullity, as he stands constitutionally disqualified from contesting the said election. The Appellant is and hereby declared the candidate of the 2nd Respondent and winner of the Okopwu and Ogbadibo Federal Constituency of Benue State and should be issued certificate of return immediately by the 3rd Respondent (INEC).

We make no order as to cost

---

**SC.144/2016**