IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Application of ATIKU ABUBAKAR | No. 23 C 5099 |
| For an Order Directing Discovery from CHICAGO STATE UNIVERSITY Pursuant to 28 U.S.C. § 1782. | Jeffrey T. Gilbert United States Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Atiku Abubakar's Application Pursuant to 28 U.S.C. § 1782 for an Order Directing Discovery from Chicago State University for Use in a Foreign Proceeding ("Application") [ECF No. 1]. For the reasons discussed below, the Application is granted.

**I. BACKGROUND**

Atiku Abubakar was Vice-Present of Nigeria from 1999 to 2007 and was a candidate for president in Nigeria's presidential election that occurred in February 2023. Memorandum of Law In Support of Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 ("Applicant's Memorandum") [ECF No. 4], at 2. Nigeria's Independent National Electoral Commission ("INEC") declared Bola Ahmed Tinubu won the election, and he is the current president of Nigeria. Mr. Abubakar says he came in second place in the presidential election. *Id* at 1. After the election, Mr. Abubakar along with the People's Democratic Party filed a petition ("Petition"), challenging the results of the presidential election with the Court of Appeal in the Presidential Election Petition Court in Nigeria (the "Nigerian Proceedings"). *Id.* at 1,

6. Mr. Abubakar contends the Nigerian Proceedings address, among other things, whether President Tinubu submitted what Mr. Abubakar characterizes as a forged diploma to the INEC stating that he received an undergraduate degree from Chicago State University ("CSU" or "Respondent") on June 22, 1979. Memorandum of Law In Support of Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 ("Applicant's Memorandum") [ECF No. 4], at 2-7, 10-11; Omnibus Reply In Further Support of his Application Pursuant to 28 U.S.C. § 1782 ("Applicant's Reply") [ECF No. 22], at 5. Mr. Abubakar says that, under Nigerian law, the submission of a fraudulent document to the INEC would have disqualified now President Tinubu from participating in the election.  Applicant's Reply [ECF No. 22], at 5.

Mr. Abubakar filed the present Application pursuant to 28 U.S.C. § 1782 to obtain discovery from CSU for use in the Nigerian Proceedings. Application [ECF No. 1], at 1. The discovery Mr. Abubakar is seeking relates to his challenge as to the authenticity of the diploma President Tinubu submitted to the INEC and also to other educational records from CSU that Mr. Abubakar says are related to that challenge. Applicant's Memorandum [ECF No. 4], at 3-5.

When the Application was filed, Mr. Abubakar's Petition was pending before the Nigerian Court of Appeal. Application [ECF No. 1], at 1. On September 6, 2023 during the briefing on his Application, Mr. Abubakar notified the Court that the Nigerian Court of Appeal reportedly issued a ruling on his election challenge, finding in favor of President Tinubu and against Mr. Abubakar. Applicant's Reply [ECF No.

22], at 1. Mr. Abubakar has represented to this Court that he intends to appeal to the Supreme Court of Nigeria. *Id.*

## II. PROCEDURAL HISTORY

On August 2, 2023, Mr. Abubakar ("Applicant") filed his Application [ECF No. 1] and Memorandum [ECF No. 4] in support of his Application, seeking discovery from Respondent on the CSU documents at issue. The presiding District Judge referred the Application to this Magistrate Judge for resolution. [ECF No. 7].

The day after the Application was filed, President Tinubu ("Intervenor") filed a Motion to Intervene [ECF No. 10], which Applicant did not oppose. *See* Applicant's Response to Bola A. Tinubu's Motion to Join or Intervene [ECF No. 13]. The District Judge granted the Motion to Intervene on August 7, 2023, and this Court set a date for Intervenor to file a response to the Application and for Applicant to file a reply. [ECF Nos. 14, 15]. On August 23, 2023, CSU filed its Response to Application Pursuant to 28 U.S.C. § 1782 ("CSU's First Response") [ECF No. 20], and Intervenor filed his Response to Application Under 28 U.S.C. § 1782 ("Intervenor's Response") [ECF No. 21].

As mentioned above, when Applicant filed his Application for discovery in the district court, his Petition challenging the presidential election was pending before the Nigerian Court of Appeal. On September 6, 2023, Applicant filed his Reply [ECF No. 22] and notified the Court that the Nigerian Court of Appeal reportedly issued a ruling on his election challenge that same day, finding in favor of Intervenor and against Applicant. [ECF No. 22], at 1-2; *see also* Second Declaration of Angela M. Liu

3

("Second Liu Decl.") [ECF No. 23], at ¶5. Applicant further explained that he has until September 27, 2023, to file his appeal of that ruling to the Supreme Court of Nigeria, which he states he intends to do. *Id.*; *see also* Declaration of Ahmed Tijjani Uwais ("Uwais Decl.") [ECF No. 24], at ¶13.

In light of the time constraints to file his appeal to the Supreme Court of Nigeria, Applicant narrowed the scope of the discovery he is seeking from CSU. *Compare* [ECF Nos. 38, 39] (revised subpoenas) with [ECF Nos. 1-1, 1-2] (original subpoenas).[1] Specifically, Applicant wants to serve four document requests, seeking true and correct copies of: (1) an exemplar of a CSU diploma issued in 1979; (2) Intervenor's diploma issued in 1979; (3) any exemplar of a CSU diploma that "contains the same font, seal, signatures, and wording (other than the name of the recipient and the specific degree awarded) as contained in Exhibit C to the First Liu Declaration, which purports to be a CSU diploma issued to Mr. Tinubu on or about June 22, 1979;" and (4) the CSU documents that were certified and produced by Jamar Orr (an associate general counsel at CSU) as well as communications relating to these documents (the "Orr Documents"). [ECF No. 38], at 4-5 (revised subpoena for production of documents).

---

[1] The narrowed subpoenas originally were filed by Applicant at [ECF Nos. 22-1, 22-2]. Corrected versions of the narrowed subpoenas subsequently were filed by Applicant at [ECF Nos. 38, 39]. Accordingly, the Court considers the corrected versions of the narrowed subpoenas that Applicant filed at [ECF Nos. 38, 39].

Applicant also wants to take a Federal Rule of Civil Procedure 30(b)(6) deposition of a CSU witness to explore five topics: (1) the authenticity of the documents produced by CSU in response to the Application and how and where CSU located the documents; (2) CSU's position on the authenticity of other CSU documents related to Intervenor purportedly produced by CSU in another Nigerian proceeding ("Enahoro-Ebah v. Tinubu"); (3) the contents of the Westberg Affidavit;[2] (4) CSU's position on the authenticity of a letter from Caleb Westberg (the "Westberg Letter") on CSU letterhead regarding Intervenor and other facts, including who requested the letter, who prepared the letter, and to whom it was sent; and (5) CSU's position on the authenticity of the Orr documents and other facts regarding why the documents were certified, if he was authorized to do so, who requested the documents, and to whom they were sent. *See* [ECF No. 39], at 4-5.

After Applicant narrowed his discovery requests and in light of the tight timeframe, the Court requested a substantive response from Respondent to the revised subpoenas and asked CSU to file any objections it had to the scope of the revised subpoenas prior to the hearing. CSU filed its Response to Court Order Dated September 8, 2023 ("CSU's Second Response") [ECF No. 32]. Prior to the hearing, Intervenor also requested and was granted leave to file a Sur-Response to Reply in Support of Application ("Intervenor's Sur-Response") [ECF No. 33].

---

[2] The "Westberg Affidavit" is defined in the subpoena as the Affidavit of Caleb Westberg, the Registrar of CSU, attached to the Intervenor's Response to the Application. *See* [ECF No. 39] (citing [ECF No. 21-1]).

Mr. Abubakar as Applicant, CSU as the responding party from whom discovery is being sought, and President Tinubu as Intervenor have filed briefs with the Court setting forth their positions regarding the propriety of the discovery sought in the Application and submitted evidence for the Court's consideration. The Court held a hearing on September 12, 2023, and heard arguments from the parties.

## III. ANALYSIS

28 U.S.C. § 1782 provides that a district court may authorize the production of documents or testimony for use in a foreign legal proceeding unless the disclosure would violate a legal privilege. 28 U.S.C. § 1782(a). Determining whether to grant an application under Section 1782 involves a two-part analysis. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). First, an applicant must satisfy the threshold statutory requirements set forth in 28 U.S.C. § 1782(a). If the district court determines an applicant has satisfied the threshold requirements and it has the authority to grant the application, the district court then must focus its analysis on discretionary factors to determine whether and to what extent the Section 1782 application is appropriate. *Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so.").

### A. The Statutory Requirements of 28 U.S.C. § 1782 Are Satisfied

28 U.S.C. § 1782 requires an applicant to satisfy three straight-forward threshold requirements: (1) the person or entity from whom the discovery is sought must reside or be found in the district of the court to which the application is made; (2) the discovery must be "for use" in a proceeding before a foreign tribunal; and (3)

the application must be submitted by a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782. The first requirement is not disputed in this case. Respondent is a public university located with this judicial district. Intervenor's Response [ECF No. 21], at 5; CSU's Response [ECF No. 20]. Intervenor, however, disputes whether Applicant is seeking the discovery "for use" in the Nigerian Proceedings and whether Applicant is "an interested person" in the Nigerian Proceedings in which this discovery would be used.

### 1. The Discovery is "For Use" in the Nigerian Proceedings

To obtain discovery under 28 U.S.C. § 1782(a), an applicant must establish "that the discovery sought is for use in a proceeding before a foreign tribunal." *In re King*, 2021 WL 722850, at *1 (N.D. Ill. Feb. 24, 2021). "'[F]or use in' mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006). Moreover, the proceeding does not need to be pending at the time of the discovery request; it is sufficient that "the planned proceedings are 'within reasonable contemplation.'" *Id.* (quoting *Intel*, 542 U.S. at 259); *Heraeus Med. GmbH v. Biomet, Inc.*, 2021 WL 4133710, at *4 (N.D. Ind. Sept. 10, 2021) ("28 U.S.C. § 1782 'does not require that [a] ... foreign ... proceeding must have already commenced or ... be pending or imminent....'") (internal citations omitted).

Applicant argues the discovery he seeks from Respondent regarding the authenticity of documents Intervenor submitted to the INEC or more broadly related

to the status of Intervenor's degree from CSU is "for use" in the Nigerian Proceedings, including Applicant's intended appeal to the Supreme Court of Nigeria, within the meaning of 28 U.S.C. § 1782. Applicant's Memorandum [ECF No. 4], at 2-6, 10-11; Applicant's Reply [ECF No. 22], at 3-7. In the Nigerian Proceedings challenging the election results, Applicant argued, among other things, that Intervenor submitted a forged diploma to the INEC stating that he received an undergraduate degree from CSU on June 22, 1979. Applicant's Memorandum [ECF No. 4], at 2-6, 10-11; Applicant's Reply [ECF No. 22], at 3-7. Applicant says Section 137(1)(j) of the Nigerian Constitution and Section 134(1)(a) of Nigeria's Electoral Act of 2022 provide that a person is not qualified to participate in a Nigerian presidential election if the candidate has submitted a forged certificate and that such a disqualification challenge may be raised post-election. *See* Applicant's Reply [ECF No. 22], at 5 (citing Uwais Decl. [ECF No. 24], at ¶3 and Exs. A & B)).

Applicant questions the authenticity of the CSU diploma Intervenor presented to the INEC before the election because, among other things, a second CSU diploma has since emerged (dated June 27, 1979) that bears the name "Bola Ahmed Tinubu" but also presents with a different font, punctuation, seal, and signatures, than the June 22, 1979 diploma, among other alleged discrepancies. Applicant's Memorandum [ECF No. 4], at 2-6; Applicant's Reply [ECF No. 22], at 5-6. Applicant also references other documents allegedly produced by CSU for use in related electoral challenge proceedings in Nigeria that he says raise additional questions about the authenticity of the diploma that Intervenor submitted to the INEC and his other educational

records from CSU. Applicant's Memorandum [ECF No. 4], at 6; Applicant's Reply [ECF No. 22], at 8 (citing Uwais Decl. [ECF No. 24] at ¶6 & Ex. D). Because of the discrepancies in some of the documents purportedly issued by CSU, Applicant says there are questions about whether all the CSU documents actually came from CSU and when they were created. Applicant's Memorandum [ECF No. 4], at 6; Applicant's Reply [ECF No. 22], at 6. Although Applicant acknowledges that CSU has stated that Intervenor did, in fact, graduate from CSU on June 22, 1979, Applicant still questions whether President Tinubu actually attended and received an undergraduate degree from CSU. Applicant's Reply [ECF No. 22], at 5-6. At least in the Court's view, however, the primary issue that animates Applicant's position in this case appears to be whether a CSU diploma in the name of "Bola Ahmed Tinubu" dated June 22, 1979, that was submitted to the INEC before the Nigerian presidential election in February 2023 is genuine or was forged.

Intervenor contends that the discovery Applicant seeks is not relevant to the Nigerian Proceedings because issues regarding his educational background were not referenced specifically in Applicant's Petition filed with the Court of Appeal. *See* Intervenor's Response [ECF No. 21], at 5-6 (citing [ECF No. 5-2]). Those matters instead were raised in Applicant's reply materials filed in support of the Petition. As addressed further below, the Nigerian Court of Appeal declined to consider issues related to Intervenor's educational background that had not been included in Applicant's Petition but rather were belatedly raised for the first time in Applicant's

9

reply filings. *See* September 6, 2023 Judgment in the Presidential Election Petition Court ("Nigerian Court of Appeal Decision") [ECF No. 34], at 545-558, 606, 608-09.[3]

Applicant responds that in his intended appeal of the Nigerian Court of Appeal Decision, the Supreme Court of Nigeria can consider new evidence in "exceptional circumstances" under the Nigerian Electoral Act of 2022 and/or in its discretion, and he provides a declaration to that effect from his counsel in the Nigerian Proceedings. Applicant's Reply [ECF No. 22], at 10; Uwais Decl. [ECF No. 24], at ¶12 & Ex. G. Applicant further argues that whether the Supreme Court of Nigeria actually would consider any evidence obtained through discovery in this case is irrelevant to the "for use" analysis because the statute does not impose a foreign admissibility requirement. Applicant's Reply [ECF No. 22], at 7.

---

[3] Applicant's Petition in the Nigerian Proceedings generally raised the argument that Intervenor "was at the time of the Election not qualified to contest the Election," but apparently without the addition of supporting facts or evidence. *See* Applicant's Reply [ECF No. 22], at 3-4 (citing Declaration of Angela Liu In Support of the Application ("First Liu Decl.") [ECF No. 5], Ex. B, Petition in *Abubakar et al. v. INEC et al.*, at ¶16(d); *see also* [ECF No. 5], Ex. B at ¶146. Applicant submitted a declaration from one of his attorneys in the Nigerian Proceedings attesting that arguments and evidence about the authenticity of Intervenor's diploma were submitted by Applicant in those Proceedings. Uwais Decl. [ECF No. 24], at ¶4. In addition, that declaration also states that a related case (brought by Peter Obi and the Nigerian Labour Party) raised questions about additional documents related to Intervenor's educational background (the Orr Documents), and that Mr. Obi's case has been consolidated with Applicant's proceeding. Uwais Decl. [ECF No. 24], at ¶6. The Court notes the Nigerian Court of Appeal Decision declined to consider that evidence and the underlying argument that Intervenor was not qualified to participate in the Nigerian election because the argument was raised for the first time in reply filings rather than in the initial Petition. [ECF No. 34], at 545-558, 606, 608-09. The Court understands Applicant intends to appeal that Decision, and as discussed below, Applicant submitted evidence in support of his argument that there is a mechanism by which new evidence could be presented to the Supreme Court of Nigeria.

Based on the record submitted with the Application, the Court agrees with Applicant. In *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, the Second Circuit joined several other circuit courts in concluding "as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." 673 F.3d 76, 82 (2d Cir. 2012) (citing decisions from First, Third and Ninth Circuits). Although the Seventh Circuit has not addressed this issue, district courts in this jurisdiction similarly have concluded that whether the evidence sought in discovery is admissible in evidence in the foreign proceeding should not be considered in determining whether the Application satisfies the "for use" requirement of Section 1782. *See, e.g., Lumenis Ltd. v. Alma Lasers Ltd.*, 2013 WL 1707571, at *2 (N.D. Ill. Apr. 19, 2013) ("courts have found the term 'for use in' does not require the material request to be discoverable or admissible in the foreign jurisdiction"); *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1029-30 (same). Thus, as the Second Circuit explained, "a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding" and "it is not fatal to the application that he or she lacks a claim for relief before the foreign tribunal…. Rather, the term 'for use' in Section 1782 has only its ordinary meaning— that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017).

11

Consistent with this authority, it is sufficient for purposes of 28 U.S.C. § 1782 that Applicant has presented evidence of a legal process in Nigeria – his appeal to the Supreme Court of Nigeria – by which the discovery he seeks here could be used in that country. Whether or not the Supreme Court of Nigeria will consider or admit the new evidence sought in this Application is beyond the purview of this Court. *See In re Labor Court of Brazil*, 466 F. Supp. 2d at 1029 (holding "the history of the statute, the case law, and the prudent tendency of American courts to avoid construing foreign law support the plain meaning that 'for use in' does not require that the discovery be admissible in the foreign proceeding"). Applicant, therefore, has made the "for use" showing required under 28 U.S.C. § 1782 by providing evidence that the Supreme Court of Nigeria could, at the very least, consider the new evidence he seeks to discover here.[4]

Based on this record, the Court finds Applicant has satisfied the statutory requirement that the requested discovery is "for use" in a proceeding before a foreign tribunal—in this case, specifically, Applicant's anticipated appeal to the Supreme Court of Nigeria.

---

[4] *See, e.g., John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 n.3 (3d Cir. 1985) ("[i]t is doubtful" the legislative history of 28 U.S.C. § 1782 "can be expanded to impose a requirement that district courts predict or construe the procedural or substantive law of the foreign jurisdiction"); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-100 (2d Cir. 1995) ("we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges").

### 2. Applicant is an "Interested Person" in the Nigerian Proceedings

To obtain discovery under 28 U.S.C. § 1782, an application also must be submitted by a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782(a). Courts have recognized that a litigant in a foreign proceeding is "the most common example" of an "interested person" who would file an application seeking discovery under 28 U.S.C. § 1782. *Intel*, 542 U.S. at 256 ("[L]itigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."); *see also In re Semrush SM LLC*, 2022 WL 3084601, at *2 (S.D. Ind. July 6, 2022), report and recommendation adopted, 2022 WL 3083487 (S.D. Ind. Aug. 3, 2022) (holding that because the applicant is a party to the underlying foreign litigation he is an "interested person" within the meaning of Section 1782); *In re Medytox, Inc.*, 2019 WL 3162174, at *4 (S.D. Ind. July 16, 2019), report and recommendation adopted, 2019 WL 3556930 (S.D. Ind. Aug. 5, 2019).

Applicant argues he is an "interested person" because the discovery he seeks from Respondent will be used in his intended appeal of the Court of Appeal Decision denying his Petition to the Supreme Court of Nigeria. Applicant's Memorandum [ECF No. 4], at 11; Applicant's Reply [ECF No. 22], at 8. Intervenor argues that Applicant is not an "interested person" because the information he seeks to discover from CSU was not contained in his initial electoral challenge Petition but rather was produced in a different proceeding to which Applicant was not a party. Intervenor's Response [ECF No. 21], at 7-8. It is undisputed, however, that the evidence Intervenor

13

references eventually was presented to the Nigerian Court of Appeal and the Court of Appeal decided not to consider it for the reasons addressed above.[5]

Even though the Nigerian Court of Appeal declined to consider the late-submitted evidence, Applicant has submitted evidence to this Court that the argument was raised in the Nigerian Proceedings (albeit late), and Applicant is a party to those proceedings. *Id.*; *see also* Nigerian Court of Appeal Decision [ECF No. 34], at 545-558, 606, 608-09. Applicant also unequivocally has stated he intends to appeal the Nigerian Court of Appeal Decision, and will present any new evidence he can obtain from CSU on the diploma issue as well as Intervenor's educational records from CSU to the Supreme Court of Nigeria. He thus will be a party to those Supreme Court proceedings as well.

Based on the record submitted with the Application and the arguments presented during the September 12, 2023 hearing, the Court finds that Applicant has satisfied the "interested party" statutory requirement.

## B. On Balance, the Discretionary Factors Weigh in Favor of Granting the Application for Discovery

Because Applicant has satisfied the statutory requirements under 28 U.S.C § 1782, the Court next turns to the discretionary factors it must consider in

---

[5] As noted above, Applicant's Petition in the Nigerian Proceedings generally raised the argument that Intervenor was not qualified to participate in the election without citing to specific supporting facts or evidence. *See* Applicant's Reply [ECF No. 22], at 3-4 (citing First Liu Decl. [ECF No. 5-2], Ex. B at ¶16(d)); *see also* [ECF No. 5-2], Ex. B at ¶146; Uwais Decl. [ECF No. 24], at ¶4. Applicant specifically identified and discussed the forged documents argument in his reply filings in support of his Petition to the Nigerian Court of Appeal. Uwais Decl. [ECF No. 24], at ¶7; *see also* Nigerian Court of Appeal Decision [ECF No. 34], at 545-558, 606, 608-09.

determining whether and to what extent the Section 1782 application is appropriate and should be granted. *Intel*, 542 U.S. at 264. The United States Supreme Court's *Intel* decision is the leading authority on how district courts should evaluate an application for discovery under 28 U.S.C § 1782. In *Intel*, the Supreme Court concluded that even if an application meets the statutory requirements under Section 1782, the district court's decision to grant the application still is discretionary. *Id.* at 255. The Supreme Court discussed four factors a district court should consider when deciding what discovery, if any, to allow:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the discovery requested is "unduly intrusive or burdensome."

*Id.* at 264-65. The Supreme Court also recognized that Section 1782 has "twin aims" of "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (internal quotation marks and citations omitted).

## 1. The Parties' Burdens Under *Intel*

Before the Court discusses the *Intel* factors, it must first consider whether, as Applicant suggests, the Court should employ a burden-shifting framework to properly

weigh the *Intel* discretionary factors. *See* Applicant's Memorandum [ECF No. 4], at 12. In *Department of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019), the Eleventh Circuit held that "the Supreme Court, in announcing the discretionary § 1782 factors, did not set out the appropriate burdens of proof, though it did say in a footnote that the party 'targeted' in a § 1782 application 'would no doubt wield the laboring oars in opposing discovery.'" 925 F.3d at 1221-22 (quoting *Intel*, 542 U.S. at 265 n.17); s*ee also In re Schlich*, 893 F.3d 40, 49 (1st Cir. 2018) (noting that the "Supreme Court has not established the appropriate burden of proof ... for any of the discretionary factors, or the legal standard required").

There is one case in the Seventh Circuit that discussed a burden-shifting framework after the applicant in a Section 1782 proceeding demonstrated its need for discovery in a foreign lawsuit. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("[o]nce a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives").

Other circuits, however, have declined to adopt a strict burden-shifting approach. In *In re Schlich*, the First Circuit concluded that the Supreme Court in *Intel* "intended for both parties to make their arguments as to all of the [discretionary] factors, and for the district court to then determine whom those factors favor." 893 F.3d at 50. "In this sense," the First Circuit explained, "we do not see the factors as creating a burden for either party to meet, but rather as considerations to guide the

16

district court's decision." *Id.* Similarly in *Department of Caldas v. Diageo PLC*, the Eleventh Circuit preferred the First Circuit's "middle-of-the-road approach" and held that "district courts need not apply a rigid burden-shifting framework to properly weigh the discretionary factor of receptivity in a § 1782 case." 925 F.3d at 1223. The Eleventh Circuit recognized that the discretionary factors "are guideposts which help a district court decide how to best exercise its discretion" and concluded that "it is not necessary (or helpful) to put the burden on one side or the other with respect to receptivity." *Id.*

This Court will follow the Seventh Circuit's guidance and employ a burden-shifting framework when analyzing the discretionary factors and also will address the parties' arguments on how to balance each of the discretionary factors. The Court will now turn to the *Intel* discretionary factors.

## 2. The First *Intel* Factor Weighs in Favor of Granting the Application

The first discretionary factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceedings." *Intel*, 542 U.S. at 264. The parties agree that CSU is not a party in the Nigerian Proceedings and is beyond the jurisdictional reach of the Nigerian courts.[6] Accordingly, the Court finds that factor one weighs in favor of granting the Application.

---

[6] Although Intervenor acknowledges CSU is not a party to the Nigerian Proceedings, Intervenor contends this factor weighs against granting the Application because it is his (President Tinubu's) educational records that are sought in the subpoena. Intervenor's Response, [ECF No. 21], at 9-10. Contrary to Intervenor's characterization, however, Applicant does not merely seek production of records allegedly already produced by CSU to Intervenor (and that maybe theoretically could have been obtained from Intervenor in the Nigerian Proceedings). Rather, Applicant is seeking information from CSU about the

### 3. The Second *Intel* Factor Does Not Weigh Against Allowing the Discovery Sought in the Application

The second discretionary factor looks to whether the foreign court would accept assistance from a federal district court. *See Intel*, 542 U.S. at 264; *see also In re Bayerische Motoren Werke AG*, 2022 WL 1422758, at *3 (N.D. Ill. May 5, 2022). Some "courts have held that this factor weighs in favor of granting the application unless there is some 'authoritative proof' that the foreign court would oppose such assistance." *See In re Medytox*, 2019 WL 3162174, at *5 (same) (citing *Euromepa*, 51 F.3d at 1100-01 among other cases). Whether the party opposing discovery must provide "authoritative proof" of the lack of receptiveness of the foreign court, however, has been called into question by other circuits.[7]

In *Heraeus Kulzer*, the Seventh Circuit concluded the district court abused its discretion in denying the discovery sought under Section 1782 where "there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence . . . that the discovery produced." 633 F.3d at 597. The Seventh Circuit observed that Biomet, the respondent opposing

---

authenticity of those records and alleged discrepancies between the two versions of Intervenor's diploma. [ECF No. 22], at 9; [ECF Nos. 38, 39].

[7] *See, e.g., In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 698 n.9 (3d Cir. 2018) ("we decline to speak to whether an 'authoritative proof' standard . . .is the appropriate inquiry under the second *Intel* factor"); *In re Schlich*, 893 F.3d at 51 (1st Cir. 2018) ("requiring the party opposing discovery to present 'authoritative proof' of the foreign tribunal's unreceptiveness … could place pressure on the foreign tribunal and could exacerbate comity and parity concerns … [a]nd, if the opposing party fails to provide such exigent proof, then that could give carte blanche to the moving party for seeking discovery that is only marginally relevant to the foreign proceeding, thus potentially promoting fishing expeditions"); *Dep't of Caldas*, 925 F.3d at 1222–23 (declining to require authoritative proof of foreign tribunal's non-receptivity to the discovery sought under Section 1782).

discovery who was also party to the German proceedings, did not ask "the German court for a ruling that would bar or limit Heraeus's U.S. discovery" and further noted "[t]he measures that Biomet has not taken in this discovery dispute are eloquent testimonials to the weakness of its position." *Id.*, at 596–97. Nevertheless, the Seventh Circuit has not specifically defined what evidentiary showing under the second *Intel* factor would be sufficient to weigh against an application or satisfy the burden on the party opposing discovery. *See id.*, at 597 (describing burden on litigant opposing discovery as "to demonstrate, by more than angry rhetoric that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives."). Moreover, the Seventh Circuit has not analyzed the receptiveness inquiry in the context presented here, which turns on whether a foreign tribunal (the Supreme Court of Nigeria) that has not yet had the opportunity to consider the evidence sought in this Application would be receptive to such evidence.

Intervenor points to the recent Nigerian Court of Appeal Decision, issued after this Application was filed, which declined to consider the question of the authenticity of his diploma from CSU on the procedural grounds that this argument and the evidence proffered in support of it were raised in late submissions. Intervenor's Sur-Response [ECF No. 32], at 5; Nigerian Court of Appeal Decision [ECF No. 33], at 545-558, 606, 608-09. Based on that Decision, Intervenor asserts the Supreme Court of Nigeria would not be receptive to the discovery sought in the Application.[8]

---

[8] Intervenor cites *Kestrel Coal PTY. LTD. v. Joy Global, Inc.*, 362 F.3d 401, 406 (7th Cir. 2004). Intervenor's Response [ECF No. 21], at 11. In that decision, the Seventh Circuit found that where the presiding justice in the foreign tribunal in the proceedings for which the discovery was sought had "already . . . analyzed [applicant's] need for the documents and held

The Court is not persuaded by Intervenor's argument. The record before the Court does not establish the Supreme Court of Nigeria would necessarily reject the evidence sought in the Application. As discussed above, Applicant intends to appeal the Nigerian Court of Appeal Decision. He submitted evidence to this Court that the Supreme Court of Nigeria can consider new evidence in exceptional circumstances. Applicant's Reply [ECF No. 22], at 10; Uwais Decl. [ECF No. 24], at ¶12 & Ex. G. Intervenor does not contend that Applicant cannot argue to the Supreme Court of Nigeria that exceptional circumstances permit the introduction of the evidence Applicant is seeking from CSU. Rather, Intervenor argues, in effect, it is unlikely the Supreme Court of Nigeria will consider or admit that evidence given, in part, the decision not to do so by the Court of Appeal. Although Applicant acknowledges establishing exceptional circumstances to warrant the consideration of new evidence is "a demanding standard" (Applicant's Reply [ECF No. 22], at 10), Intervenor does not dispute that a legal mechanism exists for the Supreme Court of Nigeria to consider new evidence obtained by the discovery sought in this Application.[9]

---

that it has none—at least not yet" because "[applicant] does not need these documents to make out its claim, then no purpose would be served by their production in the United States under § 1782." *Kestrel Coal*, 362 F.3d at 406; *see Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2020 WL 208825, at *4 (N.D. Ill. Jan. 14, 2020) (describing circumstances in *Kestrel Coal* as "[a]fter the Supreme Court of Queensland denied the plaintiff's request to require Joy Global's subsidiaries to hand over certain documents, the plaintiff commenced a Section 1782 proceeding in the Eastern District of Wisconsin" seeking discovery of those same documents). By contrast, here, although the Court is aware of the procedural ruling of the Nigerian Court of Appeal, the Court does not know the position of the Supreme Court of Nigeria on the discovery sought in the Application because the Supreme Court has not yet spoken on that issue.

[9] Although Intervenor was granted leave to file a Sur-Response, he did not respond to Applicant's evidence that the Supreme Court of Nigeria may consider new evidence in exceptional circumstances. Moreover, Intervenor's reliance on *Venequip, S.A. v. Caterpillar,*

To that end, Intervenor has not satisfied his burden to show that allowing this discovery would "disserve the statutory objectives." *See Heraeus Kulzer*, 633 F.3d at 597.[10] Applicant has articulated a procedural mechanism by which he may be able to introduce to the Nigerian Supreme Court the evidence he is seeking from CSU in his Application. The Court does not know whether the Supreme Court of Nigeria will be receptive to that evidence, but that is not determinative, as explained above. Accordingly, the Court concludes the second *Intel* factor does not weigh against allowing the discovery sought in the Application.[11]

---

*Inc.*, 2022 WL 823856, at *2 (N.D. Ill. Mar. 18, 2022) to argue the Application should be denied based on the asserted lack of receptiveness of the Nigerian courts to Applicant's arguments is misplaced. [ECF No. 33] at 5. Rather, the district court in *Venequip* concluded the second *Intel* factor was "neutral" where the record submitted as to Swiss law "suggests that . . . the Swiss courts would not consider [evidence obtained via Section 1782] 'downright null and void'" while also acknowledging Swiss courts "would approach the wholesale importation of American civil procedure warily and with a degree of skepticism, as American pre-trial discovery proceedings are 'alien to Swiss law' and potentially inadmissible." *Id.*, 2022 WL 823856, at *2.

[10] Even if this Court had applied a less rigid burden-shifting analysis and used a more balanced approach, the Court still would have concluded that the second *Intel* factor does not weigh against allowing the discovery sought in the Application.

[11] *See Heraeus Med. GmbH*, 2021 WL 4133710, at *6 (second *Intel* factor "was equivocal and neither favors nor disfavors" the application where petitioners submitted declarations from attorneys in France, Germany and Belgium in support of position that tribunals in those countries would accept evidence produced pursuant to 28 U.S.C. § 1782 and "[r]espondents cite nothing to show that these tribunals would reject this evidence"). Other courts, applying an "authoritative proof" standard, have found circumstances arguably analogous to those here demonstrated the second *Intel* factor weighed in favor of allowing the discovery. *See In re Martin & Harris Priv. Ltd.*, 2021 WL 2434069, at *6 (D.N.J. June 14, 2021) ("It therefore appears from the High Court of Bombay's own orders that it has the authority to extend the deadline for discovery, not unlike a United States district court's discretion to extend discovery under Federal Rule of Civil Procedure 16" and "Merck has proffered no specific evidence that, to the extent the application seeks relevant discovery, the High Court of Bombay would reject it"; holding second *Intel* factor weighed in favor of allowing discovery sought in Application).

### 4. The Third *Intel* Factor Does Not Weigh Against Allowing the Discovery Sought in the Application

The third discretionary factor looks to whether the Section 1782 application is an attempt to circumvent the foreign tribunal's proof-gathering restrictions. *Intel,* 452 U.S. at 264-65. When analyzing this factor, courts regularly look to see if granting the application would undermine a proof-gathering policy of the foreign tribunal. *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) (holding that "to decline a § 1782(a) request based on foreign non-discoverability, *a district court must conclude that the request would undermine a specific policy of a foreign country or the United States*") (emphasis added).

Applicant says he has no reason to believe that any of the discovery he is seeking would circumvent any foreign proof-gathering restriction or policy in Nigeria. Applicant's Memorandum [ECF No. 4], at 15. In response, Intervenor says it is unclear whether, under the appropriate circumstances, a Nigerian election court might consider material gathered using Section 1782(a) and acknowledges that this factor is neutral. Intervenor's Response [ECF No. 21], at 12. Applicant has submitted unrebutted evidence that there is a procedural mechanism by which he can attempt to submit new evidence in his appeal of the Nigerian Court of Appeal Decision.

There is no evidence in the record to suggest that granting the Application would undermine or circumvent any Nigerian policy, and both Applicant and Intervenor say the third *Intel* factor is neutral. Based on the evidence and arguments presented, the Court agrees with the parties that the third *Intel* factor does not weigh against allowing the discovery sought in the Application.

**5. The Fourth *Intel* Factor Does Not Weigh Against Allowing the Discovery Because Any Burden on CSU Can Be Resolved by Limiting the Discovery**

Under the final discretionary factor, the Court looks to see if the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 241. This factor requires an examination of the breadth of the discovery requests for the court to determine whether it is unduly intrusive or burdensome. *See In re Labor Court of Brazil*, 466 F. Supp. 2d at 1031. Section 1782 does not establish a standard for discovery. *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012). Instead, it is a screening mechanism "designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including Rule 26, come into play; and … [S]ection 1782 drops out." *Heraeus Kulzer*, 633 F.3d at 597; 28 U.S.C. § 1782(a).

Therefore, if a district court decides to allow the discovery to proceed, the discovery requests are managed under Rule 26 of the Federal Rules of Civil Procedure, and other rules governing discovery in federal courts. *Heraeus Kulzer*, 633 F.3d at 598; *see also In re Labor Court of Brazil*, 466 F. Supp.2d at 1033. Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

23

> Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). Section (b)(2) of Rule 26 empowers a district court to limit the scope of discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2).

In his Reply, Applicant narrowed the scope of the discovery he is seeking. The Court, therefore, will consider the discovery requests contained in the revised subpoenas. *See* [ECF Nos. 38, 39]. As discussed above, there are now four narrowed document requests, which relate to the two different versions of Intervenor's CSU diplomas, that have been presented to this Court (documents that purport to be dated June 22 and 27, 1979), any similar diplomas issued by CSU to anyone other than Intervenor, and the Orr documents allegedly certified by CSU's Associate General Counsel, Jamar Orr, for use by Intervenor in the related case bought by Mr. Obi that now has been consolidated with Applicant's case. *See* First Liu Decl. [ECF 5-3], Ex. C (June 22, 1979 Diploma); First Liu Decl. [ECF 5-5], Ex. C (June 27, 1979 Diploma); Uwais Decl. [ECF No. 24-4], Ex. D (Orr documents).

The revised Rule 30(b)(6) deposition notice contains five narrowed topics asking for: (1) CSU's position on the authenticity of the documents produced in response to the Application and how and where CSU located the document; (2) CSU's position on the authenticity of other CSU documents purportedly produced by CSU and used in other Nigerian proceedings; (3) the contents of the Westberg Affidavit; (4) CSU's position on the authenticity of the Westberg Letter, including who

24

requested the letter, who prepared the letter, and to whom it was sent; and (5) CSU's position on the authenticity of the CSU documents certified by Orr and other facts regarding why the documents were certified, if he was authorized to do so, who requested the documents, and to whom they were sent. [ECF No. 39].

Intervenor first argues the discovery Applicant seeks is intrusive because educational records are private and protected by both federal and state law from disclosure, and it is burdensome because CSU has submitted an affidavit confirming Intervenor graduated from CSU in June 1979 which is all the information that is relevant here. Intervenor's Response [ECF No. 21], at 13-14, *see also* Westberg Affidavit [ECF No. 21-3], at 1-2. Again, however, framing the relevance issue in this way ignores a central tenet of the Application, which is not necessarily whether Intervenor attended CSU (though that is a part of Applicant's argument) but whether the June 22, 1979 CSU diploma that Intervenor presented to the INEC is an authentic copy of Intervenor's actual diploma issued by CSU.

With respect to Intervenor's privacy interest in his educational records, under the Family Educational and Privacy Rights Acy ("FERPA"), a plaintiff has a right of privacy in his educational records. *See McDaniel v. Loyola Univ. Med. Ctr.*, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015) (citing *Black v. Kyle-Reno*, 2014 WL 667788, at *1 (S.D. Ohio Feb. 20, 2014) reconsideration denied, 2014 WL 1308353 (S.D. Ohio Mar. 31, 2014)). The FERPA statute, however, does not create an independent privilege for educational records, but instead makes educational records confidential. *Id.* (citing *Catron v. Miles*, 215 Ariz. 446, 453 (2007); *see also Ragusa v. Malverne*

25

*Union Free School Dist.*, 549 F. Supp. 2d 288, 290 (E.D.N.Y. 2008) ("FERPA does not provide a privilege that prevents the disclosure of student records."). Disclosure of educational records is permitted under FERPA if it is necessary to comply with a lawfully issued subpoena or judicial order. 20 U.S.C. § 1232g(b)(2)(B). There is, however, a "significantly heavier burden" on the party requesting educational records to show that the interest in obtaining the records outweighs the privacy interest of the student. *Id.* (citations omitted).

Here, the Court finds that Applicant's interest in obtaining Intervenor's records from CSU outweighs Intervenor's privacy rights because Intervenor put his diploma at issue by submitting it to the INEC. Intervenor also submitted other educational documents in a related proceeding in Nigeria, some of which were certified by a CSU official, as discussed above. Further discovery into the CSU records, therefore, is relevant to the arguments Applicant intends to make to the Supreme Court of Nigeria, as discussed above. *See McDaniel*, 2015 WL 13901029, at *3 (holding that the defendant's interest in obtaining the plaintiff's educational records outweighs plaintiff's interest in privacy because the records are relevant to defendants' affirmative defenses as well as the damages at issue).

Applicant also argues that Intervenor does not have standing to object to the supposed burden the discovery would place on CSU. The Court agrees with Applicant on the issue of standing. CSU is the proper party to raise any burden associated with Applicant's discovery requests, other than with respect to Intervenor's privacy interest which is discussed above.

With respect to burden, CSU notes that, as the discovery respondent, "it is not a party to any of the Nigerian election proceedings, has no stake in the outcome of those proceedings, and does not take any position on the legal issues that have been litigated there." CSU's Second Response [ECF No. 32], at 1. CSU emphasizes that it has limited information that would be relevant to the Nigerian proceedings. CSU's First Response [ECF 20], at 1-2; CSU's Second Response [ECF No. 32], at 1-2. It, therefore, urges the Court not to allow the discovery to proceed because, among other reasons, it is a public university and already has devoted a significant amount of time and legal expense to discovery for proceedings in Nigeria. CSU's Second Response [ECF No. 32], at 2.

In the Court's view, these reasons are not sufficient for the Court to deny completely the Application. CSU seems to acknowledge its arguments may be insufficient to merit denial of the Application because it also requests that "any discovery which may be directed here be focused in scope and take into account the information CSU has already provided, as well as the information CSU has already notified Applicant's counsel it does and does not possess." CSU's Second Response [ECF No. 32], at 2. Because there is no evidence in the record to suggest that granting the Application would constitute an abuse of the right to conduct discovery in a federal district court for use in a foreign court, the Court finds that the fourth *Intel* factor does not weigh against allowing most of the discovery sought in the Application to proceed and that the Court can address any burden issues by limiting the discovery Applicant can seek as discussed below.

27

The Court has reviewed the narrowed requests in Applicant's revised subpoenas. [ECF Nos. 38, 39]. As to the revised requests for the production of documents, CSU does not object to the first three document requests but does object in part to Request No. 4. *Id.* at 3. Because CSU does not object to responding to Request Nos. 1 through 3, the Court orders CSU to answer Request Nos. 1 through 3 and produce all responsive, non-privileged documents, if any, within 48 hours of the issuance of this Memorandum Opinion and Order. The Court notes, parenthetically, that CSU has proffered that it does not save or retain diplomas it issues to its graduates so CSU may not have any documents to produce in response to Request Nos. 1, 2, or 3.

Respondent CSU does not object to producing true and correct copies of the Orr documents pursuant to Request No. 4. CSU does, however, object to producing "all communications to or from CSU concerning the certification of such documents by Jamar C. Orr, Esq., during the period of August 1, 2022 to August 1, 2023" based on undue burden and expense to the extent Applicant is seeking an expedited production of electronically stored information and communications. The Court agrees with Respondent and finds this portion of Request No. 4 to be an unduly burdensome request particularly given the tight timeframe created in no small part by Applicant in filing his Application in August 2023 with respect to a presidential election held in February 2023 and documents submitted to the INEC in mid-2022. A complete response to Request No. 4 likely would require Respondent to identify document custodians, agree with Applicant on key words, run key word searches in the custodial

databases, and produce electronically stored information all on an extreme and unrealistic time frame. In addition, at least a portion of what Applicant hopes to discover with this document request potentially can be obtained under Topic No. 5 in a Rule 30(b)(6) deposition discussed below.

As to the revised subpoena for a Rule 30(b)(6) deposition, CSU objects to a Rule 30(b)(6) deposition and instead requests that any deposition inquiry be conducted by written questions pursuant to Federal Rule of Civil Procedure 31 and that CSU be given seven days to respond to any questions. CSU's Second Response [ECF No. 32], at 2-3. While Rule 31 authorizes a party to take a deposition by written questions, the Federal Rules of Civil Procedure do not give the deponent a choice of whether he or she prefers to proceed orally or by written question. FED. R. CIV. P. 31(a)(1). In addition, responses to Rule 31 deposition questions must be provided orally in accordance with Rule 30(c), (e), and (f), under oath and on the record. FED. R. CIV. P. 31(b). And Respondent would have the right under Rule 31(a)(5) to serve their own written questions, and Applicant could serve redirect questions. So, the Rule 31 process of a deposition on written questions is not necessarily as streamlined as Respondent would have it, and the entire process very well may be more burdensome and time consuming under the circumstances of this case, in the Court's view, than a single Rule 30(b)(6) oral deposition. The Court agrees with Applicant that his Rule 30(b)(6) topics are reasonably tailored to obtain information for possible use in his imminent appeal to the Supreme Court of Nigeria.

In essence, CSU is seeking a protective order to prevent Applicant from taking an oral Rule 30(b)(6) deposition. Rule 26(c) provides that protective orders may address "matters relating to a deposition" and that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). The party seeking a protective order bears the burden of demonstrating good cause why the order should be entered. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F.Supp.3d 1079, 1084 (N.D. Ill. 2015).

Here, CSU has not established good cause for the Court to require Applicant to proceed with a deposition by written questions. In the Court's view, an oral deposition is the most effective method to obtain information from a deponent under the circumstances of this case. Therefore, the Court overrules CSU's objections and orders that the Rule 30(b)(6) deposition proceed on the narrowed topics identified in the revised subpoena within two days of Respondent's production of documents. [ECF No. 39]. As noted above, Topic No. 5 includes to some extent information that Applicant requested in Request No. 4 of his document subpoena without the attendant burden of time consuming electronic document searches and production.

## IV. CONCLUSION

For all of the reasons discussed above, Atiku Abubakar's Application Pursuant to 28 U.S.C. § 1782 for an Order Directing Discovery from Chicago State University for Use in a Foreign Proceeding [ECF No. 1] is granted. Respondent CSU shall produce all relevant and non-privileged documents in response to Requests for

30

Production Nos. 1 through 4 (as narrowed by the Court) in Applicant's subpoena within two days of the entry of this Memorandum Opinion and Order. The Rule 30(b)(6) deposition of Respondent's corporate designee shall proceed within two days of the production of documents. The parties can modify the dates set by the Court by mutual agreement. Given the tight time frame under which the parties are operating, the deposition can, if necessary, occur on a non-weekday.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 19, 2023