IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re* Application of ATIKU ABUBAKAR | ) ) ) ) ) No. 23 CV 5099 |
| For an Order Directing Discovery from CHICAGO STATE UNIVERSITY Pursuant to 28 U.S.C. § 1782. | ) ) ) ) |

**INTERVENOR'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RULING
ON THE APPLICICATION FOR DISCOVERY UNDER 28 U.S.C. § 1782**

Intervenor, Bola A. Tinubu, requests that the ruling by the Magistrate Judge, ordering Chicago State University to comply with document and depositions subpoenas proposed by the Applicant be set aside for two principal reasons. First, the discovery sought is not "for use" in the Nigerian election proceedings and the Nigerian courts have explicitly been unreceptive to the discovery. Second, the discovery sought, with one narrow exception, is not "for use" in the Nigerian election proceedings and is unduly intrusive because it allows Applicant to conduct a fishing expedition into Intervenor's private, confidential, and protected educational records. In support of this motion, Intervenor states as follows:

**Facts**

On March 20, 2023, Applicant Atiku Abubakar, who lost the February 2023 Nigerian presidential election, petitioned the Nigerian Election Court to overturn it.

(Dkt. 5-2.) Intervenor won that election and was sworn in as the President of Nigeria. Applicant's petition to the Nigerian Election Court stretches some 200+ pages, and focuses almost entirely on issues with vote tabulation. (*See* Dkt. 5-2, Exhibit B.)

In applying for discovery in the Northern District of Illinois, Applicant sought documents and a deposition about Intervenor's educational records at Chicago State University, and about how Chicago State University operates. (Dkt. 1, application; 1-1, document subpoena; Dkt. 1-2, deposition subpoena.)

In opposing Applicant's request for discovery, Intervenor points out that Applicant's petition to the Election Court focuses on vote and tabulation irregularities, and that issues about Intervenor's educational background are not part of the petition to overturn the election. (Dkt. 21, pgs. 5-6, 10-12.) For that and other reasons, Intervenor submitted that the Application for discovery should be denied. (*Id*.)

In reply, Applicant asserts that Intervenor's education at CSU is at issue in the Nigerian Election Court because the Nigerian Constitution and Electoral Act of 2022 provides that a candidate can be disqualified if they present a "false certificate" to the election commission **and** "Mr. Tinubu has submitted a document to INEC that purports to be a CSU diploma dated June 22, 1979." (Dkt. 22, pg. 5.)

Applicant's reply in this proceeding, in turn, relied on his "Reply to the Petition" submitted in the Nigerian Election Court, not the original petition. (*Id*., pg. 4.) The original petition contains a single sentence about qualification to run for office: "The

Petitioners aver that the 2nd Respondent was at the time of the election, not qualified to contest the election, not having the constitutional threshold." (Dkt. 5-2, pg. 556.) The Applicant's reply in the Nigerian Election Court, by contrast, asserted that:

> "[Tinubu] has demonstrated inconsistency as to his actual date of birth, secondary schools he attended . . . ; his State of origin, gender; actual name; certificates evidencing Universities attended (Chicago State University). The purported degree Certificate of [Tinubu] allegedly acquired at the Chicago State University did not belong to him but to a Female . . . ." (See Dkt. 22-5.)

The assertions in the reply mirror conspiracy theories offered by Nigerian political news blogs that were used to support the Application. (*See* Dkts. 5-8 and 5-9.)

Intervenor filed a Sur-Response to the new arguments and 100+ pages of material raised in and attached to Applicant's reply. Intervenor point out that Chicago State University's registrar confirmed, under oath, that Intervenor graduated with a degree as set forth in the diploma. (*See* Dkt. 33, pgs. 3-4, citing Dkt. 21-1, Exhibit 3.) Moreover, as explained by CSU, diplomas are ceremonial, and the discovery sought has to be relevant to a claim set forth in the pleadings in Nigeria to be admissible. (Dkt. 33, pgs. 4.) Applicant's pleading, his petition in the Nigerian Election Court, raises nothing about Intervenor's educational awards.

The Nigerian courts were unreceptive to Applicant's late-raised conspiracy theories. In its September 8, 2023 ruling, the Nigerian Election Court struck the

paragraphs in Applicants reply because his opening petition contains only a single general sentence about qualifications. The Nigerian Election Court ruled that:

> "an assertion that merely says that a person is not qualified to contest the election by reason of non-qualification, will leave not just the person so assailed but every other person involved, including the court, at a loss as to what the pleader has in mind." (See Dkt. 34-556-557.)

The Nigerian Election Court found that Applicant either failed to explain "what [he] meant by qualification for the election or simply deliberately kept it back when filing [his] petition," and that any assertions of facts "can only be contained in the petition itself." (*See* Dkt. 34, pgs. 557-562.)

On September 18, 2023, Applicant filed a notice of appeal in the Supreme Court of Nigeria. (*See* **Exhibit 1**, Notice of Appeal.) That notice of appeal focuses on the vote tabulation issue, and raises a procedural challenge to the Nigerian Election Court's finding that the generalized, unsupported statement in the petition is insufficient.

On September 19, 2023, the Magistrate Judge entered an order allowing Applicant to conduct discovery. That included, but was not limited to, "whether the June 22, 1979 CSU diploma that Intervenor presented to the INEC is an authentic copy of Intervenor's actual diploma issued by CSU." (Dkt. 40, pg. 25.)

### Standard of Review

On August 2, 2023, Applicant sought an order directing discovery from Chicago State University and, on August 3, 2023, this Court referred the matter to the Magistrate

- 4 -

Judge. (Dkt. 3.) The Magistrate granted the Application and ordered compliance. (Dkt. 40.) Intervenor separately moved to delay the effect of that ruling because the Magistrate lacked the authority to issue a final ruling on the Application. (*See* Dkt. 41.)

Because a request to direct discovery from Chicago State University pursuant to 28 U.S.C. § 1782 ends the controversy between the parties, the Court should treat the ruling as a non-binding recommendation and review it *de novo*. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022).[1] Alternatively, if the Court views the effect of the Magistrate Judge's as a non-dispositive and the clearly erroneous standard applies, Intervenor submits that the Magistrate clearly erred in ordering compliance with the proposed subpoenas. *See* FED. R. CIV. P. 72(a).

## **Argument**

There is <u>no</u> presumption in favor of applications to conduct discovery under section 1782. *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 264 (2004) ("We caution, however, that § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to "interested person[s]" in proceedings abroad."); *Kestrel Coal PTY. LTD. v. Joy Global, Inc.*, 362 F.3d

---

[1] In the absence of Seventh Circuit precedent, Intervenor believes the Court should adopt the analysis in *CPC Patent Technologies PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 806-08 (9th Cir. 2022), because it is persuasive and consistent with the approach the Seventh Circuit has taken to questions of whether a particular issue is dispositive. *See Rajaratnam v. Moyer*, 47 F.3d 922, 924 (7th Cir. 1995) ("The application for fees cannot be characterized as nondispositive.").

401, 406 (7th Cir. 2004) ("Section 1782 gives district judges a source of authority, but use of that power depends on a good reason."). The "good reason" to order all of the discovery sought by the Applicant remains absent here.

There are three jurisdictional requirements contained within section 1782 and four discretionary factors that the Supreme Court determined should be considered. *See* 28 U.S.C. § 1782; *Intel Corp.*, 542 U.S. at 264-65. Here, the second jurisdictional requirement – that the discovery sought is "for use" in election challenge pending in the Nigerian election court is absent because Applicant cannot submit the information sought. For the same reasons, the second discretionary factor – the character and nature of the foreign tribunal and that tribunal's receptivity to US judicial assistance – weighs strongly against Applicant's discovery because the Nigerian courts already stated they will not consider the evidence due to Applicant's failure to plead his claim in the petition. Furthermore, nearly all of the discovery sought is not "for use" in the election challenge because Applicant's assertions of disqualification only apply to the diploma submitted to INEC by the Intervenor. For the same reasons, the fourth discretionary factor, whether the request is unduly intrusive or burdensome, weighs against allowing discovery because the Applicant's interest in satisfying curiosity does not overcome Intervenor's interest in his private and confidential academic records.

The Magistrate concluded that the Application meets the jurisdictional requirements and that the discretionary factors weigh in favor of granting the

Application and ordering compliance with the discovery.[2] The Magistrate erred in these conclusions based on clear statements from the Nigerian courts and the lack of connection between almost all the discovery sought and the potential legal challenge to President Tinubu's "qualifications." The Application should be denied outright, or narrowly limited to a handful of questions about the diploma submitted to INEC.

**1.      The Discovery Cannot Be For Use In The Foreign Proceeding Because The Nigerian Election Court Held That It Cannot Be Used And The Only Document At Issue Is the Diploma.**

The Magistrate granted the application despite the fact that applicant is barred from attempting to use the discovery in the foreign proceeding. (Dkt. 34, pgs. 556-562.) That conclusion should be rejected because the discovery cannot be "for use" in the foreign proceeding due to the decision of the Nigerian Election Court, and that decision shows the Nigerian courts would not be receptive to the discovery sought by the Application.

Viewing the question as whether the Nigerian Supreme Court "could" or "would" consider the discovery, the Magistrate declined to address the latter because it would require a foray into Nigerian law, and concluded that the Nigerian Supreme Court could consider new evidence in "exceptional circumstances," based on the

---

[2] The Magistrate commented about burden shifting on the discretionary factors. The Supreme Court, however, in *Intel Corp. v. Advanced Micro Devices Inc*., simply stated that the factors should be weighed, did not endorse any burden shifting, and certainly could have required burden shifting if it intended to do so. 542 U.S. 241, 264-65 (2004). That decision controls.

affidavit from Applicant's Nigerian lawyer. (*See* Dkt. 40, pg. 12; Dkt. 24, Uwais Declaration.) The Magistrate Judge did, however, foray into Nigerian law by preferring the assertions of Applicant's lawyer over the decision of the Nigerian Election Court, which held that the new evidence cannot be considered *under any circumstances*. (*See* Dkt. 34, Decision.) The Magistrate committed clear error.

In *Heraes Kuzler, GmbH v. Biomet, Inc.*, the Seventh Circuit urged district courts to be alert for potential abuses that warrant denial of § 1782 applications, including an applicant's desire to "seek discovery of documents or other materials that the foreign court would not admit into evidence." 633 F.3d 591, 594 (7th Cir. 2011) (finding that this inferred the party seeking discovery "was trying to harass the defendant rather than to obtain evidence for use in a trial"). Here, as the Nigerian Election Court wrote in its decision, the evidence sought is inadmissible. (*See* Dkt. 34, pg. 556.) Because the information was missing from and had to be in the original petition, Applicant has no ability to submit anything further.[3] (*Id*.) The existence of that procedural bar will need to be lifted by the Nigerian Supreme Court *before* Applicant can attempt to amend the original petition and add new allegations and supporting evidence.

---

[3] The Magistrate writes in its order that Intervenor "does not dispute that a mechanism exists for the Supreme Court of Nigeria to consider new evidence," but the existence of the mechanism is immaterial in light of the procedural bar that precludes its operation. (Dkt. 40, n.9.)

The Magistrate gave no weight to the decision of the Nigerian Election Court, which is authoritative proof of the unreceptivity of the foreign court to the discovery sought. There is no more authoritative proof of unreceptivity than the Nigerian Election Court's decision that the discovery cannot be considered. Speculation that a possibility exists because the Nigerian Supreme Court has not yet ruled on the appeal is not an indication that foreign courts might consider the discovery. (*See* Dkt. 40, n.9.) The Seventh Circuit decision in *Kestrel Coal* rejects the Magistrate's logic. In *Kestrel Coal*, an Australian court refused discovery assistance and the Seventh Circuit held that "[o]nly if it turns out that the documents are relevant to the Australian suit, and difficult or impossible to obtain through that court's processes, would it make sense to launch an ancillary proceeding in the United States." 362 F.3d at 406. If the Magistrate's logic were accepted, the applicant in *Kestrel Coal* need merely have asserted the possibility of appeal in order to obtain the discovery because the ruling from the Australian court could have been appealed.

The principles of finality, parity, and comity would all fall away because an applicant could always speculate about what the next court might do. *See Schlich v. Broad Inst., Inc. (In re Schlich)*, 893 F.3d 40, 51 (1st Cir. 2018) ("requiring the party opposing discovery to present 'authoritative proof' of the foreign tribunal's unreceptiveness … could place pressure on the foreign tribunal and could exacerbate comity and parity concerns which "may be important as touchstones for a

district court's exercise of discretion … [a]nd, if the opposing party fails to provide such exigent proof, then that could give carte blanche to the moving party for seeking discovery that is only marginally relevant to the foreign proceeding, thus potentially promoting fishing expeditions."). The Magistrate's implicit requirement, that Intervenor prove a second time what the Nigerian Election Court already stated, is clear error.

### 2. The Discovery Is Not For Use In the Foreign Proceeding And the Discovery Unduly Intrusive To Private And Confidential Educational Records

In his Reply, Applicant finally explains the basis for the requested discovery: that the Nigerian Constitution and Electoral Act of 2022 provides that a candidate can be disqualified if they presented a "false certificate" to the election commission **and** "Mr. Tinubu has submitted a document to INEC that purports to be a CSU diploma dated June 22, 1979." (Dkt. 22, pg. 5.) Thus, according to Applicant, the relevant issue is whether the CSU diploma provided by Intervenor is authentic or a forgery. Applicant's discovery, however, goes far beyond that issue and strays into conspiracy theories offered on the Internet. A single deposition topic will suffice to answer this question, and it is arguably unnecessary based on both the affidavit of CSU's registrar and CSU's court filing. (Dkt. 21, Exhibit 3, CSU Affidavit; Dkt. 32, CSU Objections, pg. 2.)

The Magistrate erroneously concluded that a foray into "other educational documents" was permissible because "Intervenor also submitted other educational documents in a related proceeding in Nigeria." (Dkt. 40, pg. 26.) There are three shortcomings with this conclusion. First, the Nigerian Constitution and Electoral Act pertain to submissions to the INEC. There is no assertion that submissions as a defense in a *different* and *subsequent* proceeding will cause disqualification. Second, the other submissions occurred in a "related proceeding," and Applicant justified the discovery here about the election challenge now proceeding before the Nigerian Supreme Court. Discovery about "other documents" cannot be "for use" in the election challenge proceeding. Third, the catchall category of "other documents" is vague and is cover for a fishing expedition into protected, private, and confidential records.

The Magistrate erred in requiring compliance with two subpoenas that go far beyond the narrow issue of the diploma submitted to the INEC, and finding that the education records protections were overcome by Applicant's investigatory interests. The Magistrate determined that the Applicant's interest outweighed the privacy interest because Invervnor put the diploma at issue by submitting it to the INEC. (Dkt. 40, pg. 25-26.) The Magistrate also concluded the Applicant's interests were stronger as to "other educational documents" submitted in *related* proceedings. (*Id*. pg. 26.) This second conclusion is clearly erroneous because the "other documents" are not at issue in the electoral challenge, and discovery for "related proceedings" is merely another

- 11 -

way of describing a fishing expedition. *See Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Investment Group, LLC v. KPMG, LLP* 798 F.3d 113, 119 (2d Cir. 2015) ("Congress cannot have intended to confer 'interested person' status on all possible *amicus curiae*, when it passed § 1782."). Those "other documents" are not "for use" in the election proceeding and are not a basis for discovery.

The Magistrate recognized that educational records are private and are protected by both federal and state law from disclosure. *See* 20 U.S.C. § 1232(g) (purpose of the Federal Educational Records and Privacy Act of 1974 is to protect students from a school's unauthorized release of a student's records); 105 ILCS 10/6(a) (prohibiting the release, transfer, disclosure and dissemination of school student records). The Magistrate even recognized that while educational records can be subject to subpoena, there is a "heavier burden" on the party seeking the records "to show that the interest in obtaining the records outweighs the privacy interest of the student." (Dkt. 40, pg. 26.) The Magistrate determined that the applicant's interest outweighs the privacy interest because Invervnor put the diploma at issue by submitting it to the INEC. (*Id*.) The Magistrate also concluded the Applicant's interests overcame Intervenor's interests for the "other educational documents" submitted in related proceedings. This second conclusion is clearly erroneous because the "other documents" are not at issue in the electoral challenge and Intervenor's privacy rights cannot be overcome by a political opponent's misuse of the Illinois Court system to illegally gain access to his records.

There is harm in allowing discovery on issues and documents outside the diploma. Intervenor's records were illegally obtained previously and have been utilized to attack him. (Dkt. 5-1, ¶ 5; Dkt. 5-8, pg. 30 - "Bola A. Tinubu could in fact, be an assumed identity.") Obtaining more documents via a subpoena – particularly ones that are not part of the INEC submission by Intervenor – is both improper and nonsensical. The unlawful release of documents previously allowed Intervenor's opponents to sow confusion and spread conspiracy theories. Applicant should not be permitted to conduct discovery on the discovery illegally obtained by Applicant's allies and Intervenor's political opponents. Discovery on discovery is rarely appropriate, and is certainly not appropriate when the sole issue Applicant identified is Intervenor's submission of his diploma to INEC.[4] (*See* Dkt. 40, pg. 25.)

Nor does the fact that Intervenor's educational records have been spread into court records justify discovery. Section 1782 does not authorize fishing expeditions to satisfy curiosity or resolve public controversy. *See Heraes Kuzler*, 633 F.3d at 594; *In re Kivisto*, 521 Fed. Appx. 886, 888 (11th Cir. 2013) (to prevent abuse, a district court that "suspects" the § 1782 discovery request is a fishing expedition should deny the request) (citation omitted). Section 1782 is limited to procuring information for use in

---

[4] "Other documents" is a vague phrase that fails to identify with precision exactly what is at issue and facilitates a fishing expedition.

foreign proceedings. Applicant's concern about resolving a "public controversy," that he and his allies created, does not justify the utilization of section 1782.

## Conclusion

The most critical fact has already been clearly and unequivocally established by Chicago State University: Intervenor was awarded the degree as he stated. (Dkt. 21, Exhibit 3, ¶ 3; Dkt. 32, pg. 2.) This point is irrelevant to Applicant because he is not seeking anything more than opposition research on a political opponent. The Magistrate Judge clearly erred in granting the application for discovery and concluding that Chicago State University must respond to the document and deposition subpoenas. That conclusion should be set aside and the application should be denied because the information sought cannot be used and therefore is not "for use" in the foreign proceedings. Even if a narrow subset of information can be considered "for use" in the foreign proceeding, that is limited to the diploma submitted to INEC. Fishing expeditions into other documents and more document productions must be precluded.

                                                Respectfully submitted,

                                                **INTERVENOR BOLA AHMED TINUBU,**
                                                By: s/ Christopher Carmichael
                                                    One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel: (312) 262-2900

- 15 -

vphenderson@henderson-parks.com
ccarmichael@henderson-parks.com

                                        Respectfully submitted,

                                        **INTERVENOR BOLA AHMED TINUBU,**

                                        By: s/Oluwole Afolabi
                                               Admitted *Pro Hac Vice*

Oluwole Afolabi
**LAW OFFICES OF OLUWOLE AFOLABI**
805 Castleton Ave.
Staten Island, New York 10310
Tel: (973) 703-9433
woleafolabi@gmail.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on **September 25, 2023**, the foregoing **Objections to the Magistrate's Order on the 28 U.S.C. § 1782 Application for Discovery** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record.

By: /s/ Chirstopher Carmichael