# Exhibit 1

18th/9/2023

CERTIFIED TRUE COPY
.................

SEC...THE...
PRESIDENT...PRESIDEN...OF
COURT 2023

J.J EKPEROBE Esq

## IN THE SUPREME COURT OF NIGERIA
## HOLDEN AT ABUJA

## IN THE MATTER OF THE ELECTION TO THE OFFICE OF THE
## PRESIDENT OF THE FEDERAL REPUBLIC OF NIGERIA HELD ON
## 25th FEBRUARY 2023

**SC/      /2023**
**CA/PEPC/05/2023**

BETWEEN:

1. **ABUBAKAR ATIKU**
2. **PEOPLES DEMOCRATIC PARTY (PDP)**.................**APPELLANTS**

AND:

1. **INDEPENDENT NATIONAL ELECTORAL COMMISSION (INEC)**
2. **TINUBU BOLA AHMED**
3. **ALL PROGRESSIVES CONGRESS (APC)**..............**RESPONDENTS**

# <u>NOTICE OF APPEAL</u>

**TAKE NOTICE** that the Appellants being dissatisfied with the decision more particularly stated in **paragraph 2** herein, contained in the consolidated judgment of the Court of Appeal (sitting as the Presidential Election Petition Court), coram:- Haruna Simon Tsammani, JCA, Stephen Jonah Adah, JCA, Misitura Omodere Bolaji-Yusuff, JCA, Boloukuroma Moses Ugo, JCA, and Abba Bello Mohammed, JCA delivered 6th September 2023 in Petition No. CA/PEPC/05/2023 between Abubakar Atiku & Anor vs. Independent National Electoral Commission & 2 Ors, particularly contained from **pages 487 to 752** of the consolidated judgment (as well as the concurring contributions and rulings thereto) doth hereby appeal to the Supreme Court upon the grounds set out in **paragraph 3** and will at the hearing of the appeal seek the reliefs set out in **paragraph 4.**

AND the Appellants further state that the names and addresses of the persons directly affected by the Appeal are those set out in **paragraph 5**.

2. <u>**Part of Decision of the Lower Court complained of:**</u>

The whole judgment and all the rulings in Petition No. **CA/PEPC/05/2023.**

PRESIDENTIAL ELECTION PETITION
PAID
18th 9 2023
DATE ............
PETITION COURT 2023

## 3. **GROUNDS OF APPEAL:**

## **GROUND 1: ERROR IN LAW:**

The lower court erred in law when it refused to uphold the mandatoriness of electronic transmission of results for confirmation and verification of final results introduced by the Electoral Act 2022 for transparency and integrity of results in accordance with the principles of the Act, and held as follows:

*"On Petitioners' allegation that 1st Respondent failed to collate the election result using the electronic collation system, the Petitioners have not been able to prove that the Electoral Act or the Guidelines made it mandatory for electronic collation system."* (page 678 of the judgment)

## **PARTICULARS OF ERROR:**

(1). The Electoral Act 2022 introduced technology in the conduct of elections, particularly in the transmission and collation of results, being the part of the election process easily susceptible to manipulation and compromise.

(2). Pursuant to the technological innovation by the Electoral Act, 2022 and INEC Regulations and Guidelines 2022, the 1st Respondent chose BVAS machine and IReV as the technological devices to use for the conduct of the election.

(3). Section 64(4) and (5) of the Electoral Act, 2022, as well as the INEC Regulations and Guidelines for the Conduct of Election (tendered as **Exhibit PAE 1)** and INEC Manual for Election Officials (tendered as **Exhibit PAE 2)** made mandatory the use of BVAS machines for electronic transmission or transfer of the results of the said election directly from the polling units to the INEC Collation system for the, verification, confirmation and collation of results before announcement.

(4). The Appellants called evidence of several Presiding Officers who personally handled the BVAS machines at the polling units on the election day who confirmed the non-transmission of results of the Presidential election electronically from the BVAS machines, whereas the results for the National Assembly election held simultaneously were electronically transmitted without difficulty.

2

(5).  It was not in dispute that the 1st Respondent failed to electronically transmit the results of the presidential election from the polling units to both the collation system and the IReV on the day of the election.

(6).  The bypass of the use of the prescribed verification technology was nationwide, affecting the entire polling units and collations of results all over Nigeria, and substantially affected the outcome of the election.

(7).  The sole witness of the 1st Respondent, **RW 1,** Lawrence Bayode, admitted under cross-examination that the deployment of the technology of BVAS and IReV was to guarantee the transparency of the electoral process and the integrity of the results, and claimed that there was a "**technical glitch**" that made the system fail to work on the day of the election, which "technical glitch" was not explained by the 1st Respondent.

(8).  The Appellants' **PW26** who scientifically examined a random sample of the BVAS machines at the 1st Respondent's Headquarters, Abuja, confirmed that there was nothing inherently or intrinsically wrong with the BVAS machines, and that any failure to transmit was man-made.

(9).  Failure to comply with the said prescription of electronic transmission of the result of the said election in the polling units by the Presiding Officers amounts to non-compliance with the provisions of Section 60(5), Section 64(4) and (5) of the Electoral Act, 2022 which require the transfer of the results of the election in the polling units by the Presiding Officers in the manner prescribed by INEC.

## GROUND 2: ERROR IN LAW:

The lower court erred in law when despite the clear provisions of the enabling statutes, namely the Constitution of the Federal Republic of Nigeria 1999 (as amended), the Electoral Act 2022, the Regulations and Guidelines for the conduct of Election, and the Manual for Election Officials, it still proceeded to hold as follows in relation to the technological devise known as BVAs:

*"From the above functions of the BVAs, it is clear to me that, apart from using the BVAs to scan the physical copy of the polling*

3

*unit result and upload same to the Result viewing portal (IRev), there is nothing in the Regulations to show that the BVAs was meant to be used to electronically transmit or transfer the results of the polling unit direct to the collation system. It should be noted that INEC Results viewing portal (IRev) is not a collation system." (page 687 of the judgment)*

## PARTICULARS OF ERROR:

(1). By virtue of section 160(1) of the Constitution of the Federal Republic of Nigeria 1999 (as amended), section 148 of the Electoral Act 2022, the INEC Regulations and Guidelines have the force of law being a direct product of the Constitution itself, thus qualifying as subsidiary legislation.

(2). By the provisions of the Electoral Act 2022, sections 60 and 64 thereof, and paragraph 38 of the INEC Regulations and Guidelines, the 1st Respondent introduced a technological device for the verification and transmission of the Result to the collation system, making BVAS and IReV and the electronic transmission of election results from polling units to collation system part of the electoral process.

(3). The expression "transmitted directly from polling units" in section 64(4)(a), (b), (c), (5), and (6)(c) of the Electoral Act, 2022, refers to election results electronically transmitted in compliance with section 60(5) of the Electoral Act, 2022, and Paragraph 38(1) of the INEC Guidelines and Regulations.

(4). The word **"electronically"** as used in paragraph 38(1) of the Guidelines is the operative word which qualifies the words "transmit" and "transfer".

(5). The 1st Respondent did not deny the fact that it electronically transmitted the National Assembly election result held simultaneously with the Presidential election on 25th February 2023, to the electronic collation system and the IReV.

(6). The non-compliance with this critical aspect of the provisions of the Electoral Act 2022 was nationwide, cutting across the 176,846 polling units in the Nigerian Federation, and substantial in the circumstance and affected the outcome of the election.

## GROUND 3: ERROR IN LAW:

The lower Court erred in law when it held that the requirement of electronic transmission of the result of the election directly from the polling units to the INEC collation system is not a requirement of the Electoral Act, 2022.

## PARTICULARS OF ERROR:

(1). Section 60(5) of the Electoral Act, 2022 makes it mandatory for the Presiding Officer to transfer the result of the election in the polling unit together with the total number of accredited voters in such manner as INEC may determine.

(2). In compliance with and in obedience to the said directive and order contained in the Electoral Act, INEC in paragraph 38 of its Guidelines and Regulations for the said election prescribed that the Presiding Officers shall using the BVAS, electronically transmit the results of the said election in the polling units to the INEC Collation system.

(3). Sections 60 (4) of Electoral Act, 2022, and 47 (2) Electoral Act, 2022 both mandate the electronic transmission of results directly from the polling units.

(4). The lower court was not correct in its finding that the Electoral Act, 2022 has not specifically provided that the results of the election shall be electronically transmitted,

## GROUND 4: ERROR IN LAW:

The lower court erred in law when it failed to hold that the non-use of electronically transmitted results by the 1st Respondent's Collation Officers and Returning Officers for the collation and verification of election results before announcement, constitutes non-compliance with the mandatory provisions of the Electoral Act, 2022.

## PARTICULARS OF ERROR:

(1). Notwithstanding the evidence led by the Appellants, the Respondents failed to adduce evidence to show that they complied with the said mandatory provisions of paragraphs 38 and 48(a) of the INEC Regulations and Guidelines, and Section 64(4) of the Electoral Act, 2022.

(2). The Respondents in their Replies and evidence did not deny that the results of the election were not electronically transmitted directly from the polling units.

(3). The burden of proof of the fact of the said verification and confirmation in compliance with the provisions of Section 64(4) of the Electoral Act, 2022, was on the 1st Respondent, or had shifted to it, given the special circumstances and its possession of peculiar knowledge of the said facts and/or documents.

(4). The 1st Respondent in Paragraph 2.9.0 of its Manual for Election Officials 2023 (Exhibit PAE 2) also admitted that the purpose of the electronic transmission of the results of the election directly from the polling unit was to guarantee the integrity of the election and avoid the usual tampering with the results of the election between the polling units and the collation centres.

(5). The failure and or refusal of INEC and its Presiding Officers to electronically transmit the result of the election directly from the polling units to the INEC Collation System as prescribed by INEC, adversely affected the integrity of the said election.

(6). By reason of the aforesaid failure, opportunity was provided for interference with the results between the polling units and the Collation Centres.

## GROUND 5: ERROR IN LAW:

The lower court erred in law when it failed to determine the case of the Appellants with respect to the mandatory verifications and confirmations required before the announcement of the result of the said Presidential Election pursuant to Section 64(4) of the Electoral Act, 2022.

## PARTICULARS OF ERROR:

(1). The Appellants *inter alia* in paragraphs 29, 30, 31 & 48 of the Petition averred that all the Collations Officers and Returning Officers of the 1st Respondent including the National Chairman of the 1st Respondent, were under a statutory obligation, before announcing the result of the election, to confirm and verify amongst others, that the result being collated is consistent with the results directly transmitted from the polling units.

(2). The Appellants particularly through the **PW22** (Sen. Dino Melaye) especially in paragraphs 45 and 70 of his witness statement adduced evidence to show that the 1st Respondent's Collation Officers and Returning Officers including the National Chairman of the 1st Respondent, did not carry out the said mandatory verifications and confirmations before announcing the results of the said election.

(3). The said **PW22** (Sen. Dino Melaye) was the National Collation Agent of the Appellants for the said election, and was thus in a position to know firsthand whether or not the National Chairman of the 1st Respondent, who was the Returning Officer for the said election, carried out the said mandatory verifications.

(4). The Appellants in their Final Written Address also canvassed the nullity of the said election on account of the failure of the said 1st Respondent's Collation and Returning Officers to carry out the said mandatory verifications and confirmations.

(5). There was non-compliance on the part of the said officials of the 1st Respondent with the said mandatory provisions of Section 64(4) of the Electoral Act, 2022 by making the verifications and confirmations before announcing the final results of the election.

(6). The Respondents in their Replies and evidence admitted that the results of the election electronically transmitted directly from the polling units were not used for the purpose of the collation of the results of the election.

## GROUND 6: ERROR IN LAW:

The lower court erred in law on the issue of shifting of burden of proof when it held as follows:

*"The learned senior Counsel for the Petitioners had in this Petition laboriously argued that the burden of proof is on the person asserting the positive and not on the person asserting the negative. The Petitioners, it appears from their position, tend to cross the line of misconception as to who has the burden of proof in our adversarial system of justice in civil cases when the primary onus of proof is on the Petitioner who makes all the*

*claims against the Respondents in this Petition." (page 644 of the judgment)*

## PARTICULARS OF ERROR:

(1). It was not the case of the Appellants that the initial burden of proof was not on them to prove the non-compliance.

(2). The case of the Appellants was that under the new legal regime of technology-based collation of results under the Electoral Act 2022, the Appellants, by credible evidence, established deliberate non-compliance by the 1st Respondent with the electronic transmission of election results which was nationwide.

(3). The presiding officers from polling units having confirmed selective transmission of National Assembly results against presidential election results, the onus shifted to the 1st Respondent to call evidence to explain the selective transmission as well as the vague excuse of "**technical glitch**".

(4). The 1st Respondent's **RW1** confirmed under cross-examination that the technological innovation under the Electoral Act 2022 was to guarantee transparency of the electoral process and integrity of the results.

(5). The Appellants' presiding officers at the polling units, namely **PW 12, Mr. Friday Ogwumah; PW 13, Grace Timothy; PW 14, Grace Ajagbona; PW 15, Abidemi Joseph; PW 16, Edosa Obosa; PW 17, Alheri Ayuba; PW 18, Sadiya Mohammed Haruna; PW 23, Janet Nuhu Turaki; PW 24, Christopher Bulus Ardo;** and **PW 25, Victoria Sanni** gave evidence of non-transmission of the results of the presidential election, whilst those of the National Assembly held simultaneously, were transmitted successfully.

(6). The Appellants having established the non-transmission of the results, the onus further shifted to the 1st Respondent in line with provisions of section 64(4) of the Electoral Act 2022 to show that it used transmitted results for necessary verification and confirmation for the guarantee of integrity of the results returned.

(7). The 1st Respondent's **RW1** confirmed under cross-examination that up till 1st March 2023 when the final result was announced by INEC, the results had not been completely uploaded.

(8). The 1st Respondent had a duty to explain the "**technical glitch**" which prevented uploading of results for such duration.

(9). The lower Court completely misconceived the case of the Appellants on the duty on the 1st Respondent to explain both the selective transmission by calling of evidence of other presiding officers who handled the BVAS machines and had a duty to call expert witness to explain the admitted non-transmission occasioned by the alleged "technical glitch", the Appellants having proffered credible evidence of non-compliance.

(10). The claim of the 1st Respondent as to "technical glitch" affecting transmission on election day and the 2nd and 3rd Respondents' claim that INEC rescinded the decision to transmit results electronically, are inconsistent and mutually incompatible.

## GROUND 7: ERROR IN LAW

The lower Court erred in law when it failed to nullify the presidential election held on 25th February 2023 on the ground of non-compliance with the Electoral Act 2022 when by evidence before the Court, the 1st Respondent (INEC) conducted the election based on very grave and gross misrepresentation contrary to the principles of the Electoral Act 2022, based on the "**doctrine of legitimate expectation**".

## PARTICULARS OF ERROR:

(1). Pursuant to the introduction of technology by Electoral Act 2022 into the conduct of election in Nigeria, the 1st Respondent (INEC), in exercise of its constitutional responsibilities and mandate, enacted its Guidelines and Regulations for the presidential election 2022 and Manual for Election Officials 2023 for the use of BVAS machines and IReV technologies for the transmission and collation of results of general elections, including the presidential election.

(2). The 1st Respondent, through its Chairman, Professor Yakubu Mahmoud, publicly gave guarantees, undertakings, clear and unambiguous representations to candidates and political parties,

including the Appellants, that results of the presidential election shall and must be transmitted electronically to its collation system and uploaded real time to the IReV for transparency and integrity, having received huge, massive investment of public funds and taxpayers money to the tune of **N355 billion.**

(3). The 1st Respondent in Paragraph 2.9.0 of its Manual for Election Officials 2023 (**Exhibit PAE 2**) for the said election, admitted and indeed stated clearly that the said requirement of the electronic transmission of the result of the said election, was for the purpose of guaranteeing the integrity of the said election and in particular to avoid the rampant incidents of tampering with the results of the said election between the polling units and the collation centers.

(4). Pursuant to the above representations and assurances, the Appellants participated in the election, with the 1st Appellant contesting on the platform of the 2nd Appellant for election to the office of President of the Federal Republic of Nigeria, placing reliance on the said representation in furtherance of a legitimate interest.

(5). The Appellants participated in the said election based on the said representation by the 1st Respondent that its Presiding Officers were going to electronically transmit the results of the election directly from the polling units to the 1st Respondent's Collation System and upload same unto the IReV.

(6). The Appellants tendered in evidence as **Exhibits PAF1(A), PAF(B)** and **PAF(C),** the undisputed video recordings of the 1st Respondent's Chairman, Professor Yabuku Mahmud's representations and the undisputed video recordings of its National Commissioner, Mr. Festus Okoye as **Exhibits PAF2(A), PAF 2(B)** and **PAF2(C).**

(7). The 1st Respondent in the course of the proceedings and contrary to its public statements and Guidelines and Regulations for the said election and in particular in paragraphs 25 and 28 of its Reply to the Petition and paragraphs 10 and 14 of the witness statement of its only witness (RW1), denied the existence of the said much publicized procedure of electronic transmission of the results of the said election directly from the polling units to its collation system claiming that the 1st Respondent had no collation system to which

'polling units results were mandatorily required to be electronically transmitted or transferred directly by the Presiding Officers'.

(8). There was no evidence before the lower Court that the 1st Respondent altered its aforesaid Guidelines and Regulations to remove the said requirement of electronic transmission of the results of the election directly from the polling units to the 1st Respondent's Collation System.

(9). The 1st Respondent conducted the said Presidential Election based on the gross misrepresentation to the Appellants and the general voting public that the Presiding Officers were going to electronically transmit the results of the said election directly from the polling units to the 1st Respondent's Collation System.

(10). Contrary to the above unambiguous representations, undertakings and guarantees, the 1st Respondent neither deployed the electronic transmission of election results nor the electronic collation system in the said election, sabotaging the *raison d'etre* for the enactment of the new Electoral Act 2022 and the introduction of the technological innovations.

(11). Rather than hold the 1st Respondent (INEC) as a public institution accountable to the representations that it made pursuant to its statutory and constitutional duties which created legitimate expectation on the part of the Appellants, the lower court wrongly exonerated the 1st Respondent of any responsibility by holding that the use of the technological innovations to guarantee transparency was not mandatory.

(12). The said election was conducted based on very grave and gross misrepresentation and was therefore oppressive to the Appellants and thus not free and fair, and not in accordance with the principles of the Electoral Act 2022, and not protected by the presumption of regularity, as well as the preamble and the fundamental objectives and directive principles of State policy of the Constitution of the Federal Republic of Nigeria 1999 (as amended) adopted by the lower court.

(13). The grave misrepresentation negated the legal presumption of official regularity in favour of the 1st Respondent.

(14). The 1st Respondent as a public institution is not above the law, and not entitled to breach its own regulations with impunity, after clear and unambiguous representations upon which parties have placed reliance and entitled to legitimate expectation.

(15). The said election ought to have been nullified by reason of the said gross misrepresentation by a public institution based upon the **"doctrine of legitimate expectation"** as applied by the Supreme Court as a policy Court in **STITCH VS. AG, FEDERATION (1986) 5 NWLR (Pt. 46) 1007**.

## GROUND 8: ERROR IN LAW:

The lower court erred in law when in its interpretation of section 134(2)(b) of the Constitution of the Federal Republic of Nigeria 1999 (as amended), it held as follows:

*"In finding appropriate answer to this issue, I wish to observe, first, that with all due respect to Counsel to the Petitioners, their interpretation of section 134 (2) (b) of the 1999 Constitution founded principally on a fixation with the word "and" appearing between the phrases "he has not less than one-quarter of the votes cast at the election in each of at least two-thirds of all the states in the Federation", and "the Federal Capital Territory, Abuja", is completely fallacious if not outrightly ludicrous"* (pages 720-721 of the judgment).

## PARTICULARS OF ERROR:

(1). The issue submitted to the lower court called for the interpretation of the material word **"AND"** in the said section 134(2)(b) of the Constitution of the Federal Republic of Nigeria 1999 (as amended).

(2). The provisions of the section are clear and unambiguous, and a literal and ordinary construction will best define the intention of the framers of the Constitution.

(3). The word "AND" used in section 134(2)(b) of the Constitution, 1999 is conjunctive and not disjunctive.

(4). The word "AND" used in section 134(2)(b) of the Constitution, 1999 is not a creation of the Appellants and the Appellants were in no way fixated on it.

12

(5). Contrary to the opinion of the court below, there is nothing "completely fallacious" or "outrightly ludicrous" in applying the words used by the framers of the Constitution.

(6). A constitutional requirement of one-quarter of the votes in two-thirds of the States "AND" the Federal Capital Territory, Abuja, is additional and mandatory requirements to the provisions relating to the highest lawful votes, and therefore a condition precedent to a declaration.

(7). Merely picking out the word "equality" by the lower court in the Preamble to the 1999 Constitution cannot defeat the plain, clear and unambiguous provisions of section 134(2)(b) of the Constitution of the Federal Republic of Nigeria 1999 (as amended).

(8). The said Federal Capital Territory, Abuja cannot be construed as the 37th State of Nigeria as done by the lower court in the light of the clear provisions of section 2(2) and section 3(1) of the Constitution, 1999.

(9). A correct interpretation of the said section 134(2)(b) of the Constitution, 1999 would neither be "hollow" or "futile" as opined by the lower court.

(10). The lower court failed in its duty to interpret the material word "**AND**" in the said sub-section.

## GROUND 9: ERROR IN LAW:

The lower court erred in law when it held, in relation to the applicability of section 299 of the Constitution of the Federal Republic of Nigeria 1999 (as amended) to section 134(2)(b) of the said Constitution, as follows:

*"**The point being made here is that contrary to the position of the Petitioners, by the express provisions of section 299 above, <u>the provisions of the entire Constitution</u> shall apply to the Federal Capital Territory as if it were one of the States of the Federation.**" (page 729 of the judgment).*

## PARTICULARS OF ERROR:

(1). Contrary to the opinion of the lower court, the provisions of section 299 of the Constitution of the Federal Republic of Nigeria 1999 (as amended) are clearly inapplicable to section 134(2)(b) of the Constitution, 1999.

(2). By subsection (c) of the said section 299, its application is limited to the matters aforesaid, namely legislative powers, executive powers and judicial powers; and does not apply to the procedure for the election of President covered by section 134(2)(a) in line with the principle of "*expressio unius est exclusio alterius.*"

(3). The provision of section 299 of the 1999 Constitution is special and limited to the exercise of legislative, executive and judicial powers in the Federal Capital Territory, Abuja and has nothing to do with electoral matters.

(4). The provisions of section 299 of the 1999 Constitution ought not be used to reconstruct the provision of section 134(2)(b) of the same Constitution to defeat its intendment and application.

(5). A proper interpretation of the word **"accordingly"** in the section clearly qualifies and limits the scope of the application of the said section to only matters specifically mentioned therein.

(6). Section 299 of the 1999 Constitution does not and cannot apply to the entire provisions of the Constitution as wrongly held by the lower court.

## GROUND 10: ERROR IN LAW:

The lower court erred in law when in its interpretation of section 134(2)(b) of the Constitution of the Federal Republic of Nigeria 1999 (as amended), it held as follows:

*"...by the express provisions of section 299 above, the provisions of the entire Constitution shall apply to the Federal Capital Territory as if it were one of the states of the Federation. This means that Section 134(2)(b) of the same Constitution, requiring a presidential candidate to poll at least one quarter of the votes cast in two-thirds of the States of the Federation in order to be returned elected, means nothing more than that the Federal Capital Territory shall be taken into account in*

14

*calculating the said two-third of the States of the Federation."*
*(pages 729-731 of the judgment)*

## PARTICULARS OF ERROR:

(1). The provision of section 134(2)(b) of the Constitution is clear on the requirement that a Presidential Candidate must score at least 25% of the total votes cast in the Federal Capital Territory, Abuja.

(2). There is no ambiguity or absurdity in the provisions of section 134(2)(b) of the Constitution to warrant a resort to any other canon of interpretation other than the literal rule, as the lower court erroneously did.

(3). The lower court misconceived the intention of the Legislature in their interpretation of the provisions of section 134(2)(b) of the Constitution.

## GROUND 11: ERROR IN LAW:

The lower court, on the requirement of one-quarter of the votes scored in the Federal Capital Territory, Abuja, erred in law when it held as follows:

*"Such that if a candidate polls 25% or one-quarter of the votes in two-thirds of 37 States of the Federation (FCT Abuja inclusive), the Presidential Candidate shall be deemed to have been duly elected, even if he fails to secure 25% of the votes cast in the Federal Capital Territory, Abuja,..."* *(page 731 of the judgment)*

## PARTICULARS OF ERROR:

(1). The lower court wrongly interpreted the phrase **"as if"** in the said section 299 which clearly defines a situation that appears or resembles something else, but is not actually that, which led to its holding the Federal Capital Territory, Abuja as the 37th State of the Federation.

(2). Section 2(2) of the Constitution of the Federal Republic of Nigeria 1999 (as amended) provided that Nigeria shall be a Federation consisting of States **AND** the Federal Capital Territory, Abuja.

(3).  Section 3(1) of the said Constitution specifically named, mentioned and listed the 36 States of the Federation, and Federal Capital Territory, Abuja was not included as the 37th State.

## GROUND 12: ERROR IN LAW:

The lower court, on the requirement of one-quarter of the votes cast in the Federal Capital Territory, Abuja, erred in law when it held as follows:

*"In conclusion, I hold without any equivocation that in a Presidential election, polling one-quarter or 25% of total votes cast in the Federal Capital Territory of Abuja is not a separate precondition for a candidate to be deemed as duly elected under section 134 of the Constitution."* (page 731 of the judgment)

## PARTICULARS OF ERROR:

(1).  The pre-condition of polling one-quarter of the votes or 25% of total votes before a declaration and return in a presidential election applies equally to (a) two thirds of the States of the Federation, **and** to (b) the Federal Capital Territory Abuja.

(2).  The language employed in section 134(2)(b) of 1999 Constitution is clear and unambiguous.

(3).  The duty of the lower court was to interpret the law as it is, where the words are clear and unambiguous such as in section 134(2)(b) and section 299 of the Constitution of the Federal Republic of Nigeria 1999 (as amended).

## GROUND 13: ERROR IN LAW:

The lower court erred in law in striking out the witness statements on oath and the entire evidence of the Appellants' subpoenaed witnesses, namely **PW 12, PW 13, PW 14, PW 15, PW 16, PW 17, PW 18, PW 21, PW 23, PW 24, PW 25, PW 26** and **PW 27** when it held as follows:

*"The long and short of all the foregoing is that the objection of the respondents to the witness statements of P.W. 12 (Egwuma Friday), P.W.13 (Grace Timothy), P.W.14 (Grace Ajagbona), P.W.15 (Abidemi Joseph), P.W. 16 (Miss Edosa Obosa), P.W.17 (Miss Alheri Ayuba), P.W.18 (Miss Sadiya Mohammed Haruna), P.W.21 (Mr. Samuel Oduntan — the Statistician); P.W.23 (Janet*

*Nuhu Turaki), P.W.24 (Christopher Bulus Ardo), P.W.25 (Victoria Sani), P.W.26 (Hitler Ewunonu Nwala - forensic Expert), and P.W. 27 (Mr. Mike Enahoro-Ebah, Legal Practitioner) which did not accompany the Petition as required by Paragraph 4(5)(b) of the First Schedule to the Electoral Act, is hereby sustained and the said witness statements, being incompetent, are hereby struck out and expunged from the records of this Court."* (Pages 584-585 of the judgment)

## PARTICULARS OF ERROR:

(1).    The lower court struck out the witness statements on oath and entire evidence of these material witnesses of the Appellants on the erroneous ground that the said witness statements on oath were not filed along with the Petition.

(2).    These witnesses were essentially persons whose witness statements on oath could not practically be ready and available at the time of preparing and filing the Petition.

(3).    The **PW 21** and **PW 26** were witnesses whose witness statements on oath and expert reports were predicated upon orders of the same lower Court made pursuant to section 146(1) of the Electoral Act 2022 which authorised them on behalf of the Appellants to proceed to inspect electoral documents in the custody of the 1st Respondent (INEC) for the maintenance of the Petition.

(4).    The said witness statements on oath and the reports were products of the inspection conducted pursuant to the order of Court, and could not have been produced in advance before the filing of the Petition, same being dependent on access to electoral documents in the possession of an adverse party.

(5).    The **PW 12, PW 13, PW 14, PW 15, PW 16, PW 17, PW 18, PW 23, PW 24,** and **PW 25** were Presiding Officers, being ad hoc staff of INEC who functioned at the polling units, who could only testify upon orders of subpoena, being staff of an adverse party, and could not have prepared witness statements on oath in advance before the filing of the Petition.

(6).    It was impossible and impracticable to have prepared the witness statements on oath of such subpoenaed witnesses in advance and filed along with the Petition.

(7). Witness statements on oath of subpoenaed witnesses are not within the contemplation of paragraph 4(5)(b) of the First Schedule to the Electoral Act 2022.

(8). By virtue of paragraph 54 of the First Schedule to the Electoral Act 2022, in the clear absence of specific provision relating to subpoenaed witnesses, recourse ought to be had to Order 3, Rule 2 and 3 of the Federal High Court (Civil Procedure) Rules, 2019.

(9). The striking out of the evidence of the subpoenaed witnesses Appellants was in breach of their right to fair hearing and was to amputate the evidential limbs of the case of the Appellants, and peremptorily and technically knock out the case of the Appellants.

(10). The decision of the Supreme Court in OKE V MIMIKO (2013) LPELR-20645 SC relied upon by the lower court is not applicable to the instant case.

(11). There was nothing incompetent about the said witness statements which were not in breach of Paragraph 4(5)(b) of the First Schedule to the Electoral Act 2022.

(12). The First Schedule to the Electoral Act 2022, which was designed as a handmaid of justice, was wrongfully applied by the lower Court to inflict gross miscarriage of justice on the Appellants.

(13). The general provisions of the First Schedule to the Electoral Act 2022 on frontloading of witness depositions on oath at the time of filing election petition only contemplate willing and voluntary witnesses and not those who had to be compelled by an order of Court to testify by way of subpoena.

(14). The legal maxim "*lex non cogit ad impossibilia*" applies, namely that the law commands that which is reasonable and possible and not what is illogical or naturally impossible.

## GROUND 14: ERROR IN LAW:

The lower court erred in law when it held that Order 3, Rules 2 and 3 of the Federal High Court (Civil Procedure) Rules, 2019 permitting parties to file witness statements of **subpoenaed** witnesses after commencement of action do not apply to Election Petitions.

## PARTICULARS OF ERROR:

(1). The decision in Araraume v. INEC (2019) LPELR-48397(CA) relied upon by the lower court is inapplicable having been decided before the enactment of the Federal High Court (Civil Procedure) Rules 2019 which in its Order 3, Rules 2 and 3 provided for the filing of witness statements on oath for subpoenaed witnesses after the commencement of action.

(2). The lower court failed to follow applicable decisions brought to its attention, such as PDP v. ABDULLAHI IDRIS & ANOR (2023) LPELR-59259(CA); LASUN V. AWOYEMI (2009) 16 NWLR (PART 1168) 513; OMIDIRAN v. ETTE (2010) LPELR-9160; BASHIR & ANOR v. KURDULA & ORS (2019) LPELR-48473; and AMACHREE & ANOR v. INEC & ORS (2019) LPELR – 48677.

(3). The lower court wrongly delved into supremacy between the First Schedule to the Electoral Act, 2022 and the Federal High Court (Civil Procedure) Rules 2019, which was not in issue.

(4). Striking out of the Appellants' witness statements and evidence of the said witnesses was in direct breach of the Appellants' constitutional rights to fair hearing entrenched in Section 36 of the Constitution of the Federal Republic of Nigeria 1999 (as Amended).

(5). The lower court shut out the Appellants from fully presenting all the evidence required to maintain their Petition.

(6). The lower Court had before considering the case of the Appellants on the merit, stripped it of required evidence by peremptorily striking out the witness statements on oath and evidence of the Appellants.

## GROUND 15: ERROR IN LAW:

The lower court erred in law when in relation to Appellants' pleadings and the Statistician's Report (Exhibits **PAH1, PAH2, PAH3,** and **PAH4**) tendered through **PW 21,** held as follows:

> ***"A Statistician's Report that is supposed to contain missing particulars in a petition but which was only filed in the middle of hearing of the same petition, long after the time for exchange of pleadings had closed and even after***

*petitioners had called as many as sixteen witnesses in proof of their case, as happened in this case, cannot serve that purpose of audi alteram partem — let the other party be heard too. In short, the tactics employed by the Petitioners in this case as regards their pleading and the Statistician's Report referenced in it, is to say the least most unfair and definitely negates the current practice regime that emphasises frontloading of processes. Such dishonourable practice can only be likened to the unlawful boxing tactic of hitting one's opponent below the belt or from behind, which in the sport of boxing is penalised promptly with deduction of points. It cannot be different here. The said Statistician's Reports which is Exhibits PAH1, PAH2, PAH3 and PAH4 in this proceeding, must be and is hereby discountenanced."*
(pages 505-506 of the judgment)

## PARTICULARS OF ERROR:

(1). The Appellants duly pleaded and listed the said Statistician's Reports which were wrongly discountenanced, in compliance with the requirements to plead and list documents the Appellants relied upon.

(2). The Appellants further gave notice in their pre-hearing answer sheet that they will be calling a Statistician as a witness and relying on the said Statistician's Report, which was affirmed by the Pre-Hearing Report issued by the lower court on 23rd May 2023.

(3). The Appellants, unlike Respondents, were not mandatorily required to frontload documents to be relied on such as the Statistician's Reports, unlike the Respondents who are expected to frontload all their documents at the time of filing pleadings.

(4). The lower court earlier recognised and acknowledged that pleadings by reference is part of our adjectival laws and supported by judicial decisions copiously listed by the lower court itself.

(5). Tendering the Statistician's Report (**Exhibits PAH1, PAH2, PAH3 and PAH4 )** through **PW 21** (Mr. Samuel Oduntan) did not in any manner offend the provisions of the Evidence Act 2011, the Electoral Act 2022, or the Rules of Court.

(6). There was clearly no factual or legal basis to castigate the procedure adopted by the Appellants as "dishonorable practice" and denigrate same as "tactics".

(7). The learned Senior Counsel to the 2nd Respondent notwithstanding his objection to the admissibility of the referenced documents also tendered part of the Statistician's Reports in support of the 2nd Respondent's defence.

(8). All the Respondents had the opportunity to cross-examine the Statistician and they so did.

(9). The Appellants, and the 2nd and 3rd Respondents, in their respective pleadings, had sought to rely on the Statistician's Reports at the trial.

(10). At the prehearing and during the proceedings, the lower court had directed, that in order to obviate any suggestion of denial of fair hearing, Appellants should serve on the Respondents 48 hours before the hearing of the evidence of **PW21,** the Statistician's Reports, namely **Exhibits PAH1, PAH2, PAH3 and PAH4**, and they were so served.

(11). There was clearly nothing "unfair" or negating "audi alteram partem" rule, the Respondents having due notice of the said Statistician's Report and having cross-examined the maker thereof and interrogated the documents, and had also at the pre-hearing session indicated they might call their own expert witnesses.

(12). Exhibits **PAH1, PAH2, PAH3 and PAH4** were wrongly "discountenanced".

(13). The discountenancing of the said exhibits was in breach of the Appellants' Constitutional rights to fair hearing entrenched in Section 36 of the Constitution of the Federal Republic of Nigeria 1999 (as Amended).

## GROUND 16: ERROR IN LAW:

The lower court, in alluding to the failure of the Appellants to file witness statements on oath along with the Petition, erred in law when it expunged from the records of the Court, **Exhibits PAR1$^A$, PAR1$^B$, PAR1$^C$, PAR1$^D$, PAR1$^E$, PAR1$^F$, and PBD, PBD1$^A$, PBD1$^B$, PBD1$^C$, PBD1$^D$, PD1$^A$,**

21

**PBD2**[A], **PBD3, PBD4, PBE1, PBE2, PBE3, PBE4, PBE5, PBE6, PBF1, PBF2, PBF3, and PBF4**, and the oral evidence elicited from **PW12, PW13, PW14, PW15, PW16, PW17, PW18, PW21, PW22, PW23, PW24, PW25, PW26 and PW27** under cross-examination.

## PARTICULARS OF ERROR:

(1).  **PW12, PW13, PW14, PW15, PW16, PW17, PW18, PW23, PW24, and PW25** were at all material times, subpoenaed witnesses who were staff and officials of 1st Respondent who had to be compelled to appear in court to give evidence in the Petition against the 1st Respondent.

(2).  The testimonies of **PW21, PW26** and **PW27** were appropriately brought pursuant to subpoenas issued by the lower court, and their expert reports produced pursuant to order of inspection of electoral documents and materials made by the lower court in the proceedings.

(3).  The witness statements on oath of the affected witnesses, including **PW22**, documents tendered by them and the oral testimony extracted under cross-examination, were wrongfully expunged.

(4).  The discountenancing by the lower court of these material exhibits tendered by these witnesses as well as striking out their witness statements on oath, which denied the Appellants of the necessary documentary evidence in support of their case.

## GROUND 17: ERROR IN LAW:

The lower court erred in law in striking out the paragraphs of the Petition, when it held as follows:

> ***"Paragraphs 92, 95, 98, 121, 126, 129, 133, 143, 144 and 146 are vague, imprecise and lack particulars and so fall short of the requirements of paragraphs 4(1)(b) of the First Schedule of the Electoral Act, 2022. They are therefore all ordered struck out."*** *(page 521-522 of the judgment)*

**PARTICULARS OF ERROR:**

(1).  Paragraph 4(1) of the First Schedule to the Electoral Act, 2022 made unambiguous provisions for contents of election petition in sub-paragraph (1)(a)(b)(c) and (d).

(2).  The lower court wrongly relied upon Paragraph 4(1)(b) of the First Schedule to the Electoral Act, 2022 in striking out the said paragraphs of the Petition.

(3).  The First Schedule to the Electoral Act, 2022 allowed the Respondents to apply for further and better particulars if they felt that the said paragraphs were ***vague, imprecise and lack particulars.***

(4).  The said paragraphs of the Petition were not vague, imprecise nor lacking in necessary particulars.

**GROUND 18: ERROR IN LAW:**

The lower court erred in law when, in resolving the 2nd Respondent's application of 13th May 2023, it struck out paragraphs 1(vii)(a)(b), (c) and (viii) of Part One as well as paragraphs 2, 3(i),(ii),(iii), 8, 11(i), 24 and 25 of Part Two of the Appellants' Reply to the 2nd Respondent's Reply as being new facts or at best mere denials.

**PARTICULARS OF ERROR:**

(1).  The Appellants' Reply to the 2nd Respondent's Reply was in direct response to the new issues raised by the 2nd Respondent.

(2).  There was nothing repetitive in the Appellant's Reply to the 2nd Respondent's Reply.

(3).  The First Schedule to the Electoral Act 2022 did not provide for any paragraph of a Petition to be struck out for being repetitive.

(4).  The Appellants made no new claims and sought no new reliefs in their said Reply to the 1st Respondent as to warrant the punitive striking out of the said paragraphs.

23

(5). The Appellants' said Reply filed on 20th April 2023 was not in violation of Paragraph 16 (1) (a) and (b) of the First Schedule to the Electoral Act 2022.

## GROUND 19: ERROR IN LAW:

The lower court erred in law, when in resolving the 1st Respondent's application filed on 9th May 2023 against the Reply of the Appellants to the 1st Respondents Reply, it held as follows:

*"Guided by all these and paragraph 16(1) (a) of the First Schedule of the Electoral Act 2022, it does not by any means appear to me that the new facts of (a) conviction/fine, forgery and dual citizenship of 2nd Respondent introduced by Petitioners into their reply, (b) the additional averments of how results could not have been uploaded to INEC's IRev after the 25th day of February, 2023, and (c) whether it was done at all and the relevant officials of INEC could not have been involved in it, not to even talk of the repetitions in the reply of averments already made by Petitioners in their Petition, can pass as reply filed pursuant to paragraph 16(1) (a) of the First Schedule of the Electoral Act 2022......"* (page 555-556 of the judgment)

## PARTICULARS OF ERROR:

(1). The Appellants merely responded to the new facts raised by the 1st Respondent in its Reply to the Petition.

(2). The facts in the Appellants' Reply did not tend to amend or add to the contents of the Petition.

(3). There was no repetition of the averments in the Petition in the Reply filed by the Appellants.

(4). The lower Court misconstrued and misapplied the provisions of Paragraph 16(1)(a) of the First Schedule to the Electoral Act 2022.

## GROUND 20: ERROR IN LAW:

The lower court erred in law when in resolving the 1st Respondent's application filed on 9th May 2023 against the Reply of the Appellants to the 1st Respondent's Reply, held that:

*"Still on this issue, I must also not fail to point out that the Petitioners were only being clever by half when they claimed in paragraph 2.1 (b) of their Reply that they were simply giving, as they put it, "further details" of the non-qualification of 2nd Respondent by averring to the conviction, fine, certificate forgery and dual citizenship of 2nd Respondent that they raised in their Replies. They had never given any details of 2nd Respondent's non-qualification and so cannot talk about "further details" let alone hide under such "further details" to smuggle in the new facts they averred in paragraph 1.2 (i), (ii), (iv), (v) and 2.1 (b) of their Reply." (page 557 of the judgment)*

## PARTICULARS OF ERROR:

(1).  The grounds of qualification and disqualification to contest an election are circumscribed by the provisions of the Constitution and such grounds are exhaustive.

(2).  The Appellants did not introduce any new ground of the Petition in the listed paragraphs.

(3).  The "further details" can be accommodated within the provisions of the 1999 Constitution and the Appellants are not in any manner disabled or precluded from furnishing such "further details".

(4).  The lower court being a court of trial had a bounden duty to consider and determine on the merits of the issues in the Appellants' Reply.

## GROUND 21: ERROR IN LAW:

The lower court erred in law when it held as follows:

*"Paragraphs 2.1 (b), (c) and (d) of the Reply where Petitioners averred to no-uploading of polling station results by 1st Respondent's presiding officers at the election, I also agree with 1st Respondent, are new issues or at best mere further denials by Petitioners to 1st Respondent's denials of the averments in the petition. Such is not permitted in a Reply. See again Bakare & Anor v Ibrahim (Supra); Akeredolu v Akinremi (Supra); Egesimba v Onuzuruike (Supra); Spasco v Alraine (Supra); Ishola v S.G.B.N (Supra); Obot v C.B.N (Supra) earlier cited." (page 558 of the judgment)*

25

**PARTICULARS OF ERROR:**

(1). The fact of alleged neglect in not uploading of polling unit results by presiding officers of 1st Respondent are not "new issues" or mere "further denials".

(2). Those issues and facts are in specific reaction or response to 1st Respondent's averment to the effect that presiding officers electronically transmitted images to result viewing portal after tabulation of scores.

(3). Paragraphs 2.1(b), (c) and (d) of Appellants' Reply to 1st Respondent's Reply were wrongly struck out.

**GROUND 22: ERROR IN LAW:**

The lower court erred in law in striking out the Appellants' Reply in response to the 1st Respondent's Reply, when it held as follows:

*"In summary, 1st Respondent's application of 9th May 2023 succeeds in its entirety. Accordingly, paragraphs 1.2 (i), (ii), (iii), (iv), (v) and 2.1 (b), (c) and (d) of Petitioners Reply filed on 20th April 2023 in response to the reply of 1st Respondent, together with the two witness statements on oath and the list of documents which accompanied that Reply, are all hereby struck out." (See page 558 of the judgment)*

**PARTICULARS OF ERROR:**

(1). The Appellants' Reply to the 1st Respondent's Reply to the Petition was in direct response to the fresh issues raised by the 1st Respondent.

(2). Failure by the Appellants to respond to these new issues of facts would have been wrongly construed as an admission of those facts by the Appellants.

(3). There was nothing repetitive in the Appellants' Reply to the 1st Respondent's Reply.

(4). The Appellants made no new claims and sought no new reliefs in their said Reply to the 1st Respondent as to warrant the punitive striking out of the said paragraphs.

(5). The Appellants' Reply filed on 20th April, 2023 was not in violation of Paragraph 16 (1) (a) and (b) of the First Schedule to the Electoral Act, 2022.

(6). The Appellants' Further Witness Statements on oath of PDPC **(PW19)** and DM **(PW22),** and list of additional documents were wrongly struck out by the lower Court.

(7). The Appellants' Reply to the 1st Respondent's Reply filed on 20th April, 2023, was not in violation of paragraph 16 (1) (a) and (b) to the First Schedule to the Electoral Act, 2022 in that the Appellants' Reply did not raise any new issue.

## GROUND 23: ERROR IN LAW:

The lower court erred in law in striking out the Appellants' Reply in response to the 2nd Respondent's Reply, when it held as follows:

*"Consequently (1). paragraphs 1(vii)(a)(b), (c) and (viii) of part one as well as paragraphs 2, 3(i), (ii), (iii) of part Two of the Reply of Petitioners to 2nd Respondent, wherein Petitioners averred to the new facts of purported criminal conviction of/forfeiture proceedings against 2nd Respondent and avers to his purported dual citizenship as grounds of his non-qualification, are all hereby struck out. (2). Paragraphs 8, 11(i), 24, 25 of the Petition, we hold on the State of the authorities earlier considered, are also new facts or at best mere denials and so liable to be struck out, too, as they do not qualify as replies."* (page 561 of the judgment)

## PARTICULARS OF ERROR:

(1). Paragraphs 1(vii) (a), (b) (c) and (viii) of Part One and paragraphs 2, 3(i), (ii), (iii) of Part Two of the Appellants' Reply to 2nd Respondent's Reply were wrongly struck out.

(2). Paragraphs 8, 11(i), 24, 25 of the said Reply were also wrongly struck out.

(3). The paragraphs referenced above are not new facts, neither are they mere denials.

27

(4). The lower court being a court of trial had a bounden duty to consider and determine on the merits of the issues in the Appellants' Reply.

## GROUND 24: ERROR IN LAW:

The lower court erred in law in striking out the Appellants' Reply in response to the 3rd Respondent's Reply, when it held as follows:

*"In summary, 3rd Respondent's application succeeds in its entirety; consequently, barring paragraph 35, the entire part B of the Reply of Petitioners to the Reply of 3rd Respondent is incompetent and is hereby struck out."* (page 564 of the judgment)

## PARTICULARS OF ERROR:

(1). Paragraphs 1(vii) (a), (b) (c) and (viii) of Part One and paragraphs 2, 3(i), (ii), (iii) of Part Two of the Appellants Reply to 3rd Respondent's Reply were wrongly struck out.

(2). The contents of Part B of the Reply of the Appellants to the Reply of 3rd Respondent is competent and ought not to be struck out.

(3). The contents of Part B of the Reply of the Appellants to the Reply of 3rd Respondent are in response to new issues raised in the 3rd Respondent's Reply.

(4). The lower court being a court of trial had a bounden duty to consider and determine on the merits of the issues in the Appellants' Reply.

## GROUND 25: ERROR IN LAW:

The lower court erred in law in discountenancing the testimonies of the Appellants' collation agents when it held thus:

*"It follows that evidence of the collation agents in this instant case who are PW1, PW2, PW3, PW5 and PW7 relating to suppression of votes, multiple thumb printing of ballot papers, entering of wrong scores/results, disruption of voting, are inadmissible hearsay and are hereby discountenanced."* (page 657 of the judgment)

## PARTICULARS OF ERROR:

(1). Part of the thrust of the Petition is on the mandatory provisions relating to electronic transmission of the results from the polling units to the collation system and the evidence of collation agents is admissible with regards to suppression of votes and entry of wrong results, and does not amount to hearsay evidence.

(2). Election is a process that does not terminate at the polling units but includes collation of results and the evidence of the collation agents is relevant in this regard.

(3). It is at the point of collation that suppression of votes and entry of wrong results take place and the evidence of collation agents is admissible in that regard.

(4). **PW1, PW2, PW3, PW5 and PW7** all testified and gave evidence relating to the failure of the 1st Respondent to electronically transmit the result of election.

(5). With the technological innovations brought about by the Electoral Act 2022 with emphasis on collation of results, the testimonies of these collation agents are admissible but were wrongly discountenanced by the lower court.

## GROUND 26: ERROR IN LAW:

The lower court erred in law when it held in relation to the evidence of the Presiding Officers, namely **PW12, PW13, PW14, PW15, PW16, PW17, PW18, PW23, PW24** and **PW25** as follows:

*"The testimonies of these witnesses were so clear and cogent that the election went well. The only difficulty was in uploading the results to the IReV portal. These highlighted witnesses were all called by the Petitioners. The witnesses here were emphatic that the voting and the election in their respective units went well, the votes were collated and results announced at the polling units. Party agents signed the result Form EC8As." (page 661 of the judgment)*

## PARTICULARS OF ERROR:

(1). The thrust of the evidence on oath of the listed witnesses is to the effect that the critical part of the collation process, that is, electronic transmission from the polling units to the collation system, before the declaration, was not complied with.

(2). The evidence of the above listed witnesses on oath revealed that while the results of the Senate and House of Representatives were successfully transmitted, that of the Presidential election which held simultaneously was not successfully transmitted.

(3). The said witnesses did not testify that all went well with the electoral process.

(4). The lower court did not consider the unchallenged evidence of these material witnesses to the effect that the transmission of results of the presidential election which they were meant to upload was blocked from working on the day of election, while the transmission of the result of the National Assembly election held simultaneously, worked without any "technical glitch."

## GROUND 27: ERROR IN LAW:

The lower court erred in law when, without evaluating the following exhibits, namely **Exhibits: PG, PG1 to PG3, PH, PH1 to PH36, PJ, PJ1 to PJ17, PK1 to PK9, PL1 to PL23, PM1 to PM2, PN1 to PN29, PP1 to PP21, PQ1 to PQ20, PR1 to PR3, PS1 to PS10, PT1 to PT33, PAW1 to PAW25, PAX1 to PAX13, PAY1 to PAY18, PAZ1 to PAZ17, PBA1 to PBA27, PBB1 to PBB21**, it wrongly held as follows:

*"Surprisingly, the documents were dumped on the Court without any witness linking them up documents with the specific complaints of non-compliance. It is settled law that despite the tendering of exhibits in proof of a Petition/case, the onus of proving the case pleaded and for which the documents were tendered in evidence, lies on the Petitioner. In the instant Petition, a lot of documents were tendered from the Bar. When a party decides to rely on documents to prove his case, there must be a link between the documents and the specific areas of the Petition. The party must relate each document to the specific areas of his case for which the documents were tendered. Failure*

*to link the documents is fatal and catastrophic as it is in this case." (page 746 – 747 of the judgment)*

## PARTICULARS OF ERROR:

(1). The lower Court failed to give effect to section 137 of the Electoral Act 2022 which obviated the requirement of calling of oral evidence where the non-compliance is manifest on the face of the certified true copy of the electoral document.

(2). By virtue of paragraph 46(4) of the First Schedule to the Electoral Act, 2022, all the documents tendered from the Bar by the Appellants were to be deemed properly read and demonstrated upon application of the Appellants.

(3). All the Appellants' witnesses in their testimonies in chief and under cross-examination, all identified the documents tendered in the course of their evidence.

(4). The Appellants linked the documents to the specific areas of their case in the Statistician's Reports, which were **Exhibits PAH1, PAH2, PAH3** and **PAH4.**

(5). All the electoral documents in question held to have been dumped were duly Certified True Copies of electoral documents obtained by the Appellants from the 1st Respondent itself.

(6). The acts of non-compliance complained of were manifest on the face of the documents relied on by the Appellants.

## GROUND 28: ERROR IN LAW:

The lower Court erred in law when it ruled that **Exhibits PAH1, PAH2, PAH3, PAH4 and PAR1 (A, B, C, D, E and F)** prepared and tendered by **PW21 and PW26 (who are experts),** are inadmissible in evidence based on the following finding:

*"Coming to the issue of whether the documents in issue were either made during the pendency of this proceeding and/or in anticipation of it and by interested persons, I must say that, aside our earlier ruling, which I hereby confirm, ..., it is also clear to me that 3rd Respondent's argument that Exhibits PAH1, PAH2, PAH3 and PAH4 and PAR1 (A, B, C, D, E and F) were not only*

*made by PW21 and 26 during the pendency of this Petition but PW21 in particular even admitted that he was well remunerated by the Petitioners for his work. Their Reports are therefore inadmissible in evidence by virtue of Section 83(3) of the Evidence Act, 2011. A document made in anticipation of litigation or during its pendency by persons interested is rendered inadmissible by Section 83(3) of the Evidence Act, 2011. ...(page 603-604 of the judgment)*

## PARTICULARS OF ERROR:

(1). The Appellants' **PW21** and **PW26** who prepared the said documents and through whom they were tendered are expert witnesses.

(2). These exhibits were products of court-ordered inspection of electoral documents in the possession of the 1st Respondent.

(3). The said provision of Section 83(3) of the Evidence Act, 2011, does not apply to the evidence of experts.

(4). Expert witnesses like other professionals, are entitled to their remuneration for professional services.

(5). The said Exhibits are admissible pursuant to the said provisions of Section 83(3) of the Evidence Act, 2011.

## GROUND 29: ERROR IN LAW:

The lower Court erred in law when it discountenanced the testimonies of the Appellants' Witnesses (including the evidence of the **PW22** (Senator Dino Melaye) as being hearsay evidence, based on the following finding:

*"The Petitioners, it must be underlined, pleaded in paragraph 4 of the Petition that the Petitioners had 'agents in all the polling units, ward collation centres, Local Government Collation Centres and State Collation Centres in all the States of the Federation and the Federal Capital Territory as well as the National Collation Centre'. Of this crowd of agents, the Petitioners did not call any of their agents at the polling unit. The said agents at the polling units were the ones who were meant to sign and collect duplicate results in Form EC8A. The few*

*agents called were State and National Collation Agents. Largely, their testimonies were hearsay."* (page 653 of the judgment)

## PARTICULARS OF ERROR:

(1).  The **PW22,** (the Appellants' National Collation Agent) and the State Collation Agents were called to testify to the effect that the results of the election from the polling units were not electronically transmitted directly from the polling units to the 1st Respondent's Collation System that was to be used at the States' and National Collation Centres.

(2).  The PW22 in addition to his testimony on the failure of the electronic transmission of the result of the election to the 1st Respondent's Collation System, went further to testify that before the announcement of the result of the said election, the National Chairman of the 1st Respondent who was the Returning Officer for the Presidential Election in issue, failed to carry out the mandatory verification and confirmation of the results of the said election.

(3).  The evidence of the said Collation Officers including the PW22 was in respect of what transpired at the States' and National Collation Centres.

(4).  The testimonies of the said witnesses do not amount to hearsay evidence.

## GROUND 30: ERROR IN LAW:

The lower Court erred in law when it concluded that the evidence of the **PW19, PW20 and PW22** did not advance the case of the Petitioners when it held as follows:

*"The testimonies of these star witnesses under cross – examination aggregated the same account given by other witnesses that the election went well. Accreditation with the BVAS was alright. The agents of the Petitioners were on ground at the polling units and that the results were entered on Form EC8As and duplicate copies given to the Agents. The facts elicited from the cross – examination of these witnesses have belied much of the strands of their written statements on oath. This, of course, is a challenge to the credibility of the evidence of the PW19 and PW22. .... In the instant case, the evidence elicited*

*from the PW19 and PW22 on cross – examination has fortified, in my opinion, the case of the Respondents that there was nothing wrong with the results of the 2023 Presidential Election and that there was substantial compliance with the Electoral Act, 2022. That also played out in the cross – examination of PW20 Olatunji O. Shelle."* (pages 699 – 700 of the judgment)

## PARTICULARS OF ERROR:

(1). The evidence of the PW19, PW20 & PW22 clearly shows that there was substantial non-compliance with the Electoral Act, 2022 on the part of the 1st Respondent, in the conduct of the said Presidential Election.

(2). The testimonies of the PW19, PW20 & PW22 are not therefore to the effect that the said election went well and neither did the evidence elicited from the said witnesses under cross – examination fortify the case of the Respondents as wrongly held by the lower Court.

(3). The 1st Respondent notwithstanding that the results would be entered on the Form EC8As and duplicates, still made provision for electronic transmission to ensure proper verification and collation of polling units.

(4). The testimonies of PW 19, 20 and 22 are credible and admissible.

## GROUND 31: ERROR IN LAW:

The lower court erred in law when on the preliminary objection of the 1st Respondent that one Hon. Adejoh, Chairman of Olamaboro LGA, Kogi State and Governor Yahaya Bello of Kogi State ought to have been joined as Respondents in the Petition, wrongly held as follows:

*"Such persons must be joined to the petition if the Court is not to be exposed to the risk of infringing their fundamental right to fair hearing guaranteed by the Constitution. It is also of no moment that no relief was claimed against such persons in the petition."* (page 516 of the judgment)

**PARTICULARS OF ERROR:**

(1).  The said persons are not necessary or statutory Respondents as envisaged by **Section 133 of the Electoral Act 2022**.

(2).  No relief whatsoever was claimed against the said persons for which their non-joinder will affect their rights to fair hearing.

(3).  Paragraph 129 of the Petition was wrongly struck out by the lower Court.

**GROUND 32: ERROR IN LAW:**

The lower court erred in law when it failed to consider, determine and pronounce on the admission against interest by the 1st Respondent that the Appellants won the election in 21 States, notwithstanding having stated as follows:

*"In addressing this issue, Chief Chris Uche, SAN, for the petitioners argued that 1st Respondent admitted that the Petitioners won the election in 21 States, which States he listed as Adamawa, Akwa Ibom, Bauchi, Bayelsa, Borno, Delta, Ekiti, Gombe, Jigawa, Kaduna, Katsina, Kebbi, Kogi, Kwara, Nasarawa, Niger, Osun, Sokoto, Taraba, Yobe, and Zamfara. He contended that that is an admission against interest."* (pages 732 -733 of the judgment).

**PARTICULARS OF ERROR:**

(1).  The 1st Respondent as the electoral body who conducted the election made an open admission in paragraph 18 of its Reply to the Petition that the Appellants won in 21 States, which were specifically mentioned.

(2).  Throughout the trial, the 1st Respondent neither refuted, countermanded this critical averment nor denied it.

(3).  The lower Court was urged by the Appellants to hold that this constituted an admission which required no further proof, as well as an admission against interest.

(4).  In its lengthy judgment, the lower court was silent on this critical issue, notwithstanding the bounden duty on every Court to

pronounce on all issues raised before it, as has severally been held by the Supreme Court.

(5).   The lower court ought to have found in favour of the Appellants and granted the relief seeking to upturn the return of the 2nd Respondent.

## GROUND 33: ERROR IN LAW:

The lower Court erred in law on the respective burdens of proof on the parties, when it held as follows:

*"From the foregoing therefore, it is very clear and certain that the Petitioners have failed to prove that the 2023 Presidential Election and the return of the 2nd Respondent was invalidated by reason of corrupt practices or non – compliance with the Electoral Act, 2022."* (page 707 of the judgment)

## PARTICULARS OF ERROR:

(1).   Based on the state of the pleadings, evidence led and the law, the Appellants discharged the burden on proof on them as Petitioners.

(2).   The Appellants adduced credible evidence in proof of their averments of substantial non-compliance with the provisions of the Electoral Act, 2022 in the 1st Respondent's conduct of the election.

(3).   Upon the shifting of the burden of proof, the Respondents failed to adduce evidence in rebuttal.

(4).   The presumption of regularity that ordinarily inures to the 1st Respondent was successfully rebutted.

(5).   The said acts of non-compliance proved by the Appellants were substantial enough to invalidate the said election.

## GROUND 34: ERROR IN LAW:

The lower Court erred in law in its use of disparaging words against the Appellants in its judgment evincing bias against the Appellants as Petitioners and thereby violating their right to fair hearing, and occasioning grave miscarriage of justice.

## PARTICULARS OF ERROR:

(1). While discountenancing the arguments and contentions of the Appellants, the lower Court in the Court's judgment used expressions such as 'ludicrous' (page 721 of the judgment), 'clever by half' (page 557 of the judgment), 'dishonourable practice' (page 507 of the judgment), 'smuggle' (page 557), 'fallacious' (page 721 of the judgment); 'foul play' (page 560 of the judgment),'cross the line of misconception' (page 644 of the judgment); 'collect evidence from the market' (page 765 of the judgment); 'those who are not used to reading preambles' (page 726 of the judgment);"hollowness in the argument of the Petitioners" (page 727 of the judgment); etc.

(2). The choice of words and expressions by the lower court shows the lower Court's contempt and disdain for the Appellants.

(3). The lower court failed to use civil, modest, moderate, and temperate language that is befitting of the exalted position of the Court in line with the Revised Code for Judicial Officers of the Federal Republic of Nigeria, promulgated by the National Judicial Council.

(4). The words against the Appellants in the judgment evince a disposition in the mind of the lower Court that was far from objective, which approach demonstrated bias and infringement to the Appellants' right to fair hearing.

(5). The Appellants were entitled to approach the Court for the ventilation of their grievances, which court was set up as the Presidential Election Petition Court, solely to receive petitions arising from the presidential election.

(6). The right to present an election petition in respect of a presidential election is a right granted by the Constitution of the Federal Republic of Nigeria, 1999 (as amended) and the Electoral Act 2022, which right the Appellants merely exercised.

(7). The use of the said words and expressions substantially affected the lower court's consideration of the Appellants' case, peremptorily striking out their witness statements on oath, their exhibits, their pleadings, and discountenancing the evidence of their witnesses, and thus occasioned a grave miscarriage of justice.

## GROUND 35:

The judgment of the Court of Appeal is against the weight of evidence.

## 4.   RELIEFS SOUGHT FROM THE SUPREME COURT:

(1).   To allow the appeal.

(2).   To set aside the judgment of the Court of Appeal, sitting as the Presidential Election Petition Court, holding at Abuja delivered on the 6th day of September 2023 in PETITION NO: CA/PEPC/05/2023.

(3).   To grant the reliefs and/or alternative reliefs of the Appellants contained in paragraph 150 of the Petition as follows:

(a).   That it may be determined that the 2nd Respondent was not duly elected by a majority of lawful votes cast in the Election and therefore the declaration and return of the 2nd Respondent by the 1st Respondent as the winner of the Presidential Election conducted on the 25th day of February, 2023 is unlawful, wrongful, unconstitutional, undue, null and void and of no effect whatsoever.

(b).   That it may be determined that the return of the 2nd Respondent by the 1st Respondent was wrongful, unlawful, undue, null and void having not satisfied the requirements of the Electoral Act 2022 and the Constitution of the Federal Republic of Nigeria, 1999 (as amended) which mandatorily requires the 2nd Respondent to score not less than one quarter (25%) of the lawful votes cast at the Election in each of at least two-thirds of all the States in the Federation AND the Federal Capital Territory, Abuja.

(c).   That it may be determined that the 2nd Respondent was at the time of the election not qualified to contest the said election.

(d).   That it may be determined that the 1st Appellant having scored the majority of lawful votes cast at the Presidential election of Saturday, 25th February, 2023, be returned as the winner of the said election and be sworn in as the duly elected President of the Federal Republic of Nigeria.

**IN THE ALTERNATIVE:**

(e). An Order directing the 1st Respondent to conduct a second election (run-off) between the 1st Petitioner and the 2nd Respondent.

**IN THE FURTHER ALTERNATIVE:**

(f). That the election to the office of the President of the Federal Republic of Nigeria held on 25th February, 2023 be nullified and a fresh election (re-run) ordered.

(g). Any such further and consequential relief(s) as the Supreme Court as the Apex Court and Policy Court may deem fit to make in the interest of justice.

## NAMES OF THE PARTIES PARTICULARLY AFFECTED BY THIS APPEAL:

### APPELLANTS:

### NAMES:

      **1. ABUBAKAR ATIKU**
      **2. PEOPLES DEMOCRATIC PARTY (PDP)**

**ADDRESS:**    Their Lead Counsel, c/o Chief Chris Uche (SAN) & Co, Angels Court, 34 Kumasi Crescent, Wuse 2, Abuja

### RESPONDENTS:

### 1st RESPONDENT:
**NAME:**      **INDEPENDENT NATIONAL ELECTORAL COMMISSION (INEC)**
**ADDRESS:**    Plot 436 Zambezi Crescent, Maitama, Abuja.

### 2nd RESPONDENT:

**NAME:**      **TINUBU BOLA AHMED**
**ADDRESS:**    c/o His Counsel, Chief Wole Olanipekun, CFR, SAN, Wole Olanipekun & Co.
God's Grace House,
No. 6 Oshakati Close,

Off Constantine Street,
Wuse Zone 4, Abuja.
OR
c/o APC National Secretariat,
40 Blantyre Street,
Off Adetokunbo Ademola Crescent,
Wuse 11,
Abuja.

## 3rd RESPONDENT:

**NAME:** **ALL PROGRESSIVES CONGRESS (APC)**
**ADDRESS:** APC National Secretariat, 40 Blantyre Street, Off Adetokunbo Ademola, Crescent, Wuse 11, Abuja.

**DATED AT ABUJA THIS 18th DAY OF SEPTEMBER 2023**

**Chief Chris Uche, SAN** ✓
**Eyitayo Jegede, SAN,**
**Prof. Mike Ozekhome, SAN,**
**Nella Andem-Rabana, SAN**
**Ken Mozia, SAN,**
**Dr. Garba Tetengi, SAN,**
**Mahmud Magaji, SAN,**
**Joe Abrahams, SAN,**
**Edward Ashiekaa, SAN,**
**Prof. Maxwell Gidado, SAN,**
**Emeka Etiaba, SAN,**
**Gordy Uche, SAN,**
**A.K. Ajibade, SAN,**
**Abdul Ibrahim, SAN,**
**Paul Harris Ogbole, SAN,**
**Olusegun Jolaawo, SAN,**
**Nurueni Jimoh, SAN,**
**Kemasuode Wodu, SAN,**
**Prof. Yusuf Dankofa,**
**M.S. Atolagbe Esq.,**
**O. A. Dada Esq.,**
**Abdulazeez O. Ibrahim Esq.,**
**Olabode Makinde Esq.,**
**Ahmed T. Uwais Esq.,**
**Abdulaziz E. Ibrahim Esq.,**
**Adedamola Fanokun Esq.,**

**Kanayo Okafor, Esq.,**
**Silas Joseph Onu, Esq.,**
**Udzahu Medugu, Esq.,**
**Joy Etiaba Esq.,**
**Ime Edem-Nse Esq.,**
**Chiamaka Anagu Esq.,**
**Victor Iorshenge Esq.,**
**O. S. Maliki Esq.,**
**B.F Folorunsho Esq.,**
**Jacob O. Otokpa Esq.,**
**Genevieve A. Okereke Esq.,**
**Chukwudi Maduka Esq.,**
**Okechukwu Osuoha Esq.,**
**James Olotu Esq.,**
**Jude A. Daniel Esq.,**
**Olakunle Lawal Esq.,**
**Priscilla Ejeh Esq.,**
**Affis Matanmi Esq.,**
**Teinye T.S Akobo Esq.,**
**Abdulkaber Badmos Esq.,**
**Chinasa Amechi Esq.,**
**Ngozi Princess Dimkpa Esq.,**
**Francis Nsiegbunam Esq.,**
**Sule Asemokhai Esq.,**
**Abduljalil Musa Esq.,**
**Douglas Ondor Esq.,**
**A.D Mohammed Esq.,**
**Falilat Olajumoke Olawoyin Esq.,**
**Nheoma Ndu Asobinuanwu Esq.,**
**Osilama Mike Ozekhome Esq.,**
**Hazeem Gbolarumi Esq.,**
**Chris Mike Uche Esq.,**
**John Odeh Esq.,**
**Oshomha Mike Ozekhome, Esq.,**
**David Nwokike Esq.,**
**Caleb Yakubu Esq.,**
**Agbodike Maureen Chikodo, Esq.,**
**Chiamaka Ilozue Esq.,**
**Joshua H. Barka Esq.,**
APPELLANTS' COUNSEL,
c/o Chief Chris Uche (SAN) & Co,
Angels Court,
34 Kumasi Crescent,
Wuse 2,
Abuja.
uchesan@nigerianbar.ng
Tel:+234-807-853-777 & +234-8037874792.

## ADDRESSES FOR SERVICE:
### Appellants:
Their Counsel,
c/o Chief Chris Uche (SAN) & Co,
Angels Court,
34 Kumasi Crescent,
Wuse 2,
Abuja.

### 1st Respondent:
INEC Headquarters,
Plot 436 Zambezi Crescent,
Maitama,
Abuja.

### 2nd Respondent:
C/o His Counsel,
Chief Wole Olanipekun, CFR, SAN, FCIArb,
Wole Olanipekun & Co.
God's Grace House,
No. 6 Oshakati Close,
Off Constantine Street,
Wuse Zone 4, Abuja.
OR

c/o APC National Secretariat,
40 Blantyre Street,
Off Adetokunbo Ademola Crescent,
Wuse 11,
Abuja.

### 3rd Respondent:
APC National Secretariat,
40 Blantyre Street,
Off Adetokunbo Ademola Crescent,
Wuse 11,
Abuja.