## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

*In re* Application of ATIKU ABUBAKAR

For an Order Directing Discovery from
CHICAGO STATE UNIVERSITY
Pursuant to 28 U.S.C § 1782

No. 23 CV 05099

Honorable Nancy L. Maldonado

## MEMORANDUM OPINION AND ORDER

Atiku Abubakar initiated this action pursuant to 28 U.S.C. § 1782, a federal statute that allows a federal district court to order a person or entity within the district to produce documents or testimony for use in a foreign legal proceeding. Mr. Abubakar is a former Vice President of Nigeria and was a candidate for president in Nigeria's February 2023 presidential election. Mr. Abubakar seeks an order under 28 U.S.C. § 1782 directing Chicago State University ("CSU"), which is located in this district, to produce certain documents and testimony related to Bola Ahmed Tinubu, the declared winner of the February 2023 Nigerian presidential election. Mr. Abubakar has challenged the validity of President Tinubu's election in Nigerian courts on a number of grounds, including a claim that President Tinubu submitted a forged diploma to the Nigerian Independent National Electoral Commission ("INEC") stating that he graduated from CSU. Mr. Abubakar contends the fraudulent submission would have disqualified President Tinubu from participating in the election, and he therefore seeks records and testimony from CSU related to President Tinubu's diploma, and his graduation from CSU, to support Mr. Abubakar's challenge to the election results.

Mr. Abubakar filed his application under 28 U.S.C. § 1782 on August 2, 2023, (Dkt. 1), and the Court referred the matter to Magistrate Judge Gilbert for resolution. (Dkt. 7.) President Tinubu filed a motion to intervene in the action, which Mr. Abubakar did not oppose, and which this Court granted. (Dk. 13.) After briefing and argument, Judge Gilbert issued a ruling on September 19, 2023, granting Mr. Abubakar's application. In light of pending Nigerian court deadlines, Judge Gilbert ordered CSU to respond to Mr. Abubakar's document requests within two days, and to produce a witness to sit for a deposition within four days. (Dkt. 40.)

28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72 provide that a party objecting to a magistrate judge's ruling may seek review from a district judge within 14 days of service of the magistrate judge's ruling. On September 21, 2023, the day CSU was ordered to respond to the subpoena, President Tinubu filed an emergency motion before the undersigned District Judge requesting that the Court review Judge Gilbert's decision and stay the order requiring CSU to respond to the subpoenas until such time that the Court could complete its review. The Court held an emergency hearing that same day and granted the request for a stay, agreeing that delaying the production of documents and testimony was necessary to allow President Tinubu the opportunity to seek review of Judge Gilbert's decision, as was his right under Rule 72. Given that the Nigerian court deadlines were fast approaching, the Court set an expedited briefing schedule on President Tinubu's objections. The parties have now completed that briefing, and the Court has reviewed their submissions.

For the reasons stated in this Memorandum Opinion and Order, the Court overrules President Tinubu's objections and adopts Judge Gilbert's recommended decision in full.[1] The

---

[1] Judge Gilbert's order was not captioned as a report and recommendation, but as a final order. But as will be discussed further below, the Court finds that the ruling was dispositive, and therefore construes it as a report and recommendation.

2

Court therefore grants Mr. Abubakar's application under 28 U.S.C. § 1782. CSU is directed to respond to Mr. Abubakar's subpoena in the time and manner provided for below. In reaching this conclusion, the Court emphasizes that it is expressing no view on the merits of Mr. Abubakar's claims regarding President Tinubu's graduation from CSU, or on the validity of the Nigerian election. Nor is the Court taking any position on what any of the documents or testimony from CSU may or may not ultimately show. These are all matters for the Nigerian courts to resolve under Nigerian law, and it is not appropriate for this U.S. Court to opine on such issues or attempt to predict how foreign courts might ultimately rule if and when they are presented with any evidence from CSU. The issue presented to this Court is much more limited: whether, under the applicable U.S. law and the federal rules of discovery, Mr. Abubakar is entitled to the production of documents and testimony that he seeks from CSU. The Court finds that he is. This decision is in line with the underlying purpose of 28 U.S.C. § 1782 to promote judicial assistance to foreign courts and comports with the liberal discovery standards under the Federal Rules of Civil Procedure, which encourage disclosure of potentially relevant information.

## I. Background

### A. Statutory Background and Purpose of 28 U.S.C. § 1782

The Court begins with some brief background and context to the statutory provision that Mr. Abubakar seeks to invoke. Section 1782 authorizes a district court to order a person or entity located within the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Congress enacted the current version of the statute in 1964, though its origins date back to an 1855 law which authorized U.S. federal courts to assist foreign courts by compelling witnesses in the U.S. to provide testimony for a foreign

3

proceeding. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, (2004) (citations omitted).

In 1964, pursuant to a recommendation by the Commission on International Rules of Judicial Procedure, Congress revised 28 U.S.C. § 1782 into its current form. *Id.* at 248. The 1964 revisions expanded the scope of relief available under § 1782 as part of an effort to improve judicial assistance between the United States and foreign countries. *Id.* In its revised form, § 1782 provides for assistance in obtaining documentary and other tangible evidence in addition to witness testimony. *Id.* Congress also removed language that limited the statute to judicial proceedings *"pending* in any court in a foreign country," with broader language to allow for discovery "for use in a proceeding in a foreign or international tribunal." *Id.* at 248–49. Together, the changes reflected a general intent to expand the circumstances under which a district court could provide assistance to foreign tribunals to include proceedings before conventional courts, as well as other administrative or quasi-judicial proceedings. *See id.* at 249.

Some courts and commentators have expressed the view that another purpose underlying Congress's expansion of § 1782 was to "to encourage foreign countries to enlarge discovery rights in their own legal systems." *See generally Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (collecting sources). The Federal Rules of Civil Procedure provide for liberal discovery of information to facilitate and encourage the full disclosure of any relevant information before a trial. *See, e.g., Cima v. WellPoint Health Networks, Inc.*, No. 05-CV-4127-JPG, 2008 WL 746916, at *3 (S.D. Ill. Mar. 18, 2008) (collecting cases). The belief is that, because discovery in the U.S. federal court system is considered broader than that in most (if not all) foreign courts, expanding federal district courts' ability to provide assistance to foreign litigants involved in foreign proceedings (under the liberal discovery rules) might lead to a reciprocal benefit to U.S.

litigants in those countries by expanding the scope of discovery to be more in line with the U.S. system. *See Heraeus Kulzer*, 633 F.3d at 594.

In short, the animating purpose behind § 1782 is comity and cooperation with foreign proceedings. This does not mean that a court must automatically grant an application under § 1782—the requirements of the statute must be met. But it does mean that this Court should be mindful of supporting the underlying purpose of the statute to promote judicial assistance to foreign proceedings. The Court also adheres to the liberal discovery standards that apply in federal courts, which favor transparency and disclosure of relevant (or potentially relevant) information.

### B. Factual Background to Application

Against this backdrop, the Court turns to the facts of the instant application under § 1782. Unless otherwise noted, the Court takes the background from the parties' submissions to Judge Gilbert, as summarized in his Memorandum Opinion and Order. (Dkt. 40.) The Court has also considered any additional facts presented in the parties' briefing on President Tinubu's objections.

Atiku Abubakar was Vice President of Nigeria from 1999 to 2007 and ran for president in Nigeria's presidential election in February 2023. After the election, the INEC declared that Bola Ahmed Tinubu had won, and he is now serving as the current president of Nigeria. In March 2023, Mr. Abubakar, along with the People's Democratic Party, filed a petition challenging the results of the election with the Court of Appeal in the Presidential Election Petition Court in Nigeria ("Court of Appeal"), which is the initial court of review for election disputes. Mr. Abubakar's petition was one of several challenges filed by different parties challenging the election results. Mr. Abubakar contends that his petition with the Nigerian Court of Appeal includes, among other disputes, a claim that President Tinubu submitted a forged diploma to the INEC indicating that he had received an undergraduate bachelor's degree from CSU. Mr. Abubakar asserts that, under

5

Nigerian law, the submission of a fraudulent document to the INEC would have disqualified now President Tinubu from participating in the election, thus invalidating his victory.

According to President Tinubu, Mr. Abubakar's original petition to the Nigerian Election Court stretched some 200 pages and largely focused on issues with vote tabulation, but did not raise any claims that President Tinubu was disqualified due to the submission of fraudulent documents to the INEC. (Dkt. 44 at 2; Dkt. 5-2.)[2] Instead, President Tinubu asserts that Mr. Abubakar only raised the disqualification issue, and the claim of a fraudulent CSU diploma, in his reply submissions to the Court of Appeal after President Tinubu had filed a response. (Dkt. 44 at 3; Dkt 22-4.) Mr. Abubakar responds that he did generally challenge President Tinubu's qualifications in his opening petition, but he admits that he did not raise any specific claims regarding President Tinubu's education or graduation from CSU until his reply. (Dkt. 45 at 6–7.)

On August 2, 2023, while Mr. Abubakar's petition was still pending before the Nigerian Court of Appeal, he filed the instant application in this Court pursuant to 28 U.S.C. § 1782. (Dkt. 1.) Mr. Abubakar's application seeks an order to obtain discovery from CSU for use in the ongoing Nigerian proceedings. Specifically, Mr. Abubakar seeks discovery related to the authenticity of the diploma President Tinubu submitted to the INEC, as well as other records and testimony from CSU that Mr. Abubakar says are related to that same challenge.

On September 6, 2023, while Mr. Abubakar's application was pending before this Court, the Nigerian Court of Appeal issued a ruling rejecting Mr. Abubakar's petition and finding in favor of President Tinubu. The ruling rejects Mr. Abubakar's attempts to raise the disqualification issue, stating that Mr. Abubakar's factual claims about allegedly forged documents, among other

---

[2] In citations to the docket, page numbers are taken from the CM/ECF headers.

allegations of "non-qualification," were improperly raised for the first time in his reply brief, and needed to have been contained in the original petition. (Dkt. 44 at 4; Dkt. 34 at 557–562.)

On September 18, 2023, Mr. Abubakar filed a notice of appeal of the Court of Appeal decision with the Supreme Court of Nigeria. (Dkt. 44-1.) The notice of appeal covers a number of challenges to the Court of Appeal decision, including the specific finding that it was improper for Mr. Abubakar to attempt to raise new facts and arguments for the first time in his reply related to President Tinubu's qualification for office.

### C. Procedural History and Scope of the Requested Discovery

#### 1. Proceedings Before Magistrate Judge Gilbert

As noted above, Mr. Abubakar originally filed his application with this Court on August 2, 2023, seeking an order compelling the production of documents and testimony from CSU. (Dkt. 1.) The next day, President Tinubu filed a motion to intervene in this action, which Mr. Abubakar did not oppose, and which this Court granted. (Dkts. 10, 11.) The District Court referred the matter to Magistrate Judge Gilbert for resolution. (Dkt 6.)

The parties proceeded to brief the merits of the application before Judge Gilbert. Over the course of the proceedings, Mr. Abubakar narrowed the scope of the discovery he was requesting from CSU by revising his subpoenas. The revised subpoenas include four document requests, seeking true and correct copies of: (1) an example of a CSU diploma for a Bachelor of Science degree issued in 1979; (2) President Tinubu's diploma issued in 1979; (3) any examples of a CSU diploma that "contains the same font, seal, signatures, and wording (other than the name of the recipient and the specific degree awarded)" as the copy of the diploma that was purportedly issued to President Tinubu on or about June 22, 1979; and (4) certain other CSU documents that were apparently certified and produced by Jamar Orr (an associate general counsel at CSU) in other

Nigerian proceedings, as well as communications relating to these documents (the "Orr Documents"). (Dkt. 40 at 4; Dkt. 38.)

In addition to the document requests, Mr. Abubakar also seeks to depose CSU pursuant to Federal Rule of Civil Procedure Rule 30(b)(6).[3] Mr. Abubakar seeks to explore five topics through deposition: (1) the authenticity of the documents produced by CSU in response to the application and how and where CSU located the documents; (2) CSU's position on the authenticity of other CSU documents related to President Tinubu purportedly produced by CSU in another Nigerian proceeding ("*Enahoro-Ebah v. Tinubu*"); (3) the contents of an affidavit from CSU's registrar Caleb Westberg (the "Westberg Affidavit"); (4) CSU's position on the authenticity of a letter from Westberg (the "Westberg Letter") on CSU letterhead regarding President Tinubu, including who requested the letter, who prepared the letter, and to whom it was sent; and (5) CSU's position on the authenticity of the Orr Documents and other facts regarding why the documents were certified, if Mr. Orr was authorized to do so, who requested the documents, and to whom they were sent. (Dkt. 40 at 5; Dkt. 39.)

Judge Gilbert held a hearing on September 12, 2023, and heard arguments from the parties on the application. On September 19, 2023, after reviewing the parties' briefing and Mr. Abubakar's discovery requests, Judge Gilbert issued a ruling granting Mr. Abubakar's application. (Dkt. 40 at 30–31.)

In a comprehensive opinion, Judge Gilbert found that the threshold statutory requirements of 28 U.S.C. § 1782 were met, and the application of the discretionary factors used to analyze 28 U.S.C. § 1782 supported, on balance, granting Mr. Abubakar's application for discovery. In short,

---

[3] Rule 30(b)(6) generally allows a party to submit a deposition notice or subpoena to a public or private organization with a list of topics to be covered, and in response, the organization must designate a witness with knowledge of those topics to testify. Fed. R. Civ. P. 30(b)(6).

Judge Gilbert found that the discovery requests were reasonably tailored to obtain information for possible use in support of Mr. Abubakar's appeal to the Nigerian Supreme Court, and that Mr. Abubakar's interest in obtaining the discovery outweighed President Tinubu's privacy rights in the materials, because he had put his diploma at issue by submitting it to the INEC. (*Id.* at 26.) Judge Gilbert ordered that the application be granted, though he did limit the scope of one of Mr. Abubakar's discovery requests. Specially, Judge Gilbert narrowed Mr. Abubakar's fourth document request above, excluding the request for any and all communications concerning the Orr Documents because it would call for time-consuming and burdensome electronic discovery that was particularly infeasible in light of the looming court deadlines. (*Id.* at 28–29.) Judge Gilbert found that the other document requests, and the five topics requested by Mr. Abubakar for the Rule 30(b)(6) deposition, were appropriately tailored to obtain relevant information (*Id.*) In light of pending deadlines before the Nigerian Supreme Court, Judge Gilbert ordered CSU to respond to the request for documents in two days, by September 21, 2023, and to produce a witness within two days after the production of documents. (*Id.* at 30–31.)

## 2. President Tinubu's Emergency Request for a Stay and Review of Judge Gilbert's Ruling by the District Court.

On September 21, 2023, the day that CSU was due to respond to Mr. Abubakar's document subpoena, President Tinubu filed an emergency motion before the undersigned, asking that the Court stay enforcement of Judge Gilbert's ruling pending review. (Dkt. 41.) In the motion, President Tinubu maintained that Judge Gilbert lacked the authority to grant the application outright and order immediate compliance. President Tinubu noted that magistrate judges are generally not empowered to issue final "dispositive rulings," or, rulings that completely resolve a case. (*Id.* at 2–3.) Instead, when a magistrate judge issues a ruling on a dispositive issue, it is not final, but is instead considered a "report and recommendation" to the District Court, to be reviewed

and either adopted, modified, or overturned. *See* Fed. R. Civ. P. 72. Because Judge Gilbert's ruling effectively granted complete and final relief to Mr. Abubakar, President Tinubu maintained it was not a final order, but merely a report and recommendation that could not go into effect until he had an opportunity to seek review from the district court.

The Court held an emergency hearing the same day on September 21. (Dkt. 43.) The Court heard argument from counsel for Mr. Abubakar, and counsel for President Tinubu on the nature of Judge Gilbert's ruling, and what procedure the Court should follow in light of the time-sensitive nature of the request for discovery and pending Nigerian Supreme Court deadlines. Counsel for CSU indicated that it was ready to comply with Judge Gilbert's order, and it took no position on whether the order should stand or what standard of review should apply.

The Court ultimately concluded that a stay of enforcement was appropriate because, regardless of whether Judge Gilbert had the authority to issue his order outright, or whether it should be considered merely a recommendation, President Tinubu had the right under the federal rules to file an objection with the district judge. Indeed, Federal Rule of Civil Procedure 72 generally allows a party up to 14 days to file an objection to a magistrate judge's ruling, regardless of whether it is dispositive. Fed. R. Civ. P. 72(a), (b)(2). To force the production of documents before President Tinubu was given a chance to object, as is his right under Rule 72, would have mooted his objection, because at that point the documents and testimony would have already been produced. The Court therefore determined that it was appropriate to stay Judge Gilbert's ruling to allow the parties time to brief objections to Judge Gilbert's order and the appropriate standard the Court should apply in reviewing Judge Gilbert's decision.

Counsel for Mr. Abubakar indicated his understanding that Mr. Abubakar has a final deadline of October 5, 2023, to attempt to present the requested evidence to the Supreme Court of

Nigeria, and therefore the Court ordered an expedited briefing schedule, far shorter than the 14 days generally allotted under the rules. The Court required President Tinubu to file any objections to Judge Gilbert's order by September 25, 2023, at 9:00 a.m., Mr. Abubakar to file his response to those objections on September 27, and President Tinubu to file any reply on September 28. The parties timely submitted their filings. (Dkts. 44, 45, 50.) The Court has reviewed the filings, Judge Gilbert's ruling, and the record, and the issue is ripe for decision.

## II.  Discussion

### A.  The Standard of Review of the Magistrate Judge's Decision

The Court begins its analysis with the threshold question of the appropriate standard of review the Court should apply to Judge Gilbert's decision. 28 U.S.C. § 636 describes the various powers and authority afforded to federal magistrate judges and, together with Federal Rule of Civil Procedure 72, establishes the types of motions or issues that a district court judge can refer to a magistrate judge for resolution. Importantly, § 636 and Rule 72 create a distinction between "non-dispositive" pretrial matters that may be referred to a magistrate judge for a decision and matters that are "dispositive of a claim or defense," which may only be referred for a "recommended decision" to the district judge, unless the parties consent to the magistrate judge's authority. *See* Fed. R. Civ. P. 72(a), (b); *see also* 28 U.S.C. § 636(b)(1).

This distinction is important, because when a magistrate judge rules on a non-dispositive pretrial matter, such as a pre-trial discovery dispute, a district judge may only reject that ruling if it is "clearly erroneous or is contrary to law," an extremely deferential standard. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006) ("Clear error is an extremely deferential standard of review, and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed.'"). But when a magistrate judge issues a report and recommendation to the district judge on a dispositive matter, a district judge reviews *de novo* any portions of the recommendation to which a party has objected. 28 U.S.C. 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). In short, whether the magistrate judge's decision is considered dispositive or not generally determines what level of review the district judge applies.

President Tinubu argues that Judge Gilbert's decision was dispositive, and the Court's review must therefore be *de novo* because Judge Gilbert's grant of Mr. Abubakar's application under 28 U.S.C. § 1782 effectively ends the controversy between the parties. Mr. Abubakar argues, on the other hand, that Judge Gilbert's ruling was a non-dispositive ruling on a discovery dispute and is therefore only subject to the more deferential clear error standard.

The Seventh Circuit Court of Appeals has not addressed whether orders under 28 U.S.C. § 1782 are dispositive. President Tinubu points the Court to a recent decision from the Ninth Circuit Court of Appeals directly addressing the issue. *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc*., 34 F.4th 801, 807 (9th Cir. 2022). In that case, the Ninth Circuit concluded that a magistrate judge's order denying an application under 28 U.S.C. § 1782 was dispositive, and therefore subject to *de novo* review by the district court, because the order "denied the only relief sought by [the applicant] in this federal case: court-ordered discovery." *Id.* The Ninth Circuit acknowledged that pre-trial discovery disputes regarding document requests or witness testimony are routinely resolved by magistrate judges. *Id.* at 808. But the court reasoned that applications under § 1782 are distinguishable from those other types of pre-trial discovery disputes. Typically, when a magistrate judge rules on a discovery dispute, the discovery is part of an ongoing civil case in the same federal district court (or in the case of Rule 45 subpoena enforcement, perhaps an ongoing case in another district court). But in a § 1782 application, the case is a "freestanding subpoena request" that is

filed on its own without reference to any other federal lawsuit. *Id.* at 808 (citations omitted). A ruling on the § 1782 application either grants or denies the "ultimate relief" sought, and fully disposes of the federal case. *Id.* The Ninth Circuit therefore reasoned that the order is "final" in that it fully resolves the case presented to the federal court and is necessarily a "dispositive matter" for which a magistrate judge may only issue a recommendation to the district court. *Id.*[4]

Mr. Abubakar contends that the Ninth Circuit decision is an "outlier," and runs counter to the view of the majority of other circuit courts and the actual practices by district courts across the country, including this District Court. (Dkt. 44 at 8–9.) (collecting cases). For example, the Eleventh Circuit has expressly stated its view, though in an unpublished opinion, that "§ 1782 motions are non-dispositive matters" and rulings on such motions are only subject to clear error review. *Rothe v. Aballi*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sept. 27, 2021). Mr. Abubakar argues that the determining factor is whether the magistrate judge's decision resolves a party's claims, and that Judge Gilbert's order is not dispositive because it merely relates to discovery *in support of* his claims, which have not been resolved but are still before the Supreme Court of Nigeria. (Dkt. 44 at 10.)

Mr. Abubakar is correct that pre-trial discovery matters are routinely and ably handled by magistrate judges, and further that many courts, including within this District, view § 1782

---

[4] The Third Circuit Court of Appeals, in an unpublished opinion, appears to have reached the same conclusion as the Ninth Circuit, in a case that involved the mirror request to the one here: a party involved in a U.S. case that issued "letters of request" for discovery from foreign-based companies. *See Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 396 (3d Cir. 2021). The court distinguished the letters of request from a § 1782 case, noting that in the latter type of case "the only role of the federal judiciary in the matter is to resolve the discovery question. Before a federal court receives the § 1782 assistance request . . . there is no case in federal court, no docket, no case number. And once the court rules, that is the end of the involvement of the federal court system." *Id.* The Third Circuit thus found it was proper for the district court to utilize clear error review for the magistrate judge's decision on the letters of request, because the underlying federal case continued in district court. *Id.* This point also distinguishes § 1782 cases from actions to enforce subpoenas for discovery under Rule 45 that are filed in a different district court than the underlying case for which discovery is sought. Once the court presented with the Rule 45 subpoena issue resolves the dispute, that may end the case *in that district court*, but there will still be a case pending in the federal judiciary, unlike in § 1782 cases where resolution of the application terminates the federal court system's involvement.

applications as non-dispositive discovery matters that can be resolved by magistrate judges. But in the absence of binding Seventh Circuit or U.S. Supreme Court authority, this Court looks to non-binding authority and ultimately finds the reasoning of the Ninth Circuit persuasive. While Mr. Abubakar's § 1782 application ostensibly involves a discovery dispute, it is distinct from other discovery disputes handled by magistrate judges because there is no underlying civil litigation pending in the federal judiciary, either in this district or any other district court. Thus, the resolution of the application resolves the parties' dispute in the federal court system. In other words, Judge Gilbert's ruling granting the application completely resolves Mr. Abubakar's case in federal court. It is thus properly considered dispositive, and therefore the Court must construe it not as a final ruling, but as a "report and recommendation" subject to *de novo* review for any objected-to portions.

Of course, as will be seen below, even under *de novo* review, the Court ultimately reaches the same conclusion as Judge Gilbert and finds that the application should be granted. And further, as noted above, the Court only reviews *de novo* those portions of Judge Gilbert's opinion to which a party has objected. Fed. R. Civ. P. 72(b)(3). For the portions to which no party has objected, the opinion is reviewed only for clear error.

**B. The Merits of Mr. Abubakar's Application under 28 U.S.C. § 1782**

The Court turns next to the merits of Mr. Abubakar's application. Determining whether to grant an application under § 1782 requires a two-part analysis. *Intel*, 542 U.S. at 264. First, an applicant must satisfy three threshold statutory requirements set forth in 28 U.S.C. § 1782(a). If the district court determines an applicant has satisfied the threshold requirements and it has the

authority to grant the application, the district court then must consider four discretionary factors to determine whether and to what extent the § 1782 application is appropriate. *Intel*, 542 U.S. at 264.

The Court will address these issues, and any objections to Judge Gilbert's findings, below. The Court will take care to note when the Court is engaging in clear error review, as opposed to *de novo* review. Ultimately, the Court concludes, as Judge Gilbert did, that the statutory requirements are met and the discretionary factors support granting the application.

       1.   <u>The Threshold Statutory Requirements of 28 U.S.C. § 1782 Are Satisfied.</u>

28 U.S.C. § 1782(a) requires applicants to meet three threshold requirements: (1) the person or entity from whom the discovery is sought must reside or be found in the district of the court to which the application is made; (2) the discovery must be "for use" in a proceeding before a foreign tribunal; and (3) the application must be submitted by a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782.

There is no dispute that CSU, the respondent from whom Mr. Abubakar seeks discovery, is located within this district, satisfying the first requirement. Judge Gilbert found that both the second and third requirements were also met. President Tinubu raises an objection to Judge Gilbert's finding only with respect to the second issue: whether the requested discovery is "for use" in a foreign proceeding. The Court therefore reviews *de novo* whether the second requirement is met, and reviews Judge Gilbert's ruling as to the third requirement, whether Mr. Abubakar is an "interested person," under the clearly erroneous standard.

       *a.   The Discovery Sought Is "For Use" in a Foreign Proceeding.*

To obtain discovery under 28 U.S.C. § 1782(a), an applicant must establish that the discovery sought is "for use in" a proceeding before a foreign tribunal. While the Seventh Circuit has not taken an affirmative view of what qualifies as "for use," courts in this district have held

that the "for use in" requirement "mirrors the requirements in Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action." *See Lumenis Ltd. v. Alma Lasers Ltd.*, No. 07 C 3622, 2013 WL 1707571, at *2 (N.D. Ill. Apr. 19, 2013) (citing *Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006)). Furthermore, the foreign proceeding does not need to be "pending" or even "imminent," but merely needs to be "within reasonable contemplation." *In re Sabag*, No. 119MC00084JPHTAB, 2021 WL 1634781, at *2 (S.D. Ind. Apr. 26, 2021) (citing *Intel*, 542 U.S. at 249.) And, critically, "courts have found the term 'for use in' does not require the material request to be discoverable or admissible in the foreign jurisdiction." *Lumenis Ltd.*, 2013 WL 1707571 at *2 (collecting cases); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (citing cases from the First, Third, and Ninth Circuit for the proposition that a district court should not consider the discoverability or admissibility of evidence in the foreign proceeding).

Under this legal framework, Judge Gilbert concluded that the "for use in" requirement under the statute was met, finding that Mr. Abubakar had sufficiently demonstrated that the discovery sought from CSU was "for use in" his election challenge, specifically his pending appeal before the Supreme Court of Nigeria. In particular, Judge Gilbert noted that discovery sought by Mr. Abubakar was relevant to his challenge to the authenticity of President Tinubu's diploma and the question of his graduation from CSU, and further that Mr. Abubakar had submitted undisputed evidence that there was a procedural mechanism for the Supreme Court of Nigeria to consider new evidence in "exceptional circumstances." (Dkt. 40 at 11–12.) Judge Gilbert found that, consistent with the authority above, the fact that the discovery *could* be used in the foreign proceeding was

16

sufficient to satisfy the "for use" requirement, regardless of whether the Supreme Court of Nigeria would ultimately consider or admit such evidence. (*Id.* at 12.)

President Tinubu first objects to Judge Gilbert's finding by pointing to the decision by the Nigerian Court of Appeal rejecting Mr. Abubakar's election challenge. (Dkt. 44 at 7–8.) President Tinubu asserts that the Nigerian Court of Appeal held that evidence related to President Tinubu's education and graduation from CSU is absolutely barred and "cannot be considered under any circumstances," because Mr. Abubakar failed to raise the evidence in his original petition and only mentioned it for the first time in his reply submission to the Court of Appeal. (*Id.*) In other words, President Tinubu maintains that the discovery cannot be "for use" because it is subject to an absolute procedural bar, and the Supreme Court of Nigeria would need to lift that procedural bar *before* Mr. Abubakar could even attempt to amend his original petition to include any new allegations or supporting evidence from CSU. (*Id.* at 8.)

The Court overrules this objection. As Mr. Abubakar points out in his response, President Tinubu has ignored the case authority discussed above, and cited by Judge Gilbert in his opinion, that the Court is not to consider whether the evidence sought is ultimately admissible in the foreign proceeding when determining whether it is "for use in" said proceeding. (Dkt. 45 at 11); *see, e.g., Brandi-Dohrn*, 673 F.3d at 82. Rather, at least for the purposes of the "for use" inquiry, it is sufficient that there is a legal mechanism or a process by which the requested discovery *could be used* in the foreign proceeding. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) ("a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding. . . .").

Here, while President Tinubu frames the Court of Appeal's decision as creating a "procedural bar," he has not provided any testimony or evidence indicating that the Court of

Appeal decision somehow prevents the Supreme Court of Nigeria, in its discretion, from considering new arguments and evidence under "exceptional circumstances." Indeed, President Tinubu expressly conceded that was the case before Judge Gilbert, and he still does not dispute that this procedural mechanism for presenting evidence to the Supreme Court of Nigeria under "exceptional circumstances" exists. President Tinubu's suggestion then that the evidence "cannot be considered under any circumstances" is thus unsupported by the record. This Court cannot and will not speculate as to Nigerian law and procedure. What the Court has before it is a sworn affidavit, which President Tinubu did not contest before Judge Gilbert, that the Supreme Court of Nigeria can consider new evidence under "exceptional circumstances." In other words, it is undisputed that there is a mechanism by which Mr. Abubakar *could potentially* inject the requested discovery into the foreign proceedings. Whether the Supreme Court of Nigeria will ultimately allow Mr. Abubakar to use the documents, or whether it will consider them in its decision, are not questions for the Court to resolve. *See, e.g., Fleischmann*, 466 F. Supp. 2d at 1029 ("[T]he history of the statute, the case law, and the prudent tendency of American courts to avoid construing foreign law support the plain meaning that 'for use in' does not require that the discovery be admissible in the foreign proceeding."). The potential means for Mr. Abubakar to use the discovery in the foreign proceedings is sufficient, and this Court goes too far if it requires Mr. Abubakar to show that his use must be successful.

President Tinubu separately objects to Judge Gilbert's conclusion that *all* of the discovery sought by Mr. Abubakar is relevant and therefore "for use" in the Nigerian proceedings. President Tinubu maintains that because Mr. Abubakar's challenge in Nigeria is based on the allegedly fraudulent diploma submitted to the INEC, the only discovery that is relevant for use in that challenge is documents and testimony related to the diploma that was submitted. President Tinubu

therefore argues that the discovery that goes beyond the diploma, such as the request for testimony about other CSU documents and records produced in other proceedings brought by other challengers, are not properly seen as "for use in" *Mr. Abubakar's* foreign proceedings. (Dkt. 44 at 11; Dkt. 50 3–4.).

The Court overrules this objection as well. It is true, as President Tinubu points out and as Judge Gilbert himself recognized, that the "primary issue" that seems to motivate Mr. Abubakar's application for discovery and arguments in this case is the question of whether the CSU diploma that was submitted to the INEC, which bears the name of "Bola Ahmed Tinubu" dated June 22, 1979, is genuine or was forged. (*See* Dkt. 40 at 9.) But, as Judge Gilbert also recognized, Mr. Abubakar does not just question the authenticity of one diploma, but also questions whether President Tinubu actually attended and received any undergraduate degree from CSU at all, notwithstanding the fact that CSU has stated that President Tinubu did attend and receive a degree on June 22, 1979. (*Id.*). In other words, while Mr. Abubakar's challenge to the election results is tied to the submission of an allegedly fraudulent diploma, he has raised other broader claims in the same proceedings before the Court of Appeal about President Tinubu's identity and graduation, as well as the authenticity and origin of other CSU documents that were obtained and produced as part of other Nigerian proceedings. (Dkt. 45 at 6–7; *see* Dkt. 22-5.)[5] In short, Mr. Abubakar's

---

[5] The other CSU documents the Court references here were purportedly obtained from CSU by another petitioner, Enahoro-Ebah, who raised a separate challenge to the election, and include items such as another copy of a diploma purportedly issued to President Tinubu, but with a different date, as well as certain academic records. (*See* Dkt. 22-2.) According to Mr. Abubakar, Enahoro-Ebah presented evidence about some of these other documents he obtained from CSU at a hearing before the Court of Appeal, and such evidence relates to the general claim that there are inconsistencies in President Tinubu's and CSU's statements about his education. (*See* Dkt. 45 at 6–7; Dkt. 24 ¶ 4.) Although the Court of Appeal ultimately rejected consideration of the new evidence, President Tinubu does not dispute the claim that this evidence was mentioned during the Court of Appeal proceedings, but instead merely dismisses it as illegally obtained and the subject of conspiracy theories and political intrigue created by opposition figures. (Dkt. 44 at 3; Dkt 50 at 4.) But the Court need not delve into the substance of the documents or the merits of any parties' underlying claims or allegations. What matters is the other CSU documents have been interjected into Mr. Abubakar's challenge and are part of his general claims that President Tinubu did not receive the education that he claims, and therefore discovery from CSU about those other documents is properly considered "for use" in the foreign proceeding.

claims before the Court of Appeal, which he is seeking to revive before the Supreme Court of Nigeria, were not limited solely to the authenticity of a single document, but rather generally raised questions about President Tinubu's (and CSU's) assertions about his attendance and graduation. Therefore, discovery on other documents from CSU related to President Tinubu's attendance and graduation are relevant to his claims, and are properly considered to be "for use in" the foreign proceedings. Again, whether or not the Supreme Court of Nigeria will ultimately consider any of these materials is not a question before this Court. Section 1782 requires "for use in" foreign proceedings, not "for *successful* use in" foreign proceedings. It is enough that they *could* be considered.

The Court therefore finds that the "for use in" statutory requirement under § 1782 is satisfied. The Court reiterates, as mentioned at the outset, that in reaching this finding the Court is not taking a position on the merits of *any* of Mr. Abubakar's underlying claims as to the authenticity of the diploma submitted to the INEC, President Tinubu's education and graduation, or the truth of what is or is not shown in any other CSU documents that have been produced in the Nigerian proceedings. Nor should the Court's opinion be read as taking any position on any of the broader claims as to the validity of the election or what the documents and discovery from CSU might or might not show. The Court simply finds that Mr. Abubakar has cleared the relatively low hurdle of showing that the documents he seeks *could* be relevant to his claims (either proving them *or* disproving them) and *could potentially* be presented to the Supreme Court of Nigeria.

### b. Mr. Abubakar Is an "Interested Person."

In addition to the "for use" requirement, to obtain discovery under 28 U.S.C. § 1782, an application also must be submitted by a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782(a). Individuals that are parties to the foreign proceeding for which they seek to

use documents are "the most common example[s]" of "interested person[s]" who may seek an order under § 1782. *Intel*, 542 U.S. at 256. Judge Gilbert concluded that Mr. Abubakar is an "interested person" because he falls into this "common example" of a person seeking discovery for use in a proceeding in which he is a party, *i.e.*, his election challenge before the Nigerian courts.

President Tinubu did not object to this portion of Judge Gilbert's opinion, and the Court therefore reviews his findings for clear error. The Court concludes that Judge Gilbert's findings were not clearly erroneous; plainly Mr. Abubakar is an "interested person" as he is seeking documents and testimony for potential use in proceedings in which he is a party, specifically his appeal before the Supreme Court of Nigeria. This statutory requirement is therefore met.

> 2. <u>The Discretionary Factors Weigh in Favor of Granting the Application for Discovery.</u>

Based on the above, the Court concludes that Mr. Abubakar has satisfied the threshold statutory requirements under 28 U.S.C. § 1782. The Court therefore turns next to the discretionary factors to determine whether application of § 1782 is warranted. In *Intel*, the U.S. Supreme Court explained that even if the threshold statutory requirements are met, the decision to grant an application for discovery under § 1782 is still within the district court's discretion, and that the Court should consider four factors in determining what discovery, if any, to allow:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
>
> (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the discovery requested is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264–65. The Supreme Court also recognized the "twin aims" of §1782, which are (1) "providing efficient assistance to participants in international litigation"; and (2) "encouraging foreign countries by example to provide similar assistance to our courts." *Id*. at 252 (internal quotation marks and citations omitted).

Before turning to the factors, the Court briefly opines on the parties' respective burdens of proof. Before Judge Gilbert, Mr. Abubakar argued that the Court should employ a "burden-shifting" framework, meaning that once the applicant in a § 1782 proceeding meets the threshold statutory requirements discussed above, the burden should shift to President Tinubu to demonstrate that the discovery should not be granted under the applicable *Intel* factors. Judge Gilbert noted that, while other circuits have rejected such a strict burden-shifting approach, the Seventh Circuit appears to have approved of such a framework shifting the burden to the party opposing discovery. (Dkt. 40 at 16); *see Heraeus Kulzer*, 633 F.3d at 597 ("[o]nce a section 1782 applicant demonstrates a need for extensive discovery for aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the statutory objectives"). Judge Gilbert followed the Seventh Circuit's guidance and employed a burden-shifting framework in analyzing the discretionary factors.

Understanding that other circuits have reviewed the issue in a more fulsome manner, this Court, like Judge Gilbert, finds it appropriate to follow the Seventh Circuit's guidance to employ a burden-shifting approach. This means that the burden is on President Tinubu to demonstrate that the discretionary factors support denial of the application. But as discussed below, even employing the more balanced approach advocated by President Tinubu in his objection, (Dkt. 44 at n.2), the Court finds that the factors as a whole support granting the request for discovery.

*a. The First Intel Factor Weighs in Favor of Granting the Application.*

The first discretionary factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceedings." *Intel*, 542 U.S. at 264. This requirement is based on the idea that, if the respondent to the discovery request is already a party in the foreign proceedings, the applicant should seek discovery from that party *in that foreign proceeding* and need not initiate a separate action in a U.S. District Court. Judge Gilbert concluded that, because CSU is not a party to the Nigerian proceedings, this factor weighs in favor of granting the application. President Tinubu does not object to Judge Gilbert's finding on this factor. The Court finds no clear error with Judge Gilbert's findings here. CSU, the holder of the documents and testimony, is not a party to the foreign proceedings and Mr. Abubakar could not seek the CSU discovery in the Nigerian proceedings. The first factor thus supports granting the application.

*b. The Second Intel Factor Weighs in Favor of Granting the Application.*

The second discretionary factor looks at whether the foreign court or tribunal would be receptive to assistance from a U.S. federal district court. *See Intel*, 542 U.S. at 264. Many courts, including courts within the Seventh Circuit, have held that this factor weighs in favor of granting the application "unless there is some 'authoritative proof' that the foreign court would oppose such assistance." *See In re B&C KB Holding GmbH*, No. 23-MC-6, 2023 WL 5974634, at *6 (W.D. Wis. Sept. 14, 2023) (citations omitted); *In re Medytox, Inc*., No. 118MC00046TWPDLP, 2019 WL 3162174, at *5 (S.D. Ind. July 16, 2019) (citing, *e.g., Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1100–01 (2d Cir. 1995)).[6] Judge Gilbert ultimately concluded that this factor did not weigh against the production of discovery, finding that President Tinubu had not met his burden

---

[6] As Judge Gilbert pointed out in his opinion, other circuits have rejected the requirement for "authoritative proof," including the First, Third, and Eleventh Circuit. (*See* Dkt. 40 at 18 n. 7); *see, e.g., In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 698 n.9 (3d Cir. 2018) ("we decline to speak to whether an 'authoritative proof' standard . . .is the appropriate inquiry under the second *Intel* factor").

to show that the Nigerian Supreme Court would necessarily reject and not consider the additional evidence sought by Mr. Abubakar. Judge Gilbert again noted that there was a procedural mechanism by which Mr. Abubakar could submit additional evidence to the Supreme Court of Nigeria, and that while it might be a difficult burden for him to ultimately convince the court to consider the evidence, the fact that he had the means to present it was sufficient.

President Tinubu objects to Judge Gilbert's finding on similar grounds to his objection to the "for use" statutory requirement above. In particular, President Tinubu maintains that the Court of Appeal's decision, which rejected Mr. Abubakar's attempts to introduce evidence and arguments related to CSU on reply, demonstrates that the Nigerian courts are "unreceptive" to Mr. Abubakar's "late-raised conspiracy theories." (Dkt. 44 at 3, 7.) President Tinubu points to the Seventh Circuit decision in *Heraeus Kulzer*, which warned district courts to be mindful of potential abuses of the § 1782 discovery process, including parties who "seek discovery of documents or other materials that the foreign court would not admit into evidence," for the purpose of harassment. *Heraeus Kulzer*, 633 F.3d at 594 (7th Cir. 2011). President Tinubu argues that, because the Court of Appeal found the evidence "inadmissible," allowing the discovery would be the type of abuse and harassment against which the Seventh Circuit has cautioned. President Tinubu also suggests that speculation as to what the Supreme Court of Nigeria might do is insufficient, because relying on such speculation would mean an applicant could always point to a potential future appeal to support discovery requests that a foreign court has already ruled inadmissible. (Dkt. 44 at 9.)

The Court overrules President Tinubu's objection to Judge Gilbert's findings on the application of the second discretionary factor. In *Heraeus Kulzer*, one of the cases cited by President Tinubu, the Seventh Circuit concluded that the district court abused its discretion in

denying an application for discovery for use in a German proceeding, finding in part that "there is nothing to suggest that the German court would be affronted by [applicant's] recourse to U.S. discovery or would refuse to admit any evidence." 633 F.3d at 597. Although the Seventh Circuit did not specifically describe what evidentiary showing would be sufficient on the issue of receptiveness, it noted that the opposing litigant needed to come forward with "more than angry rhetoric" to show that the discovery sought would disserve the "statutory objectives." *Id.*

Here, while there is evidence of the Court of Appeal's non-receptiveness to the "non-qualification" evidence, there is nothing in the record, other than rhetoric, from which the Court can make a determination as to whether the Supreme Court of Nigeria will ultimately be receptive to any additional evidence Mr. Abubakar seeks to introduce. It is true that Mr. Abubakar himself has admitted that the "exceptional circumstances" standard for the submission of additional evidence is "demanding." (Dkt. 22 at 10.) And it may be, as President Tinubu repeatedly suggests, that Mr. Abubakar will ultimately be unsuccessful in convincing the Supreme Court of Nigeria to consider such new evidence in light of the holding of the Court of Appeal. But again, President Tinubu has not contested that the mechanism exists for Mr. Abubakar to try to make the argument to the Supreme Court of Nigeria that there are exceptional circumstances that justify the introduction of the evidence he is seeking from CSU. There is simply no evidence to suggest that the Supreme Court of Nigeria must necessarily reach the same result as the Court of Appeal. Further, this Court would be improperly intruding into Nigerian law if it made any determination or prediction as to how the Supreme Court might rule on the ultimate question of whether to adopt the Court of Appeal's approach, or whether to allow the evidence under exceptional

circumstances.[7] To do so would require the Court to improperly consider the ultimate admissibility of the evidence sought, which it may not do.

As noted above, it is President Tinubu's burden at this stage to show that the discretionary factors weigh against granting the application. This burden requires that he come forward with some evidence to suggest that allowing discovery would undermine the purposes of the statute, which is to promote judicial assistance to foreign proceedings. This means some evidence suggesting that the Supreme Court of Nigeria would not be receptive to the assistance of the U.S. District Court. But President Tinubu's argument and rhetoric as to Mr. Abubakar's likelihood of success at the Supreme Court of Nigeria, or his vigorous disputes with the merits of Mr. Abubakar's underlying claims about the election, do not equate to evidence of the Supreme Court of Nigeria's receptiveness to assistance in discovery. In the absence of such evidence, President Tinubu has failed to meet his burden as to the second discretionary factor. As noted above, courts within this district have found that a lack of "affirmative proof" that the foreign court would reject the assistance means that this factor weighs in favor of granting the application. While Judge Gilbert stopped short of this finding, holding simply that the factor did not weigh against granting the application, the Court, reviewing the issue *de novo*, agrees with the reasoning of those courts that have required affirmative proof. This requirement squares with the underlying purpose of the

---

[7] President Tinubu cites another Seventh Circuit decision, *Kestrel Coal PTY. LTD. v. Joy Global, Inc*., in which the court found that the district court had abused its discretion in ordering the production of documents under § 1782, because the foreign Australian court had already analyzed the need for the specific documents at issue and held that it had none. 362 F.3d 401, 406 (7th Cir. 2004). The Seventh Circuit noted the Australian court's specific finding that the petitioner did not need the documents to make out his claim in the foreign court, and therefore "no purpose would be served by their production in the United States under § 1782." *Id.* The Court finds that *Kestel* is distinguishable. While the Court recognizes that the Court of Appeal in Nigeria has rejected the submission of evidence related to CSU, again, the Court has no information one way or another as to the views of the Supreme Court of Nigeria. The Court cannot say, as the Seventh Circuit found in *Kestrel*, that there would be "no purpose" served by the production of the CSU documents here, because the Court does not have any information on whether the Supreme Court of Nigeria views the documents as necessary for Mr. Abubakar's claims. The *Kestrel* case is therefore distinguishable and does not compel a different result.

statute, which starts from a presumption of increasing assistance to foreign judicial proceedings. The Court therefore concludes that this factor weighs in favor of granting the application.[8]

### c. The Third Intel Factor Is Neutral and Does Not Weigh Against Granting the Application.

The third discretionary factor looks to whether the § 1782 application is an attempt to circumvent the foreign court's proof-gathering restrictions. *Intel*, 452 U.S. at 264–65. When analyzing this factor, courts examine whether granting the application would undermine a proof-gathering policy of the foreign tribunal. *See, e.g., In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) ("to decline a § 1782(a) request based on foreign non-discoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States"). Judge Gilbert concluded this factor was neutral and did not weigh against the granting of the application because there was no evidence in the record to suggest that granting the application would undermine or circumvent any Nigerian policy, and both sides agreed the factor was neutral. (Dkt. 40 at 22.) President Tinubu does not object to Judge Gilbert's finding, and the Court finds no clear error in it. President Tinubu has not presented any evidence or argument that the application undermines or circumvents any Nigerian policy or proof-gathering restriction (generally or with respect to educational records), but instead acknowledges that the Supreme Court of Nigeria generally may consider new evidence in exceptional circumstances. The Court thus agrees this factor is neutral.

---

[8] Even if the Court did not take a burden-shifting approach, but merely took a more balanced view of the factors as advocated by President Tinubu, the Court would reach the same result on this factor. The lack of affirmative proof as to the Supreme Court of Nigeria's lack of receptiveness compels the Court to find this factor weighs in favor of granting the application.

      *d.  The Fourth Intel Factor Weighs in Favor Granting the Application.*

Finally, under the fourth discretionary factor, the Court looks to the scope of the requested discovery to determine whether it is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 241; *see also Fleischmann*, 466 F. Supp. 2d at 1029 ("This factor directs the court to look at the requests in the aggregate to decide whether they are unduly intrusive or burdensome."). "Section 1782 does not establish a standard for discovery." *In re Medytox, Inc*., No. 118MC00046TWPDLP, 2019 WL 3162174, at *5 (S.D. Ind. July 16, 2019) (citing *Texas Keystone, Inc. v. Prime Nat. Res., Inc*., 694 F.3d 548, 554 (5th Cir. 2012)). Instead, "it is a screening mechanism 'designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court." *Id.* (citing *Heraeus Kulzer*, 633 F.3d at 597; 28 U.S.C. § 1782(a)). Once the Court has determined that the requirements of § 1782 are met, and abuse of the right to conduct discovery is unlikely, the "ordinary tools of discovery management, including Rule 26, come into play." *Id.*

 In short, the Court should determine whether the requested discovery is unduly intrusive or burdensome under the rules of discovery applicable in federal court, including Rule 26, which sets the following general guidelines for discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) allows the district court to limit the scope of discovery if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

In reviewing this factor, Judge Gilbert analyzed the discovery requests, and the objections to the requests by CSU and President Tinubu, and ultimately concluded that Mr. Abubakar's interests in the CSU records outweighed President Tinubu's privacy interests in his educational records. Judge Gilbert also found that President Tinubu did not have standing to object to the supposed burden the discovery would place on CSU. On the issue of burden, Judge Gilbert largely rejected CSU's claims of burden in meeting the discovery requests, though it did limit one of Mr. Abubakar's requests for all communications related to the Orr Documents (request number four in the subpoena), finding that particular request would lead to time-consuming electronic discovery that would be overly burdensome. Judge Gilbert thus found that this fourth discretionary factor did not weigh against production, and concluded the application should be granted.

President Tinubu objects to Judge Gilbert's findings under this factor on several grounds. President Tinubu claims that Judge Gilbert wrongly found that Mr. Abubakar's interest in the records outweighed the President's privacy interests, citing to the Federal Education Records and Privacy Act of 1974 ("FERPA"), a federal statute aimed at protecting students from a school's unauthorized release of student records. (Dkt. 44 at 11–12.) President Tinubu states that the laws protecting educational records should not be "so lightly pushed aside for what appears to be foreign political opposition research." (Dkt. 50 at 7–8.) President Tinubu also claims, similar to his arguments above, that the request for records beyond those related to his diploma are overly intrusive and reflect that Mr. Abubakar is merely engaged in a fishing expedition against a political opponent and is attempting to use the U.S. court system to obtain documents to "satisfy curiosity" and "resolve public controversy." (*Id.* at 12–13; Dkt. 50 at 6–7.)

The Court notes that CSU raised no objection to Judge Gilbert's decision, and as Judge Gilbert noted, CSU is the only party, as the respondent to the subpoena, that can claim any

logistical burden in responding to the discovery requests. Indeed, at the Court's emergency hearing on President Tinubu's motion, CSU indicated that it had the document production ready to go, and had a witness lined up for a deposition. Therefore, the only objections before the Court are President Tinubu's claiming that his privacy interests in the sought-after discovery trump Mr. Abubakar's interest in discovering them.

Reviewing those objections and taking a *de novo* look at the scope of the requested discovery and the applicable law regarding educational records, the Court ultimately reaches the same conclusion as Judge Gilbert. The Court finds that any intrusion on President Tinubu's privacy interests in his educational records is outweighed by Mr. Abubakar's interest in the sought-after discovery.

Under FERPA, a party has a right of privacy in his educational records *See McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 CV 6500, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015) (citations omitted). While FERPA affords educational records confidentiality, it does not create an independent privilege for educational records. *Id.* (citing *Catron v. Miles*, 160 P.3d 1204, 1211 (Ariz. Ct. App. 2007)). Practically, this means that educational records can be disclosed to comply with a lawfully issued subpoena or court order. *See* 20 U.S.C.A. § 1232g. But, "a party seeking disclosure of education records protected by FERPA bears 'a significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.'" *Banks v. Baraboo Sch. Dist.*, No. 20-CV-36-WMC, 2020 WL 5751415, at *4 (W.D. Wis. Sept. 25, 2020) (citing *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 291 (E.D.N.Y. 2008) (citation omitted)).

The Court finds that Mr. Abubakar has met this "heavier burden" to justify the disclosure of President Tinubu's educational records. As Mr. Abubakar notes in his response, and as Judge

Gilbert found as part of his ruling, President Tinubu put the authenticity of his CSU diploma at issue by submitting a copy of it to the INEC. (Dkt. 45 at 14–14; Dkt 40 at 26.) *See generally Israel v. Bucon*, No. 17 C 6452, 2018 WL 11436770, at *2 (N.D. Ill. Sept. 25, 2018) (explaining that while a litigant may have privacy rights in certain kinds of materials, that does not itself protect the materials from discovery, when they are put at issue by the party's claims and the discovery standards of Rule 26 are otherwise satisfied). Further, President Tinubu has not disputed the fact that he himself submitted additional records from CSU as part of his responses to election challenges in Nigerian proceedings. (Dkt. 40 at 26; Dkt. 45 at 12.) The documents Mr. Abubakar seeks are plainly relevant to the issues of the authenticity of the diploma as well as the origin and basis of the other CSU documents in the Nigerian proceedings. This relevance outweighs President Tinubu's privacy interests in this case, particularly in light of President Tinubu's status as a public figure. *See, e.g., Radar Online LLC v. Fed. Bureau of Investigation*, No. 17 CIV. 3956 (PGG), 2023 WL 6122691, at *19 (S.D.N.Y. Sept. 19, 2023) (collecting cases showing that public officials and prominent politicians have diminished privacy interests when it comes to certain categories of records).

The Court further notes that the other factors that guide the Court's analysis under Rule 26 support granting the application. As noted above, Rule 26 asks the Court to weigh the importance of the requested discovery against the burden and expense in producing the information, as well as the parties' relative access to the information. The discovery sought here relates not only to a prominent public figure, President Tinubu, but is sought as part of an underlying dispute over the Nigerian presidential election, a matter of extreme importance to the Nigerian people. The discovery is thus undoubtably of significant importance, as are the issues at stake. And CSU has sole access to the discovery—there is no other way for Mr. Abubakar to access the sought-after

information about President Tinubu's diploma and education. These Rule 26 considerations therefore support granting the request for discovery. This Court will not obstruct the flow of discovery solely within the possession of a U.S. institution on a matter of such importance when the respondent stands ready and willing to provide it.

Because the Court concludes that Mr. Abubakar's interest in the discovery outweighs President Tinubu's privacy interests, and because the Court need not concern itself with any burden to CSU in making the production, the Court finds the final discretionary factor weighs in favor of granting the application. With three factors weighing in favor, and one neutral, the Court finds on balance the discretionary factors support granting Mr. Abubakar's application.

President Tinubu did not specifically object to Judge Gilbert's rulings with respect to the scope of the discovery requests, other than to generally state they are too broad. But even if he had, the Court independently finds the requests are appropriately tailored to seek relevant information. Mr. Abubakar did not object to the portion of Judge Gilbert's ruling limiting the scope of his request for production four mentioned above, and at any rate, the Court agrees that asking CSU to conduct electronic discovery is neither justified nor feasible at this time. The Court therefore adopts Judge Gilbert's ruling on the scope of the discovery requests. CSU must respond to Requests for Production Nos. 1 through 4, though CSU need not respond to the portion of Request No. 4 that seeks "all communications to or from CSU concerning the certification of such documents by Jamar C. Orr, Esq., during the period of August 1, 2022 to August 1, 2023." (Dkt. 40 at 28.) As for the deposition, CSU must produce a witness that can address all five topics identified in the subpoena.

### III. Conclusion

For the foregoing reasons, the Court overrules President Tinubu's objections to Magistrate Judge Gilbert's recommended ruling, and therefore adopts the ruling in full. Mr. Abubakar's Application is therefore granted. In light of the pending Supreme Court of Nigeria deadline, represented to the Court as October 5, 2023, and based on CSU's representations that it is ready to comply with the discovery requests and produce a witness, the Court sets an expedited schedule for completion of discovery.

Respondent CSU is directed to produce all relevant and non-privileged documents in response to Requests for Production Nos. 1 through 4 (as narrowed by Judge Gilbert and adopted here) in Mr. Abubakar's subpoena, by 12:00 p.m. (noon) CDT, on Monday, October 2, 2023. The Rule 30(b)(6) deposition of CSU's corporate designee must be completed by 5:00 p.m. CDT on Tuesday, October 3, 2023. Given the October 5, 2023, filing deadline before the Supreme Court of Nigeria, the Court will not extend or modify these deadlines.

ENTERED: 9/30/23

_____

Nancy L. Maldonado

United States District Court Judge